UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PETER M. MACE,<br><br>     Plaintiff,<br><br>v.<br><br>LARRY A. DOMASH,<br><br>     Defendant. | )<br>)<br>)<br>)<br>)<br>) Case No. 1:05CV02244 (HHK)<br>) <u>NEXT EVENT</u>:<br>) Close of Discovery – 2/5/07<br>)<br>)<br>) |

## DEFENDANT LARRY DOMASH'S MOTION FOR SUMMARY JUDGMENT

Defendant Larry Domash hereby moves the Court, pursuant to Federal Rule of Civil Procedure 56, for summary judgment. By virtue of his failure to respond timely to Defendant's First Set of Requests for Admissions (now at least 18 days overdue), Plaintiff has conceded that he has no evidence to support his claims and that all of his claims arose more than three years ago and are thus barred by the applicable statutes of limitations governing this action. A memorandum of points and authorities, a statement of undisputed material facts and a proposed order accompany this Motion.

Respectfully submitted,

Adam Augustine Carter
DC Bar # 437381
888 Seventeenth Street, N.W., Suite 900
Washington, D.C. 20006-3307
Tel: 202-261-2803
Fax: 202-261-2835
acarter@acarterlaw.com

Dated: October 30, 2006         *Attorney for Larry A. Domash*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Defendant Larry Domash's Motion for Summary Judgment, a Memorandum of Points and Authorities in Support of Defendant Larry Domash's Motion for Summary Judgment, a Statement of Undisputed Facts, and a proposed Order was delivered via the ECF system to the following counsel for Plaintiff Peter M. Mace, this 30th day of October, 2006.

Michael J. Trevelline, Esq.
1823 Jefferson Place, NW
Washington, DC 20036-2504
mjt@mjtlegal.com

_____
Adam Augustine Carter

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| PETER M. MACE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:05CV02244 (HHK) |
| | ) | NEXT EVENT: |
| LARRY A. DOMASH, | ) | Close of Discovery – 2/5/07 |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT LARRY DOMASH'S MOTION FOR SUMMARY JUDGMENT**

Defendant Larry Domash submits this memorandum in support of his motion for summary judgment.

On September 11, 2006, Mr. Domash, through counsel, served Plaintiff, then proceeding *pro se*, with Defendant Larry Domash's First Set of Requests for Admissions (the "Admissions") under Fed. R. Civ. P. 36, via Federal Express overnight delivery. A true and accurate copy of the Admissions is attached hereto as Exhibit 1. A true and accurate copy of the proof of delivery is attached hereto as Exhibit 2. Rule 36 reads in pertinent part: "The matter is admitted unless, within 30 days after service of the request . . . the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney." Fed. R. Civ. P. 36.

Over 45 days have now passed and neither Plaintiff, nor his current attorney, has answered the Admissions. Accordingly, by rule and as a matter of law, they are deemed admitted. Because the matters deemed admitted include concessions by the Plaintiff that

(1) no evidence exists to support any of his claims; and (2) all of his claims arose over three years ago and thus are barred by the applicable statutes of limitations, the Court should grant summary judgment in favor of Mr. Domash.

## I.    BACKGROUND

Plaintiff filed the Complaint -- which alleges counts for breach of contract, fraud and unjust enrichment -- on November 18, 2005. At that time, Plaintiff was represented by Attorney Robert Ackerman. On April 11, 2006, the undersigned and Mr. Ackerman conferenced the matter pursuant to Fed. R. Civ. P. 26(f) and LcvR 16.3. Affidavit of Adam Augustine Carter ("AAC Aff.") ¶ 3, attached hereto as Exhibit 3. At that conference, Mr. Ackerman alerted the undersigned that he would be filing a motion to withdraw from the case. *See id.* Mr. Ackerman filed his motion to withdraw on April 14, 2006, and the Court granted the motion on May 5, 2006.

Shortly thereafter, the Court scheduled an initial scheduling conference for June 29, 2006 (subsequently continued to July 6, 2006). Between May 10, 2006 and June 14, 2006, the undersigned called Plaintiff to set up a meet and confer as required by LcvR 16.3 no fewer than one dozen times and left more than four messages on Plaintiff's telephone answering machine or service. *See id.* ¶ 4. On June 6, 2006, the undersigned also wrote Plaintiff requesting that he contact him. *See id.* A true and accurate copy of that letter is attached hereto as Exhibit 4. Plaintiff did not respond to that letter or to any of the telephone calls. *See id.*

On July 6, 2006, the Court held a status conference, at which Plaintiff appeared *pro se*. The Court scheduled a further status conference for September 6, 2006 and ordered Plaintiff to retain counsel, or, if he chose not to do so, to meet and confer with

the undersigned before that date. On September 4, 2006, a mere two days before the scheduled status conference, Plaintiff wrote the Court a letter, indicating that he had just fired his second attorney (who had never filed an appearance in the case) and asking that the status conference be continued until October 8, 2006. A true and accurate copy of that letter is attached hereto as Exhibit 5. Based on that letter, which demonstrated a clear disregard for the Court's July 6, 2006 directive, on September 5, 2006, Defendant filed a Motion for Involuntary Dismissal. The Court denied that motion on October 14, 2006.

