UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PETER M. MACE<br><br>　　　　　Plaintiff<br><br>v.<br><br>LARRY A. DOMASH<br><br><br><br>　　　　　Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. 1:05CV02244 (HHK)<br>) <u>NEXT EVENT:</u><br>)  Dispositive Motions Filed 21<br>　days after discovery disputes<br>　resolved<br>)<br>)<br>)<br>) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT LARRY DOMASH'S MOTION TO STRIKE PLAINTIFF'S
<u>SECOND SUPPLEMENTAL RULE 26(a)(1) DISCLOSURES</u>**

On June 27, 2007, <u>over two months after the close of discovery</u>, more than <u>19 months</u> after bringing this suit, and more than <u>four and one-half years</u> after Plaintiff acknowledges that he became aware of his alleged cause of action, Plaintiff supplemented his Rule 26 initial disclosures by claiming, for the first time, that he suffered "substantial intangible damages from anxiety and worry" in connection with the subject matter of this lawsuit and seeks $100,000 in compensatory damages. (A copy of these supplemental disclosures are attached hereto as Exhibit A). In addition, through these supplemental disclosures, Plaintiff also – again for the first time – claims damages in the amount of $4,000 for the time spent "trying to manage" his debt for which he blames Defendant. Plaintiff acknowledges that he has no documents in his possession supporting these newfound damages claims.

These new claims will require Defendant to engage in significant and costly additional discovery.  Accordingly, permitting Plaintiff to proceed with these theories that he raised for the first time well after the close of discovery – even if they occurred in a vacuum – would clearly contravene the principles underlying the Federal Rules of Civil Procedure as well as the terms of this Court's Scheduling Orders.  Here, this contravention is exacerbated because to date, Plaintiff has wholly failed to provide responses (both written and by way of deposition testimony) to Defendant's various discovery requests aimed at deciphering Plaintiff's <u>existing</u> damages claim set forth in the Complaint and initial disclosures.  Moreover, the Court has already extended the discovery deadline once after it had passed, based in part on Plaintiff's request that he be allowed to provide Defendant with information related to his original damages claim.  Plaintiff has not complied with this extended deadline.  In sum, Plaintiff's tardy attempt to create new damages theories, some 19 months after filing the Complaint and over two months after the close of discovery, is just the latest in a long string of examples (set forth in detail below) of Plaintiff flouting the Federal Rules and this Court's orders.

Under the circumstances, it would be fundamentally unfair and prejudicial to force Defendant to incur the significant costs and expenses associated with the additional discovery necessary to build a defense against these untimely new claims.

In light of the above, Defendant respectfully requests that this Court strike Plaintiff's second supplemental disclosures and preclude Plaintiff from proceeding on either of the new damages claims and theories and from introducing evidence (at trial or in connection with dispositive motions) related thereto.

I.     **PROCEDURAL BACKGROUND**

    A.     **The Court has Repeatedly Extended Leniency to Plaintiff in Connection with his Previous Discovery Violations and Disregard for the Court's Scheduling Orders.**

Plaintiff filed his Complaint on November 18, 2005. In short, the Complaint alleges that Defendant breached an oral agreement whereby Defendant had agreed to reimburse Plaintiff for all of Plaintiff's expenses from April 1999 through November 2002. Complaint ¶¶ 8; 15. Plaintiff claims to have incurred exactly $250,000.00 of expenses during this time period, all – or virtually all – on various personal credit cards. *Id.* ¶¶ 10; 14.

Plaintiff's first counsel withdrew his appearance on April 14, 2006. On September 5, 2006, after Plaintiff had failed to retain successor counsel and had further failed to communicate with Defendant's counsel for purposes of filing a Rule 16.3 report, Defendant filed a Motion for Involuntary Dismissal. On October 14, 2006, the Court denied Defendant's motion to dismiss.

While that motion was pending, on September 11, 2006, Defendant served Plaintiff with his first set of requests for admissions. By rule, the responses to these requests were due on October 11, 2006. On October 24, 2006, Plaintiff's current counsel filed his notice of appearance in this case. On October 30, 2006, several weeks after the deadline for responses to the requests for admissions and six days after Plaintiff's counsel filed his appearance, Defendant filed a motion for summary judgment based on the requests having been admitted by virtue of Plaintiff's failure to answer them within 30 days under Fed. R. Civ. P. 36. The Court denied this summary judgment motion on June 6, 2007.

