# EXHIBIT E

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Peter M. Mace<br>    Plaintiff,<br><br>vs.<br><br>Larry A. Domash<br>    Defendant | Case No. 1: 06-02244 (HHK)<br>Judge Henry H. Kennedy, Jr.<br>Next Event: Discovery Completion Date 5 February 2007 |

**To:**   Defendant Larry A. Domash
       c/o Adam Augustine Carter, Esq.
       Attorney for Defendant

**From:**   Plaintiff Peter M. Mace
       c/o Michael J. Trevelline, Esq.
       Attorney for Plaintiff

## Plaintiff's Response to Defendant's First Set of Interrogatories

Now comes the **Plaintiff** to answer the interrogatories of the **Defendant** in the number and order propounded.

## General Objections

A. **Plaintiff** objects to each Interrogatory to the extent that it seeks information protected from disclosure by the attorney-client, work product or other privileges; such information will not be produced. The inadvertent revelation of any such privileged information shall not be deemed a waiver of any applicable privilege or doctrine with respect to that information or the subject matter thereof.

B. **Plaintiff** objects to each Interrogatory to the extent it seeks information that is readily available to the requesting party from that party's own records. Recitation of such information would, therefore, be unduly burdensome.

C. **Plaintiff** objects to each Interrogatory to the extent that it is unreasonably vague, overly-broad, repetitious or unduly burdensome.

D. **Plaintiff** objects to each Interrogatory to the extent it seeks information not in its possession, custody or control or that of its agents or representatives.

E. **Plaintiff** reserves the right to object to the relevancy, materiality or admissibility of any information provided in this Answer, at trial, or any other evidentiary proceeding.

F. **Plaintiff** reserves the right to supplement its responses upon discovery of additional, responsive information.

## Answers

1. Describe in detail each and every expenditure you made

*Answers to Interrogatories—Page 1*

for which you are claiming that Defendant owes you reimbursement by (1) identifying the amount, purpose and date of the expenditure, (2) identifying to whom the expenditure was made and (3) identifying all documents concerning such expenditures.

**Answer:** IFA was incorporated in May of 1989 as seen on the articles of incorporation found at the documents bates-stamped Mace 75 and following. IFA was to be an insurance company. I was the officer who did most of the day-to-day work in getting IFA up and running. From 1989 to October 2004, I devoted most of my working hours to IFA. IFA had very little start-up money and no funds to compensate me for my work. In addition, I had been helping Mr. Domash starting in September 1998, by serving as a type of coordinator or administrator of some of his legal problems as well as providing him with emotional support.

In April 1999, I had exhausted my personal finances and told Mr. Domash that IFA may well have to be shut down and that I would have to seek full-time employment. I called Mr. Domash to tell him this. Mr. Domash seemed disappointed, especially since he had often told me of his desire to establish his own investment company to be called Domash & Associates. He had hoped that D&A would have IFA for its main account and so was quite interested in IFA's success. In response to my plight, he told me that he already owed Dr. George Graham $50,000 for psychological counseling and for coordinating his legal problems.

He also said that I should continue on with IFA for he would reimburse me not only for all the expenses I would continued to incur in assisting him but also he would reimburse me for my own personal living expenses as well as for any expenses I incurred on behalf of IFA. In other words, he promised to reimburse me for all expenses—both my living expenses and IFA expenses—incurred from that point (April 1999) forward. Although I lived and had been living rather frugally, my personal living expenses included support I was providing to my cousin Judy Pentoney. Mr. Domash said that he understood my situation and would be glad to reimburse me for everything if only I would continue on trying to get IFA established. The main obstacle to IFA starting operations was obtaining financing. Mr. Domash said he understood this and was optimistic that financing would soon come through. I explained that since the only means I had of obtaining money to help him, to support myself, and to keep IFA running was to incur credit card debt. He said he understood that the finance charges would be great, but not to worry since he would cover it all.

Relying on his assessment and promises, I continued on

*Answers to Interrogatories—Page 2*

helping Mr. Domash as before, continued supporting myself and sending money to my cousin, and continued to finance IFA—all with credit card debt. I did this until November 2002 when he said he would not honor his promise.

The three categories of expenditures, then, are (1) those made on behalf of Mr. Domash, (2) those made to support me (as well as money sent to my cousin), and (3) those made on behalf of IFA. Since these expenditures were made through credit cards, with a few being made through bank accounts, the credit card and bank records contain all the information sought. Please refer to the documents bates-stamped Mace 185-1535. I am in the process of working with an accountant or bookkeeper to prepare a more detailed accounting and will provide it to you when completed. I believe it would be physically impossible for such to be prepared on such short notice. I will certainly keep you abreast of progress.

2. Identify all individuals employed by ("IFA") or Domash & Associates ("D & A"), including officers, directors and board members, identifying their positions and dates of employment/board service at IFA or D & A.

**Answer:** IFA never had any employees as such. I worked in the hopes of being a stockholder and officer if the company should succeed. Please see the bates-stamped documents Mace 85 to 86 for information on the six initial members of the board of directors. The company never prepared any further written minutes, other than some board of director notes, which I believe are in the possession of Robert Gaegler and Gene Sierzant. All board members dropped out except for me, Gene Sierzant, and John Miller. (I will soon provide the contact information on Robert Gagler and John Miller, since they are not in my initial disclosures.) IFA never had any other officers or board members or employees. I have no information concerning D&A. I believe D&A was never more than a concept of Mr. Domash, although it is possible he took more steps to establishing it than I am aware of. He made it clear to me that its establishment was a major life goal. Please see Mace 58.

3. State the basis for your contention in paragraph 2 of the Complaint that Defendant is experienced in insurance company investing and equity portfolio management by (1) identifying all facts or information supporting your contention, (2) identifying all documents supporting or concerning your contention, and (3) identifying all persons possession knowledge of facts or information supporting the contention, and summarizing the facts or information each such person possesses.