## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Peter M. Mace<br><br>    Plaintiff,<br><br>       vs.<br><br>Larry A. Domash<br><br>    Defendant | Case No. 1: 06-2244 (HHK)<br>Judge Henry H. Kennedy, Jr.<br>Next Event:  Discovery Completion Date 5<br>February 2007 |

## Plaintiff's First Supplemental Response to
## Defendant's First Set of Interrogatories

Now comes the **Plaintiff** to supplement his answer to the interrogatories of the **Defendant** in the number and order propounded.

## Answers

*5.* State the basis for your contention in paragraph 19 of the Complaint that Defendant's alleged representations in April 1999 that it was his intention to reimburse Plaintiff for his expenditures were made untruthfully and with knowledge of that untruth by (1) identifying all facts or information supporting your contention, (2) identifying all documents supporting or concerning your contention, and (3) identifying all persons possession knowledge of facts or information supporting the contention, and summarizing the facts or information each such person possesses.

**Answer:** In addition to my previous response, I provide the following:  In April 1999 when Mr. Domash made the initial agreement with me and throughout 1999, 2000, 2001, and 2002, Mr. Domash was a party to divorce, alimony, and child support and custody litigation.  He was upset and emotionally disturbed by this litigation.  He told me the litigation caused him a great deal of financial uncertainty, both since he was spending much money on attorney's fees and expenses and since he would incur substantial property division, alimony and child support obligations.  Because of this financial uncertainty, Mr. Domash said in effect that he needed to maintain as much financial liquidity as he could, although he did maintain at all times that he did have the financial wherewithal to uphold his financial obligation to me.  He told me that he would not pay me under the agreement until either IFA obtained funding or the dust settled on the domestic litigation. When the dust settled, he would no longer need to maintain maximum liquidity.  From 1999 to 2002, he repeatedly told me that he would pay me but that these domestic relation litigation

*Supplemental Answers to Interrogatories—Page 1*



concerns prevented him from doing so at the moment.  He also
repeatedly told me that he was doing his best to maintain his
financial liquidity.

These repeated statements were false and fraudulent since he
never intended to pay me, since he did not conserve his financial
liquidity as he said he needed to do and would do, and since he
was not uncertain about the financial results of the domestic
relation litigation.  Instead of conserving his financial liquidity, he
purchased a motor boat and may have made other expenditures
inconsistent with his fraudulent promises to me and false concerns
he expressed to me.  Instead of being concerned about his financial
obligations arising from the domestic litigation, apparently the
financial outcome of the litigation was more settled than he
fraudulently told me.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on

_April 8th 2007_____ .

_Peter M. Mace_____
Peter M. Mace

### Certificate of Service

I hereby certify that a copy of the **foregoing** was sent via first class mail, postage prepaid,
this ___10___ day of ___April___, 20_07_, to:

Mr. Douglas Brooks
Kelly, Libby & Hoopes, P.C.
175 Federal Street
Boston, MA  02110

_____
Michael J. Trevelline

*Supplemental Answers to Interrogatories—Page 2*

229

| | | |
|---|---|---|
| 1 | Q  You generally understand, I guess somewhat | 16:24:32 |
| 2 | ironically, that in terms of the divorce case, it | 16:24:35 |
| 3 | would be better off for Mr. Domash to list having low | 16:24:38 |
| 4 | assets and high liabilities in terms of the ultimate | 16:24:44 |
| 5 | support order? | 16:24:47 |
| 6 | A  That's really kind of beyond me.  I wasn't | 16:24:48 |
| 7 | involved in that kind of thing, I really wasn't. | 16:24:50 |
| 8 | Larry said to me -- well, I'll just wait. | 16:25:09 |
| 9 | Q  You filled out income tax returns, did you | 16:25:18 |
| 10 | not, from 1999 through 2002? | 16:25:22 |
| 11 | A  The accountant did -- you're talking about | 16:25:26 |
| 12 | our personal returns? | 16:25:30 |
| 13 | Q  Your personal returns? | 16:25:31 |
| 14 | A  The accountant did, I never did. | 16:25:32 |
| 15 | Q  Did you provide him information so that he | 16:25:34 |
| 16 | could fill it out? | 16:25:38 |
| 17 | A  Yes.  But there was precious little to | 16:25:38 |
| 18 | provide.  I didn't have an income at that time so the | 16:25:45 |
| 19 | money there is Vicky's. | 16:25:49 |
| 20 | Q  Can you describe for me the way your | 16:25:55 |
| 21 | reported agreement with Mr. Domash was reflected on | 16:26:03 |
| 22 | your tax returns from 1999 through the present? | 16:26:07 |



EXHIBIT

B

DEPOSITION OF PETER M. MACE
CONDUCTED ON WEDNESDAY, FEBRUARY 21, 2007

129

| | | |
|---|---|---|
| 1 | me to retain to handle this matter for him. | 13:53:59 |
| 2 | Q  Continues, "It occurs to me if Larry can | 13:54:01 |
| 3 | take out a bank loan to buy a motorboat, he can just | 13:54:06 |
| 4 | as easily take down a bank loan and repay everyone | 13:54:09 |
| 5 | else"; is that correct? | 13:54:13 |
| 6 | A  That's true. | 13:54:14 |
| 7 | Q  Did you first learn about this on Monday, | 13:54:14 |
| 8 | February 4th, 2002? | 13:54:17 |
| 9 | A  Whenever I first learned about it, I can't | 13:54:18 |
| 10 | tell you when. | 13:54:24 |
| 11 | Q  I guess my question is I know that -- | 13:54:24 |
| 12 | A  I can't tell you when. | 13:54:27 |
| 13 | Q  So it's possible then that those exhibits, | 13:54:28 |
| 14 | Mace 9 and Mace 10 which were dated January 17, 2002 | 13:54:33 |
| 15 | and January 23, 2002 related to something entirely | 13:54:37 |
| 16 | different than the bank loan for the motor boat? | 13:54:42 |
| 17 | A  It's possible. | 13:54:45 |
| 18 | Q  Did you ever talk to Mr. Domash about why | 13:54:46 |
| 19 | he couldn't just as easily take out a bank loan to | 13:54:52 |
| 20 | repay everybody else? | 13:54:58 |
| 21 | A  I tried to and I was told by Larry that he | 13:54:58 |
| 22 | had changed his mind, had not taken out a bank loan | 13:55:04 |

DEPOSITION OF PETER M. MACE
CONDUCTED ON WEDNESDAY, FEBRUARY 21, 2007

130

| | | |
|---|---|---|
| 1 | and had paid cash for the boat. | 13:55:07 |
| 2 | Q  How did you respond to that? | 13:55:09 |
| 3 | A  I took it in as I took in most things from | 13:55:11 |
| 4 | Larry.  I didn't know how expensive the boat was.  I | 13:55:17 |
| 5 | don't know anything about boating.  He had wanted it | 13:55:23 |
| 6 | and he got it. | 13:55:28 |
| 7 | Q  Did you say -- can you still take out a | 13:55:29 |
| 8 | bank loan to repay everyone else? | 13:55:33 |
| 9 | A  No, because he had told me he had not | 13:55:35 |
| 10 | taken out a bank loan.  First, he said he did, and | 13:55:38 |
| 11 | then he said he had paid cash for it.  He changed his | 13:55:40 |
| 12 | mind and the story. | 13:55:44 |
| 13 | Q  I understand that.  Isn't that even more | 13:55:45 |
| 14 | of a reason that he could probably take out a bank | 13:55:47 |
| 15 | loan to repay everyone else, the fact that he hadn't | 13:55:48 |
| 16 | already taken one? | 13:55:50 |
| 17 | A  It would be better to ask your client | 13:55:51 |
| 18 | that. | 13:55:54 |
| 19 | Q  I'm asking you whether you asked him that? | 13:55:54 |
| 20 | A  No, I did not ask him that.  I was waiting | 13:55:56 |
| 21 | to find out whether or not we had this opportunity. | 13:56:01 |
| 22 | Q  Why did you write this note to Dr. Graham? | 13:56:07 |

DEPOSITION OF PETER M. MACE
CONDUCTED ON WEDNESDAY, FEBRUARY 21, 2007

131

| | | |
|---|---|---|
| 1 | A Because I was -- why did I write the note | 13:56:10 |
| 2 | to Dr. Graham?  Because Dr. Graham was someone whose | 13:56:16 |
| 3 | judgment I trusted and someone who Larry had worked | 13:56:21 |
| 4 | with a great deal. | 13:56:24 |
| 5 | Q Why did you write that specific note? | 13:56:25 |
| 6 | What was your concern that led you to write that | 13:56:36 |
| 7 | note? | 13:56:39 |
| 8 | A My concern that led me to write the note | 13:56:39 |
| 9 | was the issue of Larry and the payment and what was | 13:56:44 |
| 10 | Larry doing.  I mean that was the concern.  The note | 13:56:49 |
| 11 | speaks for itself.  The problem is that, if there is | 13:56:52 |
| 12 | one, is that Larry chose to -- if he did in fact buy | 13:56:57 |
| 13 | a motor boat, he did choose to pay cash for it.  I | 13:57:02 |
| 14 | was frustrated with Larry because I would go to | 13:57:06 |
| 15 | Hughes and Associates and get a release and I would | 13:57:14 |
| 16 | send it to him, this must have happened probably on | 13:57:21 |
| 17 | two or three occasions.  And he would misplace the | 13:57:24 |
| 18 | release and ask me to go back and get it again.  So | 13:57:29 |
| 19 | there was an element of frustration on my part there. | 13:57:32 |
| 20 | MR. TREVELLINE:  Let me stop and put on | 13:57:35 |
| 21 | the record.  Ever since we got back from break, Mr. | 13:57:38 |
| 22 | Domash has been audibly giggling in the background. | 13:57:40 |

132

| | |
|---|---|
| 1 | You can continue. | 13:57:46 |
| 2 | THE WITNESS:  So that was -- that's really | 13:57:48 |
| 3 | all I have to say about that. | 13:57:51 |
| 4 | (Mace Exhibit No. 12 was marked for | 13:58:08 |
| 5 | identification and retained by counsel.) | 13:58:08 |
| 6 | BY MR. BROOKS: | 13:58:08 |
| 7 | Q   Just to be clear, as of February 4, 2002, | 13:58:08 |
| 8 | despite the fact that you first probably took out a | 13:58:12 |
| 9 | bank loan, then you found out that he paid cash for a | 13:58:12 |
| 10 | motor boat, you had no concerns about the fact that | 13:58:16 |
| 11 | he owed you a lot of money? | 13:58:18 |
| 12 | A   Well, he owed a number of people a lot of | 13:58:20 |
| 13 | money.  But, you know, he was saying when this issue | 13:58:26 |
| 14 | arose that, you know, not to be concerned, that | 13:58:33 |
| 15 | everyone would be paid.  I had never known him not to | 13:58:36 |
| 16 | live up to his word. | 13:58:41 |
| 17 | Q   Sir, I'm showing you what's been marked as | 13:58:42 |
| 18 | Exhibit Mace 12.  It's Bates number Graham 1902. | 13:58:57 |
| 19 | It's a handwritten note dated May 3rd, 2002. | 13:59:04 |
| 20 | Do you recognize this handwriting? | 13:59:12 |
| 21 | A   I believe this is the handwriting of Wendy | 13:59:13 |
| 22 | Tonn, who is Dr. Graham's administrative assistant. | 13:59:17 |

Response No. 25:

Aside from the copy of the power of attorney that Mr. Mace produced in this case,

Mr. Domash does not have any documents responsive to this Request in his possession,

custody or control.

Request No. 26:

Any documents relating to your dealings with and views of William F.
McSweeny, III.

Response No. 26:

In addition to LD 0049, which Defendant has already produced, Defendant

produces herewith documents bates-numbered LD 0316 to 0320 in response to this

Request.

Request No. 27:

All your federal tax returns for the years 1998, 1999, 2000, 2001, 2002, and 2003.

Response No. 27:

Defendant objects to this Request on the ground that his tax returns are irrelevant

to this litigation and not reasonably calculated to lead to the discovery of admissible

evidence. Defendant has not made an issue of his income. Accordingly, Defendant's tax

returns are not discoverable, and he will not produce them pursuant to this Request.

Request No. 28:

All financial records from 1 January 1999 through 31 December 2002. Include all
records of assets of whatever type you held an interest in during this period, to include
but not limited to bank accounts, brokerage accounts, trust accounts, retirement accounts,
real estate holdings, interests in privately-held businesses.

7



Response No. 28:

Defendant objects to this Request on the ground that the documents sought by this

Request are irrelevant and not reasonably calculated to lead to the discovery of

admissible evidence. Defendant further objects on the ground that this Request is overly

broad and unduly burdensome. Without waiving these objections, Defendant states that

he does not have any documents responsive to this Request in his possession, custody or

control.

Request No. 29:

The complete records of any litigation you were involved in where Mr. Mace
either discussed the litigation with you, or met with you at the courthouse the day a
hearing was held, or communicated with one of your lawyers on your behalf. Include at a
minimum the litigation captioned Katherine F. Domash v. Larry A. Domash, Docket No.
96D-1548-D1, Commonwealth of Massachusetts, Probate & Family Court Dept., Norfolk
County Division.

Response No. 29:

Defendant objects to this Request as overly broad and unduly burdensome.

Defendant further objects to this Request on the ground that there is no case captioned as

set forth above. Defendant further objects to this Request on the ground that the

documents sought by this Request are irrelevant and not reasonably calculated to lead to

the discovery of admissible evidence. Defendant points out that the litigation between

Defendant and his ex-wife has been going on for approximately 11 years and is still

ongoing. Without waiving these objections, Defendant is producing herewith the

Judgments entered in this case during the time period relevant to the Complaint. These

documents are bates-numbered LD 0321 to 0391.

LAW OFFICES OF
# MICHAEL J. TREVELLINE

1823 JEFFERSON PLACE, NW
WASHINGTON, DC 20036-2504

ADMITTED
LOUISIANA
NEW YORK
DISTRICT OF COLUMBIA
MARYLAND

27 April 2007

TELEPHONE (202) 737-1139
1-800-587-1700
(OUTSIDE WASHINGTON METROPOLITAN AREA)
FACSIMILE (202) 775-1118
RESIDENCE (202) 636-3740
EMAIL: mjt@mjtlegal.com
WEB SITE: www.mjtlegal.com

Mr. Douglas S. Brooks
Kelly, Libby & Hoopes, P.C.
175 Federal Street
Boston, MA  02110


RE:  **Mace v. Domash—Inadequate Responses to Requests for Production**

Dear Mr. Brooks:

I am writing to point out inadequacies in your and your clients' response to my client's requests for production.  Please provide the below-requested information by 11 May 2007.  If I do not have adequate responses by then, I propose that we conduct a Rule 37 meeting to resolve this discovery dispute in the lobby of the U.S. District Court for the District of Columbia on Tuesday 15 May at 8:30 a.m.  Please let me know at your earliest convenience if you or Mr. Carter cannot attend.

**Request for Documents No. 27:**  Number 27 requests: "All your federal tax returns for the years 1998, 1999, 2000, 2001, 2002, and 2003."  The Defendant objects "on the grounds that his tax returns are irrelevant to this litigation and are not reasonably calculated to lead to the discovery of admissible evidence.  Defendant has not made an issue of his income.  Accordingly, Defendant's tax returns are not discoverable, and he will not produce them pursuant to this Request."

Your argument that the Defendant has the exclusive prerogative to decide what is at issue in the case is erroneous.  It is significant that you cite no legal grounds for your argument— since none exists.  I refer you to Count II of Mr. Ackerman's complaint alleging fraud for misrepresenting intention to pay.  I also refer you to Mr. Mace's supplemental answer to Defendant's Interrogatory No. 5, where it is stated that "Because of this financial uncertainty, Mr. Domash said in effect that he needed to maintain as much financial liquidity as he could, although he did maintain at all time that he did have the financial wherewithal to uphold his financial obligations to me." And again:  "[Mr. Domash] also repeatedly told me that he was doing his best to maintain his financial liquidity."  Mr. Mace

EXHIBIT

LAW OFFICE OF
## MICHAEL J. TREVELLINE

*Letter to Mr. Brooks*
*Page 2*
*27 April 2007*

alleges that Mr. Domash "did not conserve his financial liquidity as he said he needed to do and would do, and since he was not uncertain about the financial results of the domestic relation litigation."

However, of even more significance are your deposition questions addressed to Mr. Mace. There you asked repeatedly questions bearing on Mr. Domash's financial status. For you to argue now that evidence bearing on Mr. Domash's financial status is "not reasonably calculated to lead to the discovery of admissible evidence" is contradicted over and over again by your own words. I refer you especially to Domash Deposition transcript page 229, lines 1-5, as well as to pages 107-108 and 121-132.

As to the deficient responses to my client's requests, I look forward to your prompt and favorable reply. Please call or write with any questions.

Very truly yours,

Michael J. Trevelline

cc:    Mr. Peter M. Mace



KLH BOSTON | KELLY LIBBY & HOOPES

DOUGLAS S. BROOKS
Email: dbrooks@klhboston.com

April 27, 2007

**By First Class Mail and Email**

Michael J. Trevelline, Esq.
1823 Jefferson Place, NW
Washington, D.C. 20036-2504

> Re: <u>Mace v. Domash</u>

Dear Mr. Trevelline:

I write in response to your letter of today's date regarding Defendant's objection to produce his tax returns in response to your request that he do so.

Respectfully, your letter mischaracterizes Defendant's position. He does not claim that he "has the exclusive prerogative to decide what is at issue in the case." Rather, his position relates exclusively to the confidentiality covering the discovery of tax returns. Contrary to your assertion that no legal grounds exist for Defendant's position, under the relevant caselaw, where a party has not made an issue of his income – even if the other party has – tax returns are not discoverable. *See, e.g., Payne v. Howard*, 75 F.R.D. 465, 470 (D.D.C. 1977). "To compel the taxpayers themselves to furnish copies of their returns unless they have waived that right by making an issue of their income would be a subterfuge and defeat the very purpose of the statute." *Id.* (quoting *Federal Savings & Loan Ins. Corp. v. Krueger*, 55 F.R.D. 512, 514 (N.D. Ill. 1972)) (holding defendant's tax returns not discoverable where <u>plaintiff</u>, as opposed to defendant, made an issue of defendant's income).

Here, Defendant has not made an issue of his income in either his affirmative defenses or any of his discovery responses. Further, my questioning of Plaintiff at his deposition does not alter this analysis in any way. The questions on page 229 probed <u>Plaintiff's</u> understanding of the hypothetical effect of Defendant's financial situation as it related to his divorce case. The questions and testimony on pages 107-108 involved <u>Plaintiff's</u> understanding of whether Defendant's financial status had any effect on the alleged contract at issue (Plaintiff said it did not). The questions on pages 121-132 were designed to determine why <u>Plaintiff</u> was upset in early 2002 when he found out that Defendant had purchased a motorboat with cash. None of the above reflects Defendant making an issue of his income in this litigation.





KLH BOSTON | KELLY
LIBBY&
HOOPES

Michael J. Trevelline, Esq.
April 27, 2007.
Page 2

Finally, it is somewhat ironic that you are complaining about Mr. Domash's
outstanding discovery on financial issues when you have failed to respond adequately to
Defendant's financial discovery requests. For example: (1) you produced no documents
(including the requested tax returns from 1989 to 1998) in response to request number 15
on the Exhibit A attached to Mr. Mace's Amended Notice of Deposition; (2) you failed to
provide within the extended discovery deadline the accountant's financial statement that
you claimed was responsive to Defendant's First Set of Requests for Documents; (3) you
failed within the extended discovery deadline to provide your promised "more detailed
accounting" which you claimed was responsive to Interrogatory number 1 of Defendant's
First Set of Interrogatories; (4) you failed entirely to respond (not even an objection) to
Defendant's Second Set of Interrogatories which contained two interrogatories, both
requesting financial information from Plaintiff; and (5) you have not produced any of the
financial documents that Plaintiff testified at deposition would be subsequently produced.

Very truly yours,

Douglas S. Brooks

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PETER M. MACE                              )
                                           )
                                           )
                                           )
                                           )
              Plaintiff                    )
                                           )
v.                                         ) Case No. 1:05CV02244 (HHK)
                                           ) NEXT EVENT:
LARRY A. DOMASH                            ) Close of Discovery – 4/23/07
                                           )
                                           )
                                           )
              Defendant                    )
                                           )

## DEFENDANT LARRY DOMASH'S RESPONSES
## TO PLAINTIFF'S SECOND REQUESTS FOR PRODUCTION

By making documents available in response to Plaintiff s Second Requests for

Production (the "Requests"), Defendant Larry Domash does not waive and does not

intend to waive any objections which he may have with respect to the subsequent use of

those documents and specifically reserves and does not waive (1) the right to object to all

requests as to the competency, privilege, relevance, materiality and admissibility of all

documents produced and the subject matter thereof; (2) the right to object to the use of

any said documents, in whole or part, or to the subject matter covered thereby, at any

subsequent step or proceeding in this action, for any and all of the grounds set forth

herein.or any other proper grounds; (3) the right to object on any and all proper grounds,

at any time, to other discovery procedures involving or relating to the subject matter of

the documents thereby made available; and (4) all objections as to vagueness and

ambiguity. Nothing herein shall be construed as an admission by Defendant regarding



EXHIBIT

the admissibility or relevance of any fact or document, or regarding the truth or accuracy of any characterization contained in these requests.

Privileged documents responsive to particular requests, if any such documents exist, are not being produced. If any document which is properly the subject of the attorney-client or attorney work product doctrine is produced, such production has been inadvertent and is not to be construed as a waiver of the attorney-client or attorney work product doctrine.

## GENERAL OBJECTIONS

Defendant responds to each and every Request subject to the Preliminary Statement and General Objections stated herein. These objections form a part of the response to each and every Request, and are set forth here to avoid duplication and repetition from restating them for each Request. These General Objections may be specifically referred to in response to certain Requests for the purpose of clarity. The failure to refer specifically to a General Objection, however, shall not be construed as a waiver of the General Objection even if other General Objections are specifically stated in response to the Request.

Defendant sets for the following General Objections to Plaintiff's Second Requests for Production.

1.    Defendant objects to the Requests to the extent that they call for more by way of a response, production, or otherwise than is required by the Federal Rules of Civil Procedure or other applicable law.

2.    Defendant objects to the Requests to the extent that they call for the production of any and all information which constitutes attorney-client

2

privileged materials, other privileged matter trial preparation materials,

other protected attorney work product materials, documents covered by

another statutory or common privilege or immunity, and/or documents

created by Defendant, his counsel or his representatives after the

commencement of litigation.

3.      Defendant objects to the Requests to the extent that they seek documents

or information that is not in his actual possession, custody or control.

4.      Defendant objects to each and every Request to the extent that it is overly

broad, unduly burdensome, or intended solely to harass.

5.      Defendant objects to each and every Request to the extent that it seeks

information for an unlimited period of time and is otherwise overly broad,

as to time or scope.

6.      Defendant objects to the Requests in that they purport to subject him to the

requirements of the laws of the State of Maryland – as well as the rules of

that State's Superior Court system – notwithstanding the fact that this case

is pending is federal court.

7.      The production of documents responsive to each Request is based on

Defendant's best efforts. Defendant expressly reserves the right to amend

and/or supplement his production as appropriate prior to the trial of this

action and reserves all evidentiary objections to the time of trial.

8.      The general objections set forth herein and any objections to the specific

Requests set forth below, are made without prejudice to, or waiver of

Defendant's right to object further on any and all appropriate grounds to

3

producing further information or to producing specific documents or

things hereafter, either prior to, or at the time the information is provided,

or at time of production of any such documents.

## OBJECTIONS AND RESPONSES TO SPECIFIC REQUESTS

Defendant responds to each and every Request subject to and without waiver of

the Preliminary Statement and General Objections stated herein.

Request No. 15:

If in Response to Interrogatory No. 21, you say that you have ever contemplated starting an investment or investment advise business of any kind, produce all documents whatsoever that concern the contemplated firm.

Response No. 15:

Mr. Domash does not have any documents responsive to this Request in his

possession, custody or control.

Request No. 16:

All records of any planned business that was referred to by the provisional name of Domash & Associates.

Response No. 16:

Mr. Domash does not have any documents responsive to this Request in his

possession, custody or control.

Request No. 17:

All records reflecting money you presently owe or have owed to Dr. George Graham or any entity of which he is a principal.

Response No. 17:

Mr. Domash produces herewith documents Bates-numbered LD 0312-0315 in

response to this Request.

Request No. 18:

All records reflecting payments you have ever made to Dr. George Graham or any entity of which he is a principal.

Response No. 18:

*See* Response No. 17.

Request No. 19:

All records of any business dealings you may have had with Dr. George Graham, Graham Consulting, Graham Capital International, or Versant. (Exclude any records relating to professional counseling services Dr. Graham may have provided you.)

Response No. 19:

Mr. Domash does not have any documents responsive to this Request in his

possession, custody or control.

Request No. 20:

All records of any business dealing you may have had with The OSO Group.

Response No. 20:

Mr. Domash does not have any documents responsive to this Request in his

possession, custody or control.

Request No. 21:

All documents reflecting monies received by you from your father and your mother from 1990 to November 2002. Include monies received by any means such as gift, inheritance, payment.

Response No. 21:

Mr. Domash does not have any documents responsive to this Request in his

possession, custody or control.

Request No. 22:

All documents reflecting monies received by you from any sources by way of inheritance or gift from 1990 to November 2002.

Response No. 22:

Mr. Domash does not have any documents responsive to this Request in his

possession, custody or control.

Request No. 23:

All documents related to the corporation you formed in 2001 or early 2002, which you describe in paragraph 5 of the document bates-numbered Mace 000005.

Response No. 23:

Mr. Domash objects to this Request on the ground that he did not describe any

corporation in the document bates-numbered Mace 000005. That document is a letter

authored by Plaintiff. Without waiving this objection, Mr. Domash states that he does

not have any documents responsive to this Request in his possession, custody or control.

Request No. 24:

All documents showing the profit you made on the sale of a house located at

Wynnewood, Pennsylvania.

Response No. 24:

Mr. Domash does not have any documents responsive to this Request in his

possession, custody or control.

Request No. 25:

All documents relating to the power of attorney you granted to Mr. Mace, including any documents relating to any actions that Mr. Mace took under the authority of the power of attorney. Include the power of attorney itself.

Response No. 25:

Aside from the copy of the power of attorney that Mr. Mace produced in this case,

Mr. Domash does not have any documents responsive to this Request in his possession,

custody or control.

Request No. 26:

Any documents relating to your dealings with and views of William F.
McSweeny, III.

Response No. 26:

In addition to LD 0049, which Defendant has already produced, Defendant

produces herewith documents bates-numbered LD 0316 to 0320 in response to this

Request.

Request No. 27:

All your federal tax returns for the years 1998, 1999, 2000, 2001, 2002, and 2003.

Response No. 27:

Defendant objects to this Request on the ground that his tax returns are irrelevant

to this litigation and not reasonably calculated to lead to the discovery of admissible

evidence. Defendant has not made an issue of his income. Accordingly, Defendant's tax

returns are not discoverable, and he will not produce them pursuant to this Request.

Request No. 28:

All financial records from 1 January 1999 through 31 December 2002. Include all
records of assets of whatever type you held an interest in during this period, to include
but not limited to bank accounts, brokerage accounts, trust accounts, retirement accounts,
real estate holdings, interests in privately-held businesses.

Response No. 28:

Defendant objects to this Request on the ground that the documents sought by this

Request are irrelevant and not reasonably calculated to lead to the discovery of

admissible evidence.  Defendant further objects on the ground that this Request is overly

broad and unduly burdensome.  Without waiving these objections, Defendant states that

he does not have any documents responsive to this Request in his possession, custody or

control.

Request No. 29:

The complete records of any litigation you were involved in where Mr. Mace
either discussed the litigation with you, or met with you at the courthouse the day a
hearing was held, or communicated with one of your lawyers on your behalf.  Include at a
minimum the litigation captioned Katherine F. Domash v. Larry A. Domash, Docket No.
96D-1548-D1, Commonwealth of Massachusetts, Probate & Family Court Dept., Norfolk
County Division.

Response No. 29:

Defendant objects to this Request as overly broad and unduly burdensome.

Defendant further objects to this Request on the ground that there is no case captioned as

set forth above.  Defendant further objects to this Request on the ground that the

documents sought by this Request are irrelevant and not reasonably calculated to lead to

the discovery of admissible evidence.  Defendant points out that the litigation between

Defendant and his ex-wife has been going on for approximately 11 years and is still

ongoing.  Without waiving these objections, Defendant is producing herewith the

Judgments entered in this case during the time period relevant to the Complaint.  These

documents are bates-numbered LD 0321 to 0391.

Respectfully submitted,

Adam Carter (DJd)

Adam Augustine Carter
DC Bar # 437381
888 Seventeenth Street, N.W., Suite 900
Washington, D.C.  20006-3307
Tel: 202-261-2803
Fax: 202-261-2835
acarter@acarterlaw.com


Douglas S. Brooks
*Pro Hac Vice*
Kelly, Libby & Hoopes, P.C.
175 Federal Street
Boston, MA 02110
Tel: 617-338-9300
Fax: 617-338-9911
dbrooks@klhboston.com


Dated:  April 23, 2007

9

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and accurate copy of the foregoing Defendant Larry Domash's Responses to First Set of Requests for Production was delivered via email and first class mail to the following counsel for Plaintiff Peter M. Mace, this 23rd day of April, 2007.

Michael J. Trevelline, Esq.
1823 Jefferson Place, NW
Washington, D.C. 20036-2504
mjt@mjtlegal.com

Douglas S. Brooks