UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| PETER M. MACE,<br><br>Plaintiff<br><br>v.<br><br>LARRY A. DOMASH,<br><br>Defendant | Case No. 1:05CV02244<br>(HHK-DAR)<br><u>NEXT EVENT:</u><br>Status Hearing 10/19/07 |

**DEFENDANT LARRY DOMASH'S MEMORANDUM OF
POINTS AND AUTHORITIES IN OPPOSITION
<u>TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY</u>**

**I.   <u>Introduction</u>**

Defendant Larry Domash opposes Plaintiff Peter Mace's motion to compel production of Defendant's tax returns, because they are wholly irrelevant to the issues for which Plaintiff seeks them; namely, his fraud claim. Plaintiff's fraud claim is based on alleged statements that Defendant made to Plaintiff where Defendant allegedly claimed he had the financial wherewithal to reimburse Plaintiff for various expenditures, but needed to maintain maximum liquidity until the "dust settled" on his divorce litigation due to its uncertainties. At least five separate and independent reasons exist for denying Plaintiff's Motion to Compel Defendant's presumptively confidential and non-discoverable tax returns.

<u>First</u>, the tax returns are not discoverable because Mr. Domash has not made an issue of his income in this case. Under the well-reasoned caselaw cited below, this alone ends the inquiry.

<u>Second</u>, Mr. Domash does not deny both that he had the financial wherewithal to reimburse Mr. Mace during the period of the alleged oral contract and that he had the financial liquidity to do so. Rather, Mr. Domash denies any liability to Plaintiff because he never made any promise to reimburse Mr. Mace for the expenditures at issue (or any others). <u>In other words, the issue of Mr. Domash's need for, and actual maintenance of, financial liquidity is not in dispute in this case.</u> The only disputed issue related to the fraud claim is whether Mr. Domash promised to reimburse Mr. Mace for his expenditures. Obviously, his tax returns do not reflect such information.

<u>Third</u>, the Motion to Compel provides no factual basis for the notion that the requested tax returns would be relevant to Plaintiff's fraud claims even if Defendant were relying on a "need for liquidity" defense. Clearly, Defendant's tax returns would reveal neither his need to maintain financial liquidity, nor his actual maintenance of liquidity. Plaintiff provides no explanation to counter this seemingly obvious point.

<u>Fourth</u>, Plaintiff has already testified that he was aware of the basis for his fraud claims (*i.e.,* Defendant's alleged lack of need for, and failure to conserve, financial liquidity) during the life of the alleged contract (and more than three years before he filed suit). Accordingly, Plaintiff was fully aware of the basis for his fraud claim outside of the applicable statute of limitations period. He is therefore seeking discovery of Defendant's confidential tax records in an attempt to prove a concededly time-barred claim.

Fifth, even setting aside the above, to the extent that Plaintiff asserts Defendant's tax returns are the only source of information to support his fraud claim (a frivolous claim for the reasons already discussed), the fault lies entirely with Plaintiff, who failed to inquire about Defendant's personal financial situation in either of his two sets of interrogatories and further never sought to depose Defendant in this action. In fact, Defendant has already produced the only documents he has in his possession, custody or control that even arguably relate to Plaintiff's fraud claim.

The above makes clear that Plaintiff only seeks production of Defendant's tax returns for purposes of harassment. There is simply no relevance to Defendant's tax returns in this litigation. Given the reasoning contained in this Court's decisions pertaining to the strong public policy favoring confidentiality and presumptive non-disclosure of tax returns, Plaintiff's Motion to Compel should be denied.

## II.     Pertinent Factual Background

Plaintiff filed this action on November 18, 2005. Plaintiff's case is based on an alleged oral contract between the parties. Although the specific nature of his claim has been a moving target throughout this litigation, Plaintiff essentially alleges that between April 1999 and November 2002, Defendant agreed to (i) reimburse Plaintiff for his out-of-pocket expenditures in connection with an insurance company that Plaintiff was trying to develop; (ii) repay Plaintiff for funds expended by Plaintiff for Plaintiff's own living expenses and those of his cousin; and (iii) reimburse Plaintiff for any out-of-pocket expenditures made on Defendant's behalf. *See* Complaint ¶ 9. In connection with the alleged contract, Plaintiff brought a fraud claim based on Defendant's failure to reimburse Plaintiff.

Not only was this alleged oral contract never reduced to writing, but despite the hundreds of pages of (largely irrelevant) correspondence produced by Plaintiff in this matter, he has failed to produce even a single writing evidencing the parties' intent to enter into an oral agreement or the parties' subsequent acknowledgement of the existence of the alleged oral contract. Plaintiff concedes that he never sent Defendant any accounting of the amount he claimed owed during the life of the alleged contract (*see* Transcript of Deposition of Plaintiff Peter Mace at 269:15-270:4). (True and accurate copies of relevant deposition excerpts are attached hereto as Exhibit A). Indeed, his responses to Defendant's damages-related discovery make clear that Plaintiff did not even keep a running tally of his expenditures under the alleged oral contract.

On November 20, 2006, Plaintiff served his first sets of interrogatories and document requests on Defendant. (True and accurate copies attached hereto as Exhibits B and C). Plaintiff did not seek discovery of any information related to Defendant's financial situation or his maintenance of financial liquidity during the period of the alleged oral contract.

On December 14, 2006, in answering an interrogatory served by Defendant aimed at ascertaining the specific basis for the fraud claim, Plaintiff wrote:

> I believe that in discovery of Mr. Domash it will come to light that Mr. Domash had the financial wherewithal in April 1999 to reimburse me as promised. I believe that such discovery will further show that he had the financial wherewithal to reimburse me thought the November 2002 breach. Since he always had the financial wherewithal at all times, he must have never intended to keep this promise. I need to conduct further discovery of Mr. Domash's finances in order to answer fully this interrogatory and will supplement this answer after I have done so.

4

*See* Plaintiff's Answers to Defendant's First Set of Interrogatories, attached hereto as Exhibit D, at 5.  As stated below, this answer stands in direct contrast to Plaintiff's later deposition testimony and subsequent written discovery responses.

Defendant took Plaintiff's deposition on February 21 and 22, 2007.  In an attempt to discover specific information about Plaintiff's various claims, Plaintiff was asked a series of questions both about the basis of those claims and his knowledge (in real time) of Defendant's financial situation.  With regard to the fraud claim, when asked if Plaintiff took any steps to verify Defendant's financial wherewithal as of April 1999 (when the alleged contract was formed), he testified as follows:

> No, I had no reason to think that he could not meet it.  He said that he could.  He said that he could with ease, and he was simply waiting for the dust to settle on his child custody and divorce matters . . .

*See* Exhibit A, at 44:7-14.

Mr. Mace also testified that prior to November 18, 2002 (the statute of limitations cut-off date), he was well aware both that Mr. Domash had the financial wherewithal to reimburse him and that Mr. Domash was not maintaining financial liquidity as he had allegedly promised.  For example, Mr. Mace testified that: (1) in December 2001 or January 2002, he learned that Mr. Domash was in a financial position to reimburse him (*see* Exhibit A at 103:7-17); (2) when he wrote a letter to a third party on January 23, 2002 about Mr. Domash that stated, "This crap is going to stop," Mr. Mace meant to convey:  "I think what I was concerned about was [Mr. Domash] not being straightforward with us.  I mean, you know, you can't say that you don't have it [money to reimburse] when you're going off and buying a speedboat" (*id.* at 122:11-124:5); and (3) when he later wrote to the same third party on November 9, 2002: "Damn [Mr. Domash] and his selfishness and deceit," he was, among other things, referring to the fact

5

that Mr. Domash had promised to reimburse him but had not yet done so (*id.* at 181:10-184:22).

In sum, although Mr. Mace stated in his initial interrogatory answers that his fraud claim was based on his belief that discovery would reveal that Mr. Domash had the "financial wherewithal" to reimburse him, at deposition, Mr. Mace testified that he already knew this during the life of the alleged contract.

No doubt recognizing this inconsistency, on April 10, 2007, Plaintiff, without any prompting, supplemented his interrogatory answer to change the nature of his fraud claim. *See* Exhibit A to Plaintiff's Motion to Compel. Directly contradicting his initial interrogatory answers, Plaintiff wrote the following:

> [Mr. Domash] told me [his divorce] litigation caused him a great deal of financial uncertainty, both since he was spending much money on attorney's fees and expenses and since he would incur substantial property division, alimony and child support obligations. Because of this financial uncertainty, Mr. Domash said in effect that he needed to maintain as much financial liquidity as he could, although he did maintain at all times that he did have the financial wherewithal to uphold his financial obligation to me.

Notably, Mr. Domash's defense is not based on either a lack of financial wherewithal or on a purported need to maintain liquidity due to the uncertainties of his divorce proceedings. Instead, Mr. Domash denies liability because he never made any agreement or promise to reimburse Mr. Mace for the expenditures at issue (or any others). *See, e.g.,* Answer ¶ 9 (denying all allegations, which included allegations of alleged contract).

Meanwhile, on March 15, 2002, one week before the close of discovery, Plaintiff served his second set of interrogatories and document requests on Defendant. (True and accurate copies of those discovery requests are attached hereto as Exhibits E and F). The

6

interrogatories did not seek any information relating to Defendant's financial situation (either wherewithal or liquidity) or the status of his divorce litigation during the timeframe of the alleged contract. The document requests did request all of Defendant's financial records; the file in his divorce proceeding; and the disputed tax returns at issue in the motion at bar.

In response, Defendant stated (truthfully) that he had none of the requested financial records (all five to eight years old) in his possession, custody or control. Further, contrary to the erroneous statement in Plaintiff's Motion to Compel, Mr. Domash did provide certain documents related to his divorce proceedings (specifically, he provided the Modification Judgment that was entered during the life of the alleged contract, the only document in his possession, custody or control that he believed could even remotely be construed as relevant to this action). He objected to producing the "entire" file as overbroad, unduly burdensome, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. *See* Exhibit C to Motion to Compel. Plaintiff never raised any issues in response to this Objection and limited, good-faith production.

Defendant did object to Plaintiff's document request seeking production of his tax returns over a six-year period and refused to produce any of those records. However, after counsel negotiated an acceptable protective order, Defendant produced the one financial statement filed in his divorce proceeding during the relevant timeframe, which he had in his possession, custody or control. <u>Between the Modification Judgment and the financial statement, Mr. Domash has provided Mr. Mace all documents in his possession,</u>

7

<u>custody or control that even arguably reflect his need to maintain liquidity and his maintenance of same</u>.

Plaintiff never sought to depose Defendant in this lawsuit.

**III.    Argument**

      **A.    Defendant's Tax Returns are not Discoverable Because he has not Made an Issue of his Income.**

As this Court has recognized, courts have broadly construed 26 U.S.C. §§ 6103 and 7213(a) – statutes providing that tax returns are confidential communications between the taxpayer and the government – "to embody a general federal policy against indiscriminate disclosure of tax returns from whatever source." *Payne v. Howard*, 75 F.R.D. 465, 469 (D.D.C. 1977). The Court elaborated on the sound basis for this policy:

> The reason for this protection is straightforward. Unless taxpayers are assured that the personal information contained in their tax returns will be kept confidential, they likely will be discouraged from reporting all of their taxable income to the detriment of the government. The opposite is also true. Unless confidentiality is guaranteed, taxpayers will likely refrain from using all of the tax-saving measures to which they are lawfully entitled.

*Id.*

The *Payne* court discussed two distinct lines of authority on the issue of the discoverability of tax returns. It first cited *Federal Savings & Loan Ins. Corp. v. Krueger*, 55 F.R.D. 512, (N.D. Ill. 1972) for the proposition that: "To compel the taxpayers themselves to furnish copies of their returns <u>unless they have waived that right by making an issue of their income</u> would be a subterfuge and defeat the very purpose of the statute." *Payne*, 75 F.R.D. at 470 (emphasis added). The *Payne* court went on to hold that the tax returns at issue in that case were not discoverable, because plaintiff – not defendant – made an issue of defendant's income. *Id.* This is precisely the situation

8

here.  Accordingly, if this Court decides to follow the first line of cases cited in *Payne*, this alone ends the inquiry, and Mr. Domash's tax returns are not discoverable.  However, as set forth below, regardless of which line of cases the Court adopts, the Motion to Compel should be denied.

> **B.    Mr. Domash's Tax Returns are not Discoverable Because he does not Dispute that he had the Financial Liquidity to Reimburse Mr. Mace During the Life of the Alleged Contract.**

Without adopting their reasoning, the *Payne* court recognized that there is a second line of cases that has "taken a less generous view of the statutory protection given to federal tax returns."  *Id.*  However, nothing in these cases permits Plaintiff to obtain Defendant's tax returns in this case.  As stated in *Payne*:

> But even these decisions have recognized that tax returns are discoverable only 'in appropriate circumstances,' as where access to tax returns is necessary to replace 'lost, destroyed or otherwise unavailable' sources of information or to determine accurately the relationship of co-defendants in a 'tangled network of individuals, corporations and other legal entities.'

*Id.*  (citing *Heathman v. United States District Court*, 503 F.2d 1032, 1033 (9th Cir. 1974)).  This standard is also inapplicable here.  As the court in *Payne* observed, "[t]he threshold question here is relevance . . ..  Parties to a lawsuit are only entitled to discover information that 'appears reasonably calculated to lead to the discovery of admissible evidence.'"  *Id.* at 469 (citing Fed. R. Civ. P. 26(b)(1)).

The most obvious reason for denying the Motion to Compel is that <u>Mr. Domash does not deny that he had the financial liquidity to reimburse Mr. Mace during the life of the alleged contract.</u>  His defense to the fraud claim – and the entire case – is not that he needed to delay payment to Mr. Mace for purposes of maintaining financial liquidity, but rather that he never promised to reimburse Mr. Mace in the first place.  *See, e.g.,* Answer ¶ 9. Accordingly, the issues of (i) Mr. Domash's financial wherewithal, (ii) his need to

maintain financial liquidity, and (iii) his actual maintenance of financial liquidity are not in dispute in this case.  The <u>only</u> issue germane to Mr. Mace's fraud claim is whether Mr. Domash ever promised to reimburse him.  Clearly, information relating to whether Mr. Domash in fact made such a promise will not be found in Mr. Domash's tax returns.

    **C.** **Mr. Domash's Tax Returns are not Discoverable Because Even if the Issue of Financial Liquidity was in Dispute, the Tax Returns are Still not Relevant to Plaintiff's Fraud Claim**.

Even leaving aside for the moment that Mr. Domash does not deny having the financial liquidity to reimburse Mr. Mace, Mr. Domash's tax returns bear no relationship whatsoever to Plaintiff's fraud claim.  Plaintiff acknowledges that Mr. Domash's level of <u>income</u> does not serve as the basis for his claim.  Indeed, he acknowledges that Mr. Domash told him in April 1999 when the alleged contract was formed – and repeated it throughout the life of the contract – that he had the financial wherewithal and ability to reimburse Plaintiff.  *See* Exhibit A to Motion to Compel.  Instead, Plaintiff's claim is based on the allegation that Mr. Domash allegedly told him that he would need to delay payment because he needed to maintain as much financial liquidity as possible due to the uncertainty of his divorce proceeding.  *See id.*

Tax returns simply do not reveal the type of information for which Plaintiff seeks them (*i.e.*, information bearing on financial liquidity).  For example, they do not contain information on current assets, current liabilities, future income, future assets or future expenses.  Moreover, they do not contain information on the amount of child support payments (as those payments are not tax deductible), one of the critical issues in Mr. Domash's divorce case.  Put simply, the requested tax returns can shed <u>no</u> light on the veracity of Plaintiff's fraud claim, and the Motion to Compel does not state otherwise.

### D. Mr. Domash's Tax Returns Should not be Discoverable Because Mr. Mace has Already Testified that he Knew, Outside of the Limitations Period, the Financial Information that he now Seeks.

In his supplemental interrogatory answers (Exhibit A to Motion to Compel), Mr. Mace supports his fraud claim by stating: "Instead of conserving his financial liquidity, [Mr. Domash] purchased a motor boat and may have made other expenditures inconsistent with his fraudulent promises to me and false concerns he expressed to me." Yet Mr. Mace testified that prior to November 18, 2002 (the statute of limitations cut-off date),[1] he was well aware both that Mr. Domash had the financial wherewithal to reimburse him and that Mr. Domash was not maintaining financial liquidity as he had allegedly promised.

For example, Mr. Mace testified that: (1) in December 2001 or January 2002, he learned that Mr. Domash was in a financial position to reimburse him (*see* Exhibit A at 103:7-17); (2) when he wrote a letter to a third party on January 23, 2002 about Mr. Domash that stated, "This crap is going to stop," Mr. Mace meant to convey: "I think what I was concerned about was [Mr. Domash] not being straightforward with us. I mean, you know, you can't say that you don't have it [money to reimburse] when you're going off and buying a speedboat" (*id.* at 122:11-124:5); and (3) when he later wrote to the same third party on November 9, 2002: "Damn [Mr. Domash] and his selfishness and deceit," he was, among other things, referring to the fact that Mr. Domash had promised to reimburse him but had not yet done so (*id.* at 181:10-184:22).

Accordingly, there can be no doubt that Mr. Mace's fraud claim is barred by the statute of limitations. *See, e.g., Richards v. Duke University,* 480 F.Supp.2d 222, 236

---

[1] *See* D.C. Code § 12-301 (statute of limitations for fraud claim is three years).

11

(D.D.C. 2007) (dismissing fraud claim as time-barred where plaintiff knew of allegedly fraudulent conduct more than three years before filing complaint).  While the timeliness of his Complaint, of course, is not directly at issue for purposes of the Motion to Compel, in light of the confidential treatment that courts afford to tax returns, the statute of limitations is certainly a germane point for the Court to consider – especially here, where Mr. Mace's testimony (fatal to his claim) is both unequivocal and undisputed.

### E.    Plaintiff has no One to Blame but Himself if he Believes that he is Lacking Financial Information Relating to Defendant.

Mr. Mace cites a case from another district for the proposition that, if otherwise relevant, tax returns may be discoverable "because the information contained therein is not otherwise readily obtainable."  *See* Motion to Compel at 5 (citing *Smith v. Bader*, 83 F.R.D. 437, 438 (S.D.N.Y. 1979)).  Even if the information in the tax returns was relevant to his fraud claim (which it is not), Mr. Mace still would have no legitimate basis to complain that the information is not otherwise obtainable.

Plaintiff never sought to depose Defendant in this action.  He sent two sets of interrogatories, neither of which contained any questions related to Mr. Domash's financial wherewithal, his need to maintain financial liquidity or his actual maintenance of financial liquidity during the relevant timeframe.  *See* Exhibits B and E.  One week before the close of discovery, Mr. Mace served untimely document requests on Defendant, which arguably did seek some of this information.  *See* Exhibit F.[2]  Mr. Domash produced all documents that he had in his possession, custody or control even arguably relating to these issues.  Mr. Mace should not now be able to discover Mr.

---

[2] The Court ultimately granted Plaintiff's motion to extend the discovery deadline for purposes of requiring Defendant to respond to these tardy discovery requests.

12

Domash's (<u>irrelevant</u>) tax returns, where his own lack of diligence prevented him from discovering potentially relevant information elsewhere.

### III.     **Conclusion**

For the foregoing reasons, this Court should DENY Plaintiff's Motion to Compel Defendant's confidential and presumptively non-discoverable tax returns.

                                                            Respectfully submitted,

                                                    /s/ Adam Augustine Carter
                                                    Adam Augustine Carter
                                                    DC Bar # 437381
                                                    888 Seventeenth Street, N.W., Suite 900
                                                    Washington, D.C.  20006-3307
                                                    Tel: 202-261-2803
                                                    Fax: 202-261-2835
                                                    acarter@acarterlaw.com


                                                    Douglas S. Brooks
                                                    Douglas S. Brooks
                                                    *Pro Hac Vice*
                                                    Kelly, Libby & Hoopes, P.C.
                                                    175 Federal Street
                                                    Boston, MA 02110
                                                    Tel: 617-338-9300
                                                    Fax: 617-338-9911
                                                    dbrooks@klhboston.com


Dated:  October 1, 2007

**CERTIFICATE OF SERVICE**

      I hereby certify that a copy of the foregoing was served by electronic case filing through the Court on the above date.

                                               /s/ Douglas S. Brooks_____
                                               Douglas S. Brooks