On September 6, 2006, the Court held a further status conference, with Plaintiff again appearing *pro se*. In light of the history detailed above, the Court dispensed with the meet and confer, and stated that it would issue a scheduling order requiring the parties to complete discovery and setting deadlines for motions. On September 11, 2006, the undersigned served Plaintiff with the Admissions via Federal Express overnight delivery. *See* Exhibit 3, AAC Aff. ¶ 5. The Admissions explicitly stated – in the first paragraph – that Plaintiff had thirty days from the receipt of the Admissions to answer them. *See* Exhibit 1. On October 2, 2006, Plaintiff called the undersigned acknowledging receipt of the Admissions. *See* Exhibit 3, AAC Aff. ¶ 6. Indeed, he acknowledged reviewing the Admissions, and appeared to dismiss them by telling the undersigned that he was, "barking up the wrong tree from the looks of it." *Id.*

On October 13, 2006, Plaintiff called the undersigned to inform him that he was waiting for an engagement letter from Attorney Michael Trevelline, his new counsel. *See id.* ¶ 7. Eleven days later, on October 24, 2006, Mr. Trevelline filed his appearance.

As of today (October 30, 2006), Plaintiff has not responded to the Admissions, which are now 18 days overdue. *See id.* ¶ 8. At no point has either Plaintiff or his counsel requested an extension of time to object or respond to the Admissions. *See id.* Under Rule 36, they are therefore deemed admitted.

## II.    **ARGUMENT**

### A.    **The Court Should Deem the Admissions Conclusively Established.**

For purposes of this litigation, Plaintiff has admitted the truth of all of the facts contained in the Admissions. "Under Rule 36, if a request for admission is made, the matter is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow, or as the parties may agree to in writing, subject to Rule 29, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney." *S.E.C. v. Hiestand*, 1997 WL 459853, *6 (D.D.C. July 31, 1997) (deeming Rule 36 requests admitted against *pro se* party who failed to answer and/or object to requests within 30 days). "The discovery sanctions apply regardless of a defendant's status as *pro se*." *Id; see also Baker v. Potter*, 212 F.R.D. 8, 12-13 (D.D.C. 2002) (holding admissions conclusively established where plaintiff failed to respond to defendant's Rule 36 requests for admissions within 30 days).

Rule 36(a)'s sanctions are especially appropriate here. Plaintiff, who since filing this lawsuit in November 2005 has been represented by three different attorneys and has intermittently represented himself *pro se*, has repeatedly ignored his obligations under the Federal Rules with respect to the undersigned's attempts to meet and confer. In this

regard, the Court has already demonstrated leniency towards Plaintiff by denying Defendant's motion for involuntary dismissal based on Plaintiff's flouting the Rules.

Moreover, this is not merely a case of inadvertent oversight. Plaintiff has acknowledged receiving and reviewing the Admissions and derisively commented that Defendant was "barking up the wrong tree from the looks of it." Exhibit 3, AAC Aff. ¶ 6. Further, the first paragraph of the Admissions sets forth the 30-day deadline for response. *See* Exhibit 1. Plaintiff is not free to ignore the Admissions simply because he feels Defendant is "barking up the wrong tree."

Nor can Plaintiff's former *pro se* status save him. First, as set forth above, the discovery rules – and their explicit sanctions – apply equally to *pro se* plaintiffs. *See Hiestand*, *supra* at *6. Second, Plaintiff has now been in contact with his current lawyer (plaintiff's third, according to him), for more than two weeks. *See* Exhibit 3, AAC Aff. ¶ 7. A response to the Admissions was due on October 11, 2006. Two days later, on October 13, 2006, Plaintiff told the undersigned that he had secured his present counsel and was just waiting for an engagement letter to formalize the retention. *See id.* Eleven days later, Plaintiff's current counsel filed his notice of appearance. Now, nearly another week has passed, and Plaintiff still has not responded to the Admissions. *See id.* ¶ 8. Under these circumstances, the Court should deem the Admissions conclusively established.

**B.    The Conclusively Established Admissions Require Summary Judgment in Favor of Defendant.**

Summary judgment is appropriate "where there is no genuine issue of material fact, and, viewing the evidence in the light most favorable to the nonmoving party, the movant is entitled to prevail as a matter of law." *Abourezk v. New York Airlines, Inc.*, 895 F.2d. 1456, 1458 (D.C. Cir. 1990). That standard is easily met here. Defendant has admitted, *inter alia*, that (1) that he has no evidence to support any of the facts or claims alleged in the Complaint (Admission #9); and (2) all of his claims arose more than three years before he filed his Complaint (Admission #10).

It is axiomatic that if Plaintiff cannot proffer any evidence in support of his claims, summary judgment must be awarded to Defendant. In order to avoid summary judgment, "there must be evidence on which the jury could reasonably find for the plaintiff." *Riddell v. Riddell Wash. Corp.*, 866 F.2d 1480, 1486 (D.C. Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). As Plaintiff has conceded that no such evidence exists here, summary judgment is appropriate.

In addition to the lack of evidence, Plaintiff's claims are barred by the applicable statutes of limitations. All three of Plaintiff's claims (fraud, breach of contract, quantum meruit) are subject to the District of Columbia's three-year limitations period. *See* D.C. Code § 12-301(7) & (8); *see also Hoffa v. Fitzsimmons*, 673 F.2d 1345, 1360 n.41 (D.C. Cir. 1982) (District of Columbia's statute of limitations applies in diversity actions). Here, there is no dispute that Plaintiff's claims arose more than three years before he filed the Complaint (Admission #10). Accordingly, they are time-barred, and the Court should grant Defendant's motion for summary judgment.

**C.    Alternatively, the Court Should Award Defendant the Costs of His Motion for Summary Judgment.**

For the reasons set forth above, the Court should deem admitted all of the facts contained in the Admissions pursuant to Fed. R. Civ. P. 36(a) and grant Defendant's motion for summary judgment accordingly. If, however, the Court declines to do so, it should award Defendant the costs of this motion under Rule 37. *See Davis v. Noufal,* 142 F.R.D. 258, 259-60 (D.D.C. 1992). In *Davis,* the Court denied defendants' motion for summary judgment based on plaintiffs' failure to timely respond to their Rule 36 request for admissions. Nonetheless, treating the motion for summary judgment as a motion to compel and observing that there existed no circumstances justifying plaintiff's failure to respond, the Court awarded defendants their costs associated with bringing the motion for summary judgment under Rule 37(a)(4). *See id.* at 260.

**III.    CONCLUSION**

WHEREFORE, and for all the foregoing reasons, Defendant respectfully requests that the Court grant his Motion for Summary Judgment.

Respectfully submitted,

Adam Augustine Carter
DC Bar # 437381
888 Seventeenth Street, N.W., Suite 900
Washington, D.C. 20006-3307
Tel: 202-261-2803
Fax: 202-261-2835
acarter@acarterlaw.com

Dated:  October 30, 2006                    *Attorney for Larry A. Domash*

7

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PETER M. MACE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Case No. 1:05CV02244 (HHK) |
| | ) |
| LARRY A. DOMASH, | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT LARRY DOMASH'S FIRST SET OF REQUESTS FOR ADMISSIONS

These Requests for Admissions are served pursuant to Rule 36 of the Federal Rules of

Civil Procedure. You are requested to make answer within thirty (30) days from the receipt

hereof, to the offices of Adam Augustine Carter, 888 17th Street, NW, Suite 900, Washington,

DC 20006.

In responding to these requests, please respond in accordance with Rule 36. Unless

otherwise indicated the time period for these Requests is from January 1, 1990 to the present.

### Definitions

For the purposes of these requests, the terms used herein shall have the following
meanings unless the context requires otherwise:

a.   "You" or "your" or "Mace" or "Plaintiff" means Plaintiff, Peter M. Mace.

b.   "Communication" means any and all oral conversations, discussions, e-mail
and/or "IM" messages, letters, telegrams, memoranda, and any other transmission
of information in any other form, both oral and written.

c.   "Documents" or "documentation" mean all written, typed or printed matter and all
magnetic or other records or documentation of any kind or description (including,
without limitations, letters, correspondence, telegrams, memoranda, notes,
records, electronic mail, IM messages, minutes, contracts, agreements, records or
notations of telephone or personal conversations, conferences, interoffice


EXHIBIT
1

communications, microfilm, bulletins, circulars, pamphlets, photographs, artist's renderings, invoices, tape recordings, computer printouts and worksheets), including drafts and copies not identical to the originals, all photographs, video and graphic matter, however produced or reproduced, all compilations of data from which information can be obtained, and any and all writings or recordings of any type or nature in your actual or constructive possession, custody or control, including those in the possession, custody or control of you or your family members, or any and all present or former employees, contractors, consultants, accountants, attorneys or other agents, whether or not prepared by you.

d.    "File" means any collections or group of documents maintained, held, stored or used together, including, without limitations, all collections of documents maintained, held, or stored in folders, computers, servers, notebooks, or other devices for separating or organizing documents.

e.    "Person" or "persons" means all entities associated with you, including without limitation, all predecessors in interest, individuals, associates, groups, organizations, joint ventures, corporations, trusts, estates, partnerships and public agencies.

f.    "Relating to" and "relate to" means, without limitation embodying, mentioning, evidencing or concerning, directly or indirectly, the subject matter identified in the document request.

g.    "Defendant" or "Mr. Domash" means Larry A. Domash.

## Instructions

1.    Unless otherwise specified, each request requires a continuing response, and you are requested to reasonably and promptly supplement or amend your responses to these requests based upon any and all information and documents obtained after filing such responses.

2.    Capitalization or non-capitalization of defined terms shall be construed to be capitalized or not whichever shall render the discovery request more inclusive.

3.    The term "and" and the term "or" shall be construed either conjunctively or disjunctively, whichever shall render the discovery request more inclusive.

4.    If you believe that any discovery request is overly broad or unduly vague, you are instructed to respond to the discovery request and to indicate the limitation you have given to it and any definition you have given to obviate your objection.

5.   References to masculine, feminine, or neutral gender shall be construed as either masculine, feminine, or neutral so as to render the discovery request as inclusive as possible.

6.   The term "all" shall mean "any and all" or "each and every," and shall be construed to render the discovery request as inclusive as possible.

7.   Terms that are singular shall be construed as plural and terms that are plural shall be considered singular so as to render each discovery request as inclusive as possible.

## Requests for Admissions

1.   Admit that Exhibit A attached hereto is a true and accurate copy of a letter that you wrote to Defendant on November 22, 2002.

2.   Admit that you mailed a copy of Exhibit A to Defendant on November 22, 2002.

3.   Admit that you wrote an identical letter to Exhibit A, absent the language on the top right hand corner of the front page that reads: "Dear Larry: Running away or ignoring your responsibilities are not going to make them disappear. That is not going to happen. You have obligations to fulfill. Don't squander your friendships and all we have sacrificed for so long to achieve. Please call George no later than the end of the first week of December. Still a true friend, my regards to the children. Are you OK? Most sincerely, Brett" on October 30, 2002.

4.   Admit that you mailed a copy of an identical letter to Exhibit A, absent the language on the top right hand corner of the front page that reads: "Dear Larry: Running away or ignoring your responsibilities are not going to make them disappear. That is not going to happen. You have obligations to fulfill. Don't squander your friendships and all we have sacrificed for so long to achieve. Please call George no later than the end of the first week of December. Still a true friend, my regards to the children. Are you OK? Most sincerely, Brett" on October 30, 2002.

5.   Admit that you sent Mr. Domash a letter in July 2002 claiming to have a contract with him.

6.   Admit that Mr. Domash never acknowledged having a contract with you.

7.   Admit that you never had a written agreement with Defendant relating to the allegations in paragraph 9 of the Complaint.

8.   Admit that you never had a written agreement with Defendant relating to any of the allegations in the Complaint.

3

9.    Admit that you have no evidence to support any of the facts or claims alleged in the Complaint.

10.   Admit that all of your claims arose more than three years before you filed your Complaint in this action.

11.   Admit that you are not licensed to practice law in the Commonwealth of Massachusetts.

12.   Admit that you have never been licensed to practice law in the Commonwealth of Massachusetts.

13.   Admit that you have never been licensed to practice law anywhere in the United States.

14.   Admit that you never had an agreement with Defendant to manage his personal legal problems.

15.   Admit that you never had a written agreement with Defendant to manage his personal legal problems.

16.   Admit that you have no documentation or evidence to support the allegations contained in paragraph 6 of the Complaint.

17.   Admit that you have no documentation or evidence to support the allegations contained in paragraph 7 of the Complaint.

18.   Admit that you have no documentation or evidence to support the allegations contained in paragraph 8 of the Complaint.

19.   Admit that you have no documentation or evidence to support the allegations contained in paragraph 9 of the Complaint.

20.   Admit that you have no documentation or evidence to support the allegations contained in paragraph 10 of the Complaint.

21.   Admit that you have no documentation or evidence to support the allegations contained in paragraph 11 of the Complaint.

22.   Admit that you have no documentation or evidence to support the allegations contained in paragraph 13 of the Complaint.

23.   Admit that you have no documentation or evidence to support the allegations contained in paragraph 14 of the Complaint.

24.   Admit that you have no documentation or evidence to support the allegations contained in paragraph 17 of the Complaint.

25.    Admit that you have no documentation or evidence to support for the damages calculation set forth in paragraph 17 of the Complaint.

26.    Admit that Defendant never knew you as Peter Mace.

27.    Admit that you have not incorporated a successor corporation to Investors Fidelity of America, Inc. ("IFA")

28.    Admit that as of November 24, 2002, at the latest, you had no reasonable expectation of receiving any money from Defendant related to any of the allegations in the Complaint.

29.    Admit that any expenditures you made after November 24, 2002 relating to the allegations in the Complaint were unreasonable.

30.    Admit that you made no expenditures relating to the allegations in the Complaint after November 24, 2002.

31.    Admit that you made no expenditures relating to the allegations in the Complaint after October 30, 2002.

32.    Admit that any expenditures you made after October 30, 2002 relating to the allegations in the Complaint were unreasonable.

33.    Admit that the agreement alleged in the Complaint is barred by the statute of frauds.

34.    Admit that the agreement alleged in the Complaint is barred by the statute of limitations.

35.    Admit that no audited financials for IFA exist.

36.    Admit that no board meeting minutes for IFA exist.

37.    Admit that Defendant had no legal relationship with IFA.

38.    Admit that you received the document attached hereto as Exhibit B on or days after November 24, 2002.

Respectfully submitted,

Adam Augustine Carter
DC Bar # 437381
888 Seventeenth Street, N.W., Suite 900
Washington, D.C.  20006-3307
Tel: 202-261-2803
Fax: 202-261-2835
acarter@acarterlaw.com

*Attorney for Larry A. Domash*

Dated:  September 11, 2006

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Defendant

Larry Domash's First Set of Requests for Admissions was delivered by FEDEX, standard

overnight delivery, this 11th day of September, 2006, to Plaintiff Peter M. Mace,

proceeding *pro se.*


Mr. Peter M. Mace
4701 Connecticut Ave. N.W.
Apt. 209
Washington, D.C.  20008

Adam Augustine Carter

Second Notice 11/22/02

October 30th, 2002

Dear Larry:

Running away or ignoring your responsibilities are not going to make
it less desperate. That is not going to happen. You have obligations to
fulfill. Don't squander your friendships and all we have sacrificed
so long to achieve. Please call George no later than the end of the
first week of December. Still a true friend, my regards to the
children. Are you OK?

Most sincerely,
Bob

Dear Larry:

Hope this note finds you in good physical and spiritual health
Anyone can get down on themselves. Sorry I haven't
written sooner but have been seriously ill since the
beginning of August. George and Messrs Stein and Mar
had me on a dead run getting some work done. Got it in the
hands but it proved more than I could handle, literally.
Ended up at the hospital diagnosed with exhaustion and
shingles. Quite a story, I'll fill you in on the details later.

Essentially the drill was either A), ten days in the hospital or
B), ten days in bed at home. That took care of the exhaustic
The shingles are another matter entirely. All in all I'd prefer a
gunshot wound. Larry, the pain is unbelievable and more
than occasionally, uncontrollable. Wouldn't want this to con
within a mile of you or the children.

Lost my hearing in my right ear for a couple of days. Still, it could
have been worse. The virus stopped about an inch from my
right eye. Had it been hit there would have been the very
real potential of permanent damage or blindness. Not a
pleasant situation but I am slowly getting better. George
has ordered me to take medical leave and the doctors think
I'll be out of the woods in another 60 to 90 days. In any
event we've all had to play hurt. Moping around or feeling



EXHIBIT
A

sorry for myself won't help anyone. Forward is the directi we need to travel. Our goal is clearly in sight. We can get there together even if I limp in missing an engine or

Much of significance to report. All of it positive. Given the you remarked in one of our more recent conversations at end of June that you "thought (your) professional caree was over", I hope you'll be pleased.

Mr. Martin had Dr. Lee come over from the White House be briefed on IFA/Graham Capital International. Ver successful with a follow up with George agreed to. Then, kidding. Dr. Lee was returned to the bosom of the feder authorities and had dinner with the President. Never a moment. Mr. Martin, after having given us the highest recommendation possible, thinks we're perfectly position with a group of extraordinary wealth and contact. Instructed, in Dr. Lee's presence, to use my portable heart/lung machine, if necessary, to turn out another opu for the gang. Having done that, the document was delivere to Dr. Lee who jetted off on a mission which will be over so

Regardless of how that turns out George can put the initial financ together. And then some. That would enable us to begin even if Dr. Lee were to be taken prisoner. Mr. Martin, Mr. Stein and Mr. Killion have all agreed to be on the board. Am lining up others n

Think Bruce Koenig would be an obvious choice. Spoke with his office Monday and plan on seeing him in three weeks.[III]

While IFA would be directly owned by Graham Capital Internati as you'll recall, Domash and Associates and several other entities would be independent, though affiliated with GCI. In your last telephone call to my office you left a message asking how much of D&A would be owned by you. The answer, Larry, hasn't changed since you and I discussed it, what, eight or nine months ago? But if you'd like me to recap briefly I'd be happy to. The answer is still 8 to 85%. Why would you think it would change? A promise should be lived up to. It's as simple as that.

I'd expect you to run IFA's money. That would be the perfect opportuni to develope new products and the means to implement them that you've spoken of. As we've discussed the job could cover a wide variety of issues and areas. If called upon, as I expect you would be, you'd be asked to respond to the needs of Mr. Martin's and Mr. Stein's constituencies. Perhaps this is where a hedge fund would be opport And finally, we'd anticipate that D&A would compliment the values and accomplishments that IFA is pledged to bring about. In short, yo be expected to answer the call to the colors.

If you're up to it I'd want you to take the post. It gives you the opportunity to have your own shop, allows you to step out of the cesspool you've complained of, control your own destiny, provide

for the children and give Charlie a place to work with his father. In short, a new beginning in a healthier environment working with real friends. And Larry, we have always been that, even if at times for whatever reason you couldn't see it. Anyway, I hope you do now — so do we all.

Take me up on this and give George a call. You need to do that. And while you're at it, contact Steve Killion as well. You've got his number. There's some fence mending to do for sure and yes, while in the chain of command they both outrank me, my hope is that whatever disagreements exist can be put to right. That depends your views and theirs but that remains my hope. Its not too late! a new beginning. I think that is in everyone's interest.

Regardless of how that works out, however thats resolved, you have obligation to me that is overdue. Prior to the Welsh trial, as you knew and acknowledged you owed me $75,000. After the trial on the drive from Boston to New York you spoke repeatedly of repaying me. Larry, its been two years, indeed, almost exactly two years. I've done what you asked me to do, what I said I would do and now you have to meet your commitment. You made the promise to repay me, live up to it. Write me a check for $100,000 in the next two we Just to build the relationship with Mr. Stein — who played a key role in getting us to this point — cost $25,000 since my visit to Providence 13 months ago. You need to keep your word, you can not afford its loss.

As health permits, over the next several weeks I'll figure out what remains, notify you and expect you to close out the balance in monthly payments over the following five months. The people who loaned the money are entitled to be paid back. We need to minimize complications as we begin to work on the Reg. A filing. Not only will it be good to get the company up and running but I would be less than honest in telling you it will be good to have my life back.

Hope all continues to improve with you and that you enjoy your new job. My regards, as always, to Kate, Charlie and the little one.

Most sincerely,
Brett

I. You're not even 45 — your best years are ahead of you.

II. It nearly killed me.

III. Great people, they have gone out of their way to help me. Mrs. Koenig wants to show me some newly finished construction. I still marvel that Mr. and Mrs. Koenig have a deposition room in their home. Incredible but true. I'll have to ask them to show it to you someday, looks like a facility you'd expect to find in a federal courthouse.

IV. And, as you know, not only in that venue alone.

# LARRY DOMASH

KENTON PLACE
305 EAST 63RD STREET
NEW YORK, NEW YORK 10021

November 24, 2002

Mr. Brett Mace
3429 Stoneybrae Drive
Falls Church, Va. 22044

Dear Brett:

This letter acknowledges previous correspondence from July 3 and October 30 2002.

1. Please let this letter serve as notice – I have no interest (nor have I ever) in investing in or being involved with IFA. I do not wish or intend to manage any money associated with that firm. This can be confirmed by Dr. George Graham.

2. I have no knowledge of Graham Capital International, have met Mr. Stein twice and Mr. Martin once but have not spoken to either in over 12 months. These discussions about a potential business relationship never had any follow on. I have no interest in exploring a business relationship with either party.

3. I have never had a business relationship with you, nor do I intend to have a business relationship with you in the future.

4. I have not, nor do I now acknowledge any discussion about me owing you any money or "repaying" you, as you have never been a lender to me. Over the past 3 years I have had 6 creditors and you are not, nor have ever been a creditor of mine.

5. I have spoken to Dr. Graham about the factual content of your recent letters as well as your assumptions. As has been the case for as long as I have known you, many of your statements are simply untrue.

6. Your statements about the car ride to New York from Boston are not true.

7. You have most recently sent me a letter under the address of Investors Fidelity of America. After researching the issue, Investors Fidelity of America has no legal standing and is not a registered trademark or a legal company or corporation. The address as listed is a personal residence.

Please allow this letter to instruct you of the following:

8. Under the laws of New York State you were granted limited power of attorney in 2000. This is a limited power over only my personal items (the financial issues are to be handled by a previously appointed trustee) and is in affect only in the case of my incapacitation. This letter fully and completely revokes such powers.


EXHIBIT
B

1

9. You have been using my name, my business card and my reputation without my knowledge in marketing materials attempting to raise money for your venture. This has been confirmed by Dr. George Graham. Your illegal use of my name and unauthorized implications of my involvement in any of your projects will cease.

10. In 2001 I sent a letter the Chairman of the Board of the Bank of America in 2001 on your behalf. The letter was sent at your request and each word was written by you Brett. Based on changes in market circumstances, further research of your personal background and discussion with the head of small business loans at B of A, none of the statements made in that letter currently represent my views of you or your 14 year attempt to raise money for an insurance concept which is no longer viable.

11. This letter formally terminates our personal relationship.

12. You are not, under any circumstances to attempt to contact me again. This letter is being copied to counsel, Mr. Joseph Walsh.

Sincerely,

Larry A. Domash

Subscribed and sworn to before me
this 24th day of November 2005
by Larry A Domash
Notary Public

DONNA THOMAS, NOTARY PUBLIC
State of New York, No. 03-4994538
Qualified in Westchester County
Cert. Filed in New York County
Commission Expires April 6, 2006

2



FedEx Express
Customer Support Trace
3875 Airways Boulevard
Module H, 4th Floor
Memphis, TN 38116

U.S. Mail: PO Box 727
Memphis, TN 38194-4643

Telephone: 901-369-3600

October 30,2006

Dear Customer:

The following is the proof of delivery you requested with the tracking number **846417245181**.

### Delivery Information:

| | | | |
|---|---|---|---|
| Status: | Delivered | Delivery location: | 4701 CONN AVE NW |
| Signed for by: | C.GONZALEZ | Delivery date: | Sep 12, 2006 12:34 |
| Service type: | Standard Envelope | | |

### Shipping Information:

| | | | |
|---|---|---|---|
| Tracking number: | 846417245181 | Ship date: | Sep 11, 2006 |

Recipient:
PETER M MACE
4701 CONNECTICUT AVE NW 209
20008 US

Shipper:
A A CARTER
ADAM CARTER LAW FIRM
888 17TH ST NW STE 900
200063307 US

Reference

DEMOSH

Thank you for choosing FedEx Express.

FedEx Worldwide Customer Service
1.800.GoFedEx 1.800.463.3339

EXHIBIT
2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PETER M. MACE,<br><br>        Plaintiff,<br><br>v.<br><br>LARRY A. DOMASH,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)  Case No. 1:05CV02244 (HHK)<br>)  <u>NEXT EVENT</u>:<br>)  Close of Discovery – 2/5/07<br>)<br>)<br>) |

### AFFIDAVIT OF ADAM AUGUSTINE CARTER

I, Adam Augustine Carter, do hereby depose and state as follows:

1.    I am attorney in good standing of the bar of the United States District Court for the District of Columbia.

2.    I am counsel of record for Defendant in the above-captioned civil action.

3.    On April 11, 2006, the undersigned and Attorney Robert Ackerman (then Plaintiff's counsel of record) conferenced this matter pursuant to Fed. R. Civ. P. 26(f) and LcvR 16.3. At that conference, Mr. Ackerman alerted the undersigned that he would be immediately filing a motion to withdraw from the case.

4.    Between May 10, 2006 and June 14, 2006, after Mr. Ackerman withdrew from the case, I called Plaintiff to set up a meet and confer as required by LcvR 16.3 no fewer than one dozen times and left more than four messages on Plaintiff's telephone answering machine or service. On June 6, 2006, I also wrote Plaintiff requesting that he contact me. A true and accurate copy of that letter is attached to the accompanying Memorandum of Points and Authorities in Support of Defendant Larry Domash's Motion

**EXHIBIT**

3

for Summary Judgment (the "Supporting Memorandum") as Exhibit D. Plaintiff did not respond to that letter or any of the telephone calls.

5.      On September 11, 2006, I served Plaintiff, then proceeding *pro se*, with Defendant Larry Domash's First Set of Requests for Admissions (the "Admissions") via Federal Express overnight delivery. A true and accurate copy of the Admissions is attached to the Supporting Memorandum as Exhibit A. A true and accurate copy of the proof of delivery from Federal Express is attached to the Supporting Memorandum as Exhibit B.

6.      On October 2, 2006, approximately three weeks after I served the Admissions on him, Plaintiff called me and acknowledged receipt of the Admissions. Indeed, he acknowledged reviewing the Admissions, and appeared to dismiss them by telling me that I was, "barking up the wrong tree from the looks of it."

7.      On October 13, 2006, Plaintiff called me and stated that he was waiting for an engagement letter from Attorney Michael Trevelline, his new counsel. Eleven days later, on October 24, 2006, Mr. Trevelline filed his appearance.

8.      As of today's date (October 30, 2006), neither Plaintiff nor any of his attorneys have objected or responded to the Admissions. Nor have they sought an extension of time in which to do so.

I declare that the foregoing is true and correct under the penalty of perjury.

_____
Adam Augustine Carter

Date: _October 30, 2006_

2

## ADAM AUGUSTINE CARTER

ATTORNEY AT LAW
888 17TH STREET, NW
SUITE 900
WASHINGTON, DC 20006-3307

TELEPHONE: 202-261-2803
FACSIMILE: 202-261-2835

ADMITTED IN DC, VA & MD

ACARTER@ACARTERLAW.COM
WWW.ACARTERLAW.COM

6 June 2006

**VIA FIRST-CLASS MAIL**

**POSTAGE PREPAID**

Mr. Peter M. Mace
4701 Connecticut Avenue, NW
Apartment 209
Washington, DC 20008

     Re:   *Mace v. Domash*, Case No. 1:05cv02244 (HHK)

Dear Mr. Mace:

    I have tried to call you no fewer than 10 times since I received the Court's Order for Initial Scheduling Conference and since you are no longer represented by counsel. I have left no fewer than 3 phone messages on what I assume is your message machine (although there is no recorded voice). Please call me by 5:00 pm on June 13, 2006. I need to move the Court for a continuance of the June 29th hearing date, and I need to confer with you or your new attorney about it. If not, I will have to make a motion to the court without conferring and I will represent the facts set forth above about my efforts to reach you to no avail.

    Please call me or send me an email as soon as you get this.

    Yours very truly,

    Adam Augustine Carter

Cc:    Douglas S. Brooks, Esq.

EXHIBIT
4

Mr. Peter M. Mace
4701 Connecticut Ave., Apt. 209
Washington, DC  20008
Case No. 1:05 CVO2244 (HKK)

September 4, 2006

Hon. Henry H. Kennedy, Jr.
United States District Judge
United States District Court for the District of Columbia
3rd Street and Constitution Ave., N.W.
Washington, D.C.

Dear Judge Kennedy:

On Saturday, September 2nd, I succeeded in establishing contact with my attorney, Barton Walker.  This was achieved after almost 3 weeks of steady attempts on my part to make contact.  Four points became clear in that conversation:

1)  It is apparent that, contrary to what he said, he is indifferent to his responsibilities in this case.
2)  To the best of my knowledge, he has not made an appearance in this case.  Indeed, based on what he said yesterday, I now question whether he is correctly or adequately licensed in D.C.
3)  By his own admission, he has not spoken recently to opposing counsel, Mr. Adam Carter, although he had affirmed that he would do so.
4)  He is currently in New Hampshire and has no intention of returning in time for Wednesday's scheduling hearing, although he has known about it for eight weeks.

Given his wanton disregard for his responsibilities in this matter, I have fired him.  I have contacted my previous counsel, Robert Ackerman, for a referral.  You will remember Mr. Ackerman was injured in an accident.  I will attend the Wednesday proceeding myself and apologize to the court and Mr. Carter, who I will contact today.  I find this situation extremely embarrassing and I do apologize to you both.

One of the people who wants to testify in this case is a former senior FBI special agent with 28 years in law enforcement.  He told me today, disgusted with Mr. Walker, that he "just wants to be heard."  I feel the same way.  In order to accomplish this goal, I ask the court and Mr. Carter to allow me five weeks to replace Mr. Walker, and to reset the scheduling hearing for the week of October 8th.

A point in closing: I believe Barton Walker to be an honorable man.  He has done great good in his life, protected many and served the Republic faithfully, often at considerable risk to himself.  A mutual friend who knows more of his situation than I, believes Mr. Walker to be under great emotional stress and attributes his uncharacteristic behavior to that.

If I can be of any help, please feel free to leave a message at my home number: (202) 966-2761.

Sincerely,

Peter M. Mace
(CBL)

Peter M. Mace

Cc: Mr. Adam A. Carter, Esq.

EXHIBIT
5

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| PETER M. MACE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:05CV02244 (HHK) |
| | ) NEXT EVENT: |
| LARRY A. DOMASH, | ) Close of Discovery – 2/5/07 |
| | ) |
| Defendant. | ) |

## STATEMENT OF UNDISPUTED FACTS

Pursuant to LcvR 56.1, Defendant Larry Domash submits the following statement of undisputed facts in support of his motion for summary judgment.

1.    On September 11, 2006, the undersigned served Plaintiff, then proceeding *pro se*, with Defendant Larry Domash's First Set of Requests for Admissions (the "Admissions") via Federal Express overnight delivery. A true and accurate copy of the Admissions is attached to the accompanying Memorandum of Points and Authorities in Support of Defendant Larry Domash's Motion for Summary Judgment (the "Supporting Memorandum") as Exhibit 1 thereto.

2.    Plaintiff received the Admissions on September 12, 2006. A true and accurate copy of the proof of delivery from Federal Express is attached to the Supporting Memorandum as Exhibit 2.

3.    On October 2, 2006, plaintiff acknowledged receiving and reviewing the Admissions. Affidavit of Adam Augustine Carter ("AAC Aff." ¶ 6), attached to the Supporting Memorandum as Exhibit 3.

4.    As of today's date (October 30, 2006), neither Plaintiff nor any of his attorneys have responded to the Admissions.  AAC Aff. ¶ 8.  Nor have they sought an extension of time in which to do so.  *See id.*

5.    Plaintiff has admitted all of the facts contained in the Admissions.  *See id.* ¶ 8; Fed. R. Civ. P. 36(a).

6.    Plaintiff has no evidence to support any of the facts or claims alleged in the Complaint.  *See* Admissions ¶ 9, attached to Supporting Memorandum as Exhibit 1. Further, all of Plaintiffs' claims arose more than three years before he filed the Complaint.  *See id.* ¶ 10.

Respectfully submitted,

Adam Augustine Carter
DC Bar # 437381
888 Seventeenth Street, N.W., Suite 900
Washington, D.C. 20006-3307
Tel: 202-261-2803
Fax: 202-261-2835
acarter@acarterlaw.com

Dated:  October 30, 2006                 *Attorney for Larry A. Domash*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PETER M. MACE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:05CV02244 (HHK) |
| | ) NEXT EVENT: |
| LARRY A. DOMASH, | ) Close of Discovery – 2/5/07 |
| | ) |
| Defendant. | ) |
| | ) |

## ORDER

UPON CONSIDERATION of the motion made by Defendant Larry Domash for

summary judgment, any opposition thereto, and the entire record herein, it is by the Court

this __ day of _____, 200__,

ORDERED that Defendant's motion be, and hereby is granted; and it is further

ORDERED that judgment on the merits enter in favor of Defendant.


_____
The Hon. Henry H. Kennedy, Jr.
United States District Judge


cc:    acarter@acarterlaw.com
       mjt@mjtlegal.com