On October 17, 2006, this Court issued its Scheduling Order. It set the discovery deadline on February 5, 2007. On January 4, 2007, the parties filed a joint motion to extend the discovery deadline. The Court granted that motion on February 6, 2007, extending the discovery deadline to March 22, 2007.

On March 15, 2007 – one week before the discovery deadline – Plaintiff served interrogatories and requests for documents. On March 21, 2007, one day before the discovery deadline, Plaintiff served requests for admissions on Defendant. On March 22, 2007, Defendant served his objections to all of these discovery requests on the ground that they were not timely served.[1] <u>Five days after the deadline had already lapsed</u>, Plaintiff, recognizing that his discovery requests were not timely, filed a motion to extend the discovery deadline so as to force Defendant to respond to the late discovery requests and also to allow Plaintiff more time to respond to various overdue discovery requests that Defendant had propounded (this latter category is discussed in more detail below). Defendant opposed that motion on the ground that Plaintiff had not even attempted to demonstrate that the delinquency of his discovery requests were the result of something other than a lack of diligence on his part. Notwithstanding Plaintiff's tacit admission regarding his lack of diligence, on April 10, 2007, the Court granted Plaintiff's motion to extend discovery, setting the new discovery deadline on April 21, 2007.[2] Defendant timely served his discovery responses on Plaintiff. On the other hand, the discovery that Plaintiff promised to produce to Defendant remains outstanding.

---

[1] *See, e.g., Gluck v. Ansett Australia Ltd.*, 204 F.R.D. 217, 219-220 (D.D.C. 2001) (holding requests for admissions served up to one week before discovery cutoff date untimely and no response necessary).

[2] April 21, 2007 fell on a Saturday, and thus the close of discovery was actually Monday, April 23, 2007.

4

> **B.    Plaintiff has Failed to Provide any Meaningful Information Related to his <u>Existing</u> Damages Claim in Response to Defendant's Various Discovery Requests Seeking this Information.**
>
>> **1.    Plaintiff's Damages Claim and Incomplete Document Production**

As mentioned above, at least until the recently served supplemental disclosures, Plaintiff's alleged damages arose from various expenditures that he allegedly made on his personal credit cards – for which he claims that Defendant promised to reimburse him. Specifically, Plaintiff alleges that he and Defendant entered into an oral contract in or around April 1999, whereby the parties allegedly agreed that if Plaintiff continued working to try to establish a life insurance company (for which, according to Plaintiff, Defendant had interest in managing money), Defendant would agree to reimburse Plaintiff for all of his personal expenses, which included the following: (1) Plaintiff's living expenses; (2) financial support that Plaintiff provided his cousin; (3) expenditures made on behalf of the putative life insurance company; and (4) expenditures made directly on behalf of Defendant. *See* Transcript of Deposition of Plaintiff ("Mace Tr.") at 93:22 to 94:3.  (Relevant excerpts from Plaintiff's deposition transcript are attached hereto as Exhibit B).  Defendant denies the existence of any such agreement.

Although the so-called contract contained no agreed-upon termination date, Plaintiff alleges that it ran from in or around April 1999 to sometime in November 2002. Complaint ¶¶ 8; 15.  During that time (more than three and one-half years), Plaintiff never provided Defendant with any documentation whatsoever regarding his expenditures, credit card payments, interest incurred on his credit cards or the balance that Defendant allegedly owed to him.  *See* Mace Tr. at 269:15 – 270:4.  Indeed, Plaintiff

kept no contemporaneous records of any kind related to his expenditures under the alleged contract.

Perhaps not surprisingly, then, to date Plaintiff has not been able to provide information to Defendant regarding how much (and how) he claims to have actually been damaged. The Complaint sets forth a round figure of $250,000.00. Complaint ¶ 17. However, the admittedly incomplete documentation that Plaintiff has provided to date does not support that figure. Moreover, this incomplete production did not comply with Federal Rule of Civil Procedure 34.

In violation of that Rule, Plaintiff's production consisted of nothing more than a confusing "document dump" of various credit card statements, many duplicates of each other, which were not produced in any orderly fashion – much less as they were kept in the ordinary course of business – and were not tied to the specific document requests to which they purport to respond. Most importantly, the vast majority of expenses listed on these credit card records reflect large cash advances for which there is no record of how the money was ultimately spent. Accordingly, there is no way for Defendant to ascertain which one of the four categories of expenses the expenditures belong, nor is there any way to determine whether the expenditures were reasonable (a requirement of the contract according to Plaintiff). *See* Mace Tr. at 39:11-16. Moreover, there is no way for Defendant to determine if Plaintiff actually made the payments to the credit card companies for which he now seeks reimbursement through this lawsuit.

As set forth more fully below, Defendant has requested the relevant information discussed above on multiple occasions and in multiple ways. Plaintiff, however, has

6

failed to provide any meaningful responses.  As such, Defendant is unable to ascertain Plaintiff's damages claim against him.

### 2.     Defendant's Damages-Related Discovery Requests

In an attempt to discover the true nature and amount of Plaintiff's damages, on November 2, 2006, Defendant served Plaintiff with his first set of interrogatories (relevant excerpts attached hereto as Exhibit C).  Interrogatory number 1 requests as follows:

> Describe in detail each and every expenditure you made for which you are claiming that Defendant owes you reimbursement by (1) identifying the amount, purpose, and date of the expenditure, (2) identifying to whom the expenditure was made and (3) identifying all documents concerning such expenditures.

On November 8, 2006, Defendant served Plaintiff with his first set of requests for documents (relevant excerpts are attached hereto as Exhibit D).  Among other things, Defendant asked for all documents concerning monies allegedly owed by Defendant to Plaintiff.  *See id.*, Request No. 25.

Plaintiff served his responses to these interrogatories on December 14, 2006 (relevant excerpts are attached hereto as Exhibit E).  He did not object to the above damages interrogatory, but his answer was nonetheless deficient.  First, he simply referred to the credit card records discussed above, which, as already noted, do not provide the necessary information sought by the interrogatory.  Second, recognizing that such a response was not sufficient, Plaintiff further answered, "I am in the process of working with an accountant or bookkeeper to prepare a more detailed accounting and will provide it to you when completed.  I believe it would be physically impossible for such to be prepared on such short notice.  I will certainly keep you abreast of progress."  Exhibit

7

E at 3. Now, over six months later, Plaintiff has still not provided this promised "detailed accounting."

On February 6, 2007, counsel for Plaintiff wrote counsel for Defendant that the "accountant's report is expected within a few days in my office. We will process them promptly when they are received." (A true and accurate copy of this correspondence is attached hereto as Exhibit F). To date, nearly five months later, no meaningful report – nor any answer responsive to Defendant's interrogatories regarding damages – has been provided.[3]

Plaintiff also claims that he entered into the so-called contract with Defendant after exhausting his personal resources in 1999. Complaint ¶ 8. Accordingly, as part of the document requests attached to Plaintiff's Amended Notice of Deposition (relevant excerpts attached hereto as Exhibit G), Defendant sought:

> All documents supporting Plaintiff's contention that he had exhausted his personal resources in 1999, including, but not limited to:(a) all federal, state and local tax returns filed by Mace and/or anyone in his household from 1989 to 1998; (b) all bank account statements, including but not limited to checking, savings, thrift and other monies held within the Mace household at a depository institution from 1989 to present; (c) all investment account statements including but no limited to brokerage accounts, IRAs, deferred compensation and or retirement accounts; (d) any and all documents reflecting all other assets held by the Mace household, including antiques, jewelry, books and any other fungible asset; (e) all documents reflecting all household expenditures from 1989 to present.

---

[3] On March 22, 2007, the previous discovery cut-off date, Plaintiff did provide what he conceded was an "incomplete" report from the accountant. This report failed entirely to respond to the interrogatory and document request discussed above.

Exhibit G ¶ 15. Plaintiff did not object to this Request nor claim that no responsive documents existed; instead, he simply has failed to provide any responsive documents.[4]

Additionally, in light of the fact that Plaintiff still had not responded to the above interrogatory regarding his expenditures, Defendant again asked for certain information regarding same. Specifically, as part of these same documents requests attached to the deposition notice, Defendant sought:

> All documents supporting Plaintiff's contention that he made any of the expenditures for which he claims he is owed reimbursement from Defendant in this action, including, but not limited to: (a) copies of all cancelled checks that he made payable to any credit card companies or other third party for which Mr. Mace claims he is owed reimbursement from Defendant; and (b) copies of any documents demonstrating that Plaintiff used his own personal funds for any payments he made by way of cashiers check for which he claims he is owed reimbursement from Defendant.

Exhibit G ¶ 16. As was the case with the other document request, Plaintiff did not object nor claim that no responsive documents existed; instead, he simply failed to produce any documents responsive thereto.

Defendant took Plaintiff's deposition on February 21 and 22, 2007 – over four months ago. Plaintiff was unable to answer any meaningful questions regarding his alleged damages. Essentially, he claimed that his accountant's forthcoming report would contain all of the requested information. *See, e.g.,* Mace Tr. at 94:4-8; 98:5-9; 206:10-207:7; 344:5-12.

---

[4] Notably, the information regarding household income is important, because Plaintiff testified at his deposition that although he had exhausted his personal resources prior to entering into the alleged contract, his wife had significant assets at that time (and continues to have significant assets). Mace Tr. 275:10-14. Moreover, Plaintiff testified that he lived (and continues to live) for free in a house owned by his wife. *Id.* 275:15-21. These facts obviously affect whether certain types of Plaintiff's expenditures can be deemed "reasonable."

Discovery closed on March 22, 2007. As referenced above, five days later, on March 27, 2007, Plaintiff moved to extend the discovery deadline, in part, so that he could furnish Defendant with Plaintiff's accountant report on damages. (A copy of relevant excerpts of Plaintiff's Motion is attached hereto as Exhibit H). Pursuant to that motion, Plaintiff specifically requested an extension until April 21, 2007. *See id.* Now, over two months later, the accountant's report still has not been produced.[5]

Notwithstanding Plaintiff's failure in this regard, on June 27, 2007, Plaintiff added two new claims for damages. The first seeks $100,000 in compensatory damages because "Plaintiff's study of his credit card debt as part of discovery has made it evident that he has incurred substantial intangible damages from anxiety and worry about the unpaid credit card debt an damage to his credit." *See* Exhibit A. In addition, Plaintiff seeks $4,000 for the time spent "trying to manage the debt." *Id.*

Counsel for Plaintiff has confirmed that he has no documentary support for either of these two new claims.

## II.   ARGUMENT

Plaintiff should not be permitted to proceed on his late-noticed damages claims. As an initial matter, Plaintiff's two new claims – that he suffered emotional distress as a result of Defendant's alleged failure to reimburse him and that the time he spent managing his debt is compensable – seem to require an amendment to the complaint under Federal Rule of Civil Procedure 15. Perhaps in an attempt to hide the fact that these new legal claims and theories are being raised for the first time well after discovery

---

[5] Defendant anticipates filing a motion to compel related to all of Plaintiff's delinquent discovery responses. He has not yet filed such a motion, because the Court's Scheduling Order, dated October 17, 2006, requires that the undersigned first request a conference call with the Court. *Id.* ¶ 11. The undersigned has made that request through the Court's clerk. That request is still pending.

closed, Plaintiff instead simply asserts them by way of a Rule 26 (supplemental) disclosure.  For this reason alone, the Court should strike the new claims.

Regardless of whether Plaintiff's new damages claims require a formal amendment to the Complaint, however, they certainly will require additional discovery and the Court should thus strike them as untimely.  *See, e.g., Moore v. Chertoff*, 2006 WL 1442447, *2 (D.D.C. May 22, 2006) ("Where a plaintiff alleges emotional distress, a defendant is entitled to explore whether causes unrelated to the alleged wrong contributed to plaintiff's claimed emotional distress, and a defendant may propound discovery of any relevant medical records of plaintiff in an effort to do so.") (collecting cases).  Indeed, Plaintiff's disclosures acknowledge Defendant's need for discovery on these new claims, as Plaintiff "agrees" to respond to discovery requests and answer deposition questions on these new claims "even though the discovery deadlines have passed."  *See* Exhibit A.  Although Plaintiff attempts to portray this as some kind of courtesy, in practical effect Plaintiff asks the Court for <u>another</u> extension of the discovery deadline – again well after that deadline has already passed.  Rather than making such a request in the proper course, however, Plaintiff, likely recognizing the perils of doing so, instead attempts to shift the burden to Defendant, requiring that he affirmatively move the Court for relief (as he is doing pursuant to this motion).  The Court should not countenance this approach.

In situations analogous to the present, when determining whether to allow a plaintiff to proceed on a newly claimed theory, courts have held that the critical issue is whether, as is the case here, a plaintiff's new theory will require additional discovery. *See, e.g., Williamsburg Wax Museum v. Historic Figures, Inc.*, 810 F.2d 243, 247 (D.C. Cir. 1987) (leave to amend properly denied where plaintiff sought to allege new facts

11

requiring additional discovery). *Compare Nix v. Hoke*, 62 F.Supp.2d 110, 114 (D.D.C. 1999) (permitting amendment of complaint because "[s]ignificantly, Nix has not sought to allege new facts requiring additional discovery"); *Alley v. Resolution Trust Corp.*, 984 F.2d 1201, 1208 (D.C. Cir. 1993) ("We count it as important also that plaintiffs have represented in their briefs on appeal the absence of any need to allege new facts or engage in additional discovery.").

Defendant would have to incur significant costs and expenses if Plaintiff is allowed to proceed on his new claims. Indeed, not only will these new claims require additional discovery, but the discovery will be voluminous. As the court in *Moore* recognized, "defendant is entitled to explore whether causes unrelated to the alleged wrong contributed to plaintiff's claimed emotional distress." 2006 WL 1442447 at 2. Here, those causes could be numerous and extend over an indeterminate number of years. Moreover, because Plaintiff never raised or even hinted at his "emotional distress" claims until last week (19 months after filing the Complaint and after the twice-extended discovery deadline), Defendant has no information at all related to other potential causes of Plaintiff's emotional distress. In other words, Defendant would be starting from scratch in terms of trying to build a defense to these claims. Requiring Defendant to incur the significant costs and expenses associated with additional written discovery, preparing for and re-opening Plaintiff's deposition and the potential that Plaintiff's newfound damages claims will need to be verified by seeking discovery of various third parties would be prejudicial and fundamentally unfair under the circumstances.

Notably, Plaintiff has had numerous opportunities to raise these new claims and offers no reason for their tardiness. *See Williamsburg*, 810 F.2d at 247. Specifically,

Plaintiff (i) failed to raise them in his initial complaint; (ii) failed to raise them in his initial disclosures; (iii) failed to raise them in his first supplemental disclosures; (iv) failed to mention them during his two-day deposition that took place over four months ago; and (v) most importantly, failed to mention them the first time he blew past the discovery deadline several months ago and had to move the Court to extend the deadline so that he could produce additional discovery on his original damages claim (something that never materialized).

### III.    CONCLUSION

Based on the above, Defendant respectfully requests that this Court strike Plaintiff's second supplemental disclosures and preclude Plaintiff from proceeding on either of the new damages claims and theories and from introducing evidence (at trial or in connection with dispositive motions) related thereto.

Respectfully submitted,

For Defendant Larry Domash,

/s/ Adam Augustine Carter_____
Adam Augustine Carter
DC Bar # 437381
888 Seventeenth Street, N.W., Suite 900
Washington, D.C.  20006-3307
Tel: 202-261-2803
Fax: 202-261-2835
acarter@acarterlaw.com

/s/ Douglas S. Brooks_____
Douglas S. Brooks
*Pro Hac Vice*
Kelly, Libby & Hoopes, P.C.
175 Federal Street
Boston, MA 02110
Tel: 617-338-9300
Fax: 617-338-9911
dbrooks@klhboston.com

Dated:  July 2, 2007

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and accurate copy of the foregoing memorandum was delivered via the Court's electronic filing system to the following counsel for Plaintiff Peter M. Mace, this 2nd day of July, 2007.

Michael J. Trevelline, Esq.
1823 Jefferson Place, NW
Washington, D.C. 20036-2504
mjt@mjtlegal.com

/s/ Douglas S. Brooks_____
Douglas S. Brooks