# Exhibit H

## Michael Trevelline

| | |
|---|---|
| **From:** | Michael Trevelline [mjt@mjtlegal.com] |
| **Sent:** | Saturday, September 22, 2007 11:30 AM |
| **To:** | 'Douglas Brooks' |
| **Subject:** | Draft Stipulation of Fact |

**Attachments:** Stipulation of Fact Agreement 1.doc; Praecipe Mot to Compel .doc; Stipulation of Fact 1.doc

Mr. Brooks,

As I promised, I am providing a draft stipulation of fact and related papers as you suggested.

**Mike Trevelline**
**Law Office of Michael J. Trevelline**
**1823 Jefferson Place, NW**
**Washington, DC  20036-2504**
**Voice:  (202) 737-1139 (direct dial 2039)**
**Fax:  (202) 775-1118**
**Cell:  (406) 531-1210**
**Email:  mjt@mjtlegal.com**
**Web site:  www.mjtlegal.com**


EXHIBIT

H

10/11/2007

## United States District Court
## For the District of Columbia

Peter M. Mace

    Plaintiff,

      vs.

Larry A. Domash

    Defendant

Case No. 1: 05-02244 (HHK) (DAR)

## Stipulation of Fact

It is hereby stipulated between the Plaintiff and the Defendant

that the following facts are true:

From 1998 to 2003, the income of Defendant Larry Domash

ranged from a low of $170,000 per year to a high of over $500,000 per

year. At all times during this period, he possessed liquid assets (cash,

stocks and other assets) of over $500,000.

Dated: _____

Signed: _____

Michael J. Trevelline, DC Bar # 437454
Address:    1823 Jefferson Place, NW
             Washington, DC 20036-2504
Telephone:  (202) 737-1139/Fax: (202) 775-1118
Email:      mjt@mjtlegal.com
Attorney for Plaintiff Peter M. Mace

Dated: _____

Signed: _____

Douglas Brooks, *Pro Hoc Vice*
             Kelly, Libby & Hoopes, P.C.
Address:    175 Federal Street
             Boston, MA 02110
Telephone:  (617) 338-9300/Fax: (617) 261-2835
Email:      dbrooks@klhboston.com
Attorney for Defendant Larry Domash

## United States District Court
## For the District of Columbia

|  |  |  |
|---|---|---|
| Peter M. Mace | ) | |
| Plaintiff, | ) | |
| vs. | ) | Case No. 1: 05-02244 (HHK) (DAR) |
| Larry A. Domash | ) | |
| Defendant | ) | |

## Agreement Between Plaintiff & Defendant
## To Enter into a
## Stipulation of Fact

This Agreement ("Agreement") is made by and between Plaintiff Peter M. Mace ("Plaintiff") and Defendant Larry A. Domash ("Defendant").

### WITNESSETH

WHEREAS, in the above-referenced litigation, Plaintiff has filed a motion to compel the production of Defendant's federal tax returns for the years 1998, 1999, 2000, 2001, 2002, and 2003 and Defendant plans on opposing this motion; and

NOW, THISEFORE, IT IS RESOLVED that, in consideration of the parties signing a Stipulation of Fact in the form attached hereto as Exhibit A, Plaintiff agrees to withdraw the motion to compel, and the parties covenant and agree as follows:

1. *Effective Date.* This Agreement will be effective upon the day the last signature is applied to the Agreement.

2. *Stipulation of Fact & Withdrawal of Motion.* As evidenced by the signature of their attorneys', Plaintiff and Defendant agree to be bound by a Stipulation of Fact containing the same language found on that attached hereto as Exhibit A and will not contradict this Stipulation of Fact in the above-referenced proceeding. Promptly after the signing of this Agreement and a Stipulation of Fact, Plaintiff shall file a praecipe with the Court withdrawing his Motion to Compel. The praecipe shall be in the form of that attached hereto as Exhibit B.

3. *Integration.* This Agreement constitutes the entire agreement of the parties regarding the Stipulation of Fact. All prior understandings, representations and agreements are merged in this agreement, and this Agreement shall not be modified in any manner, except by written instrument signed by both parties.

4. *Voluntary.* The parties attest that this Agreement is voluntarily made after ample opportunity to review the document with any individuals, advisors and counsel so

desired.

5. **Governing Law.** This Settlement Agreement and Release shall be governed and interpreted by the laws of the District of Columbia.

6. **Severability.** If any provision of this Agreement is declared null and void, such provision shall be considered separate and apart from the remainder of this Agreement, which shall remain in full force and effect.

7. **Waiver of Mistake.** Each of the parties expressly and knowingly waives to the fullest extent permitted by law, any rights each of them may have under any allegedly applicable law which provides in substance that a release does not extend to claims of which a person is not aware or does not suspect or to claims based on facts in addition to or different from those facts which the person believes to be true at the time of the giving of the release. Each of the parties makes this waiver even if such unknown claims or facts would have materially affected each party's decision to enter into this Agreement.

8. **Counterparts.** This Agreement may be executed in counterparts, which, when taken together, shall constitute a complete and entire agreement.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the day and year last written below, in duplicate, and have set forth their signatures with the intention of executing this document under seal.


Dated: _____    Signed: _____
                                   Peter M. Mace, Plaintiff


Dated: _____    Signed: _____
                                   Michael J. Trevelline, DC Bar # 437454
                          Address:  1823 Jefferson Place, NW
                                   Washington, DC 20036-2504
                          Telephone: (202) 737-1139/Fax: (202) 775-1118
                          Email:    mjt@mjtlegal.com
                                   Attorney for Plaintiff Peter M. Mace


Dated: _____    Signed: _____
                                   Larry A. Domash, Defendant


Dated: _____    Signed: _____
                                   Douglas Brooks
                                   *Pro Hoc Vice*
                                   Kelly, Libby & Hoopes, P.C.

Address:        175 Federal Street
                Boston, MA  02110
Telephone:      (617) 338-9300/Fax:  (617) 261-2835
Email:          dbrooks@klhboston.com
Attorney for Defendant Larry Domash

## United States District Court
## For the District of Columbia

| | |
|---|---|
| Peter M. Mace | ) |
| Plaintiff, | ) |
| vs. | ) |
| Larry A. Domash | ) |
| Defendant | ) |

Case No. 1: 05-02244 (HHK) (DAR)

## Praecipe:  Withdrawing Motion to Compel

        The Clerk will strike the Motion to Compel filed by

Plaintiff in this matter on 17 September 2007 since Plaintiff

and Defendant have entered into a Stipulation of Fact

governing the subject of the motion.

        Respectfully submitted,


Dated: _____

Signed: _____
        Michael J. Trevelline, DC Bar # 437454
Address:  1823 Jefferson Place, NW
        Washington, DC 20036-2504
Telephone:  (202) 737-1139/Fax:  (202) 775-1118
Email:    mjt@mjtlegal.com
Attorney for Plaintiff Peter M. Mace

## Michael Trevelline

**From:**    Douglas Brooks [dbrooks@klhboston.com]

**Sent:**    Monday, September 24, 2007 9:15 AM

**To:**    Michael Trevelline

**Subject:** Draft Stipulation of Fact

Mr. Trevelline,
I appreciate your efforts in this regard, but it is clear to me that we had a misunderstanding. My fundamental point is that Mr. Domash's income is irrelevant to the fraud claim because he is not asserting a defense that he could not pay Mr. Mace's outstanding credit card debt; rather, it is his position that he never promised to do so. Accordingly, I think that any reference to Mr. Domash's income, net worth, etc., is irrelevant and prejudicial. Thus, I won't agree to this stipulation -- as it would seem a gratuitous attempt to cast Mr. Domash as "wealthy" in front of the jury.

My point was that we will not be asserting Mr. Domash's income (or lack thereof) as any sort of defense to the fraud claim. Unless we can work something out along those lines, I suppose we'll have to let the Court sort this issue out. Again, I appreciate your good faith attempts to resolve the issue.

Douglas S. Brooks
Kelly, Libby & Hoopes, P.C.
175 Federal Street
Boston, MA 02110
Tel. (617) 338-9300
Fax (617) 338-9911
dbrooks@klhboston.com

# Exhibit I

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Peter M. Mace | ) |
| Plaintiffs, | ) Case No. 1: 06-02244 (HHK) |
| vs. | ) Judge Henry H. Kennedy, Jr. |
|  | ) Next Event: Discovery Completion Date 22 |
| Larry A. Domash | ) March 2007 |
| Defendant | ) |

ORIGINAL

## Plaintiff's Second Requests for Production

**Plaintiff** pursuant to **Fed. R. 34,** by and through undersigned counsel, hereby requests that **defendant** produce for inspection and copying certain documents as set forth below within thirty (30) days after receipt of this request.

## Definition of Document

The term "document" shall mean any kind of written, printed, typed, recorded, graphic, photographic, or computer-stored or recorded matter, however produced or reproduced, of any kind or description, whether for internal or external use, sent, received or neither, including originals, all copies, all drafts, work copies and both sides thereof, and including without limitation: papers, handwritten notes, publications, letters, E-MAIL, TDD/TTY printouts, correspondence, telegrams, cables, telex messages, memoranda (whether formal, informal, to the file, or otherwise), interoffice communications, written notes, minutes of directors or committee meetings, reports, contracts, options, amendments and addenda to contracts and options, deeds, licenses, bills, invoices, ledgers, books of account, journals, vouchers, bank checks, charge slips, account reports, receipts, charts, graphs, indexes, statistical records, stenographers' notebooks, calendars, appointment books, diaries, time sheets, data sheets, statements, papers, articles, news stories, computer printouts, tapes and records of all types, microfilms, studies, books, pamphlets, schedules and any preliminary draft of any of these categories of documents, photographic prints, transparencies, moving pictures, voice records and every other device or medium on which or through which information of any type is transmitted, recorded or preserved.

## Instructions

A.    You may submit copies of the documents; however, the requester reserves the right to review the original of any copies submitted.

B.    Produce all documents in your possession, custody, or control -- whether in your real or constructive possession, custody, or control -- whether or not owned, written, recorded, etc. by you, including documents in the possession, custody or control of your attorney (if not "work-product").

C.    Describe unsuccessful efforts to locate documents which are not in your possession, custody, or control; and, with respect to such documents, state who has the possession, custody, or control and where the documents are located.

D.    For each document, state who has its possession, custody, or control, and where

*Requests for Production—Page 1*


EXHIBIT 7

the documents are located.

E.      This request for production of documents should be deemed continuing in nature to the full extent permitted by **Sup. Ct. Civ. P. R./Fed. R. 26(f)/ Md. Rule 2-401(e)**, so as to require you to promptly furnish to plaintiff additional documents relating in any way to these requests if you obtain further or additional information prior to payment of the judgment.

F.      For each document produced, identify it, identify its author if not obvious from the document's face, and state which numbered request it corresponds to.

G.      To the extent that any document called for herein is not produced on the ground of privilege or other objection, you should provide the following information with respect to each such document: (1) a specification of the nature of the document (e.g., letter, memorandum, etc.); (2) the date appearing on the document, or if no date appears, the date on which such document was prepared; (3) a general description of the subject matter of the document; (4) an identification of each person who wrote, signed, dictated or otherwise participated in the preparation of the document; (5) an identification of each person who received the document or was an addressee thereof.

H.      Produce the documents as they are kept in the usual course of business or organize them and label them to correspond with the categories in the request.

### Documents Requested

15.     If in Response to Interrogatory No. 21, you say that you have ever contemplated starting an investment or investment advise business of any kind, produce all documents whatsoever that concern the contemplated firm.

16.     All records of any planned business that was referred to by the provisional name of Domash & Associates.

17.     All records reflecting money you presently owe or have owed to Dr. George Graham or any entity of which he is a principal.

18.     All records reflecting payments you have ever made to Dr. George Graham or any entity of which he is a principal.

19.     All records of any business dealings you may have had with Dr. George Graham, Graham Consulting, Graham Capital International, or Versant. (Exclude any records relating to professional counseling services Dr. Graham may have provided you.)

20.     All records of any business dealing you may have had with The OSO Group.

21.     All documents reflecting monies received by you from your father and your mother from 1990 to November 2002. Include monies received by any means such as gift, inheritance, payment.

22.     All documents reflecting monies received by you

*Requests for Production—Page 2*

from any source by way of inheritance or gift from 1990 to November 2002.

23.     All documents related to the corporation you formed in 2001 or early 2002, which you describe in paragraph five of the document bates-numbered Mace 000005.

24.     All documents showing the profit you made on the sale of a house located at Wynnewood, Pennsylvania.

25.     All documents relating to the power of attorney you granted to Mr. Mace, including any documents relating to any actions that Mr. Mace took under the authority of the power of attorney. Include the power of attorney itself.

26.     Any documents relating to your dealings with and views of William F. McSweeny, III.

27.     All your federal tax returns for the years 1998, 1999, 2000, 2001, 2002, and 2003.

28.     All financial records from 1 January 1999 through 31 December 2002. Include all records of assets of whatever type you held an interest in during this period, to include but not limited to bank accounts, brokerage accounts, trust accounts, retirement accounts, real estate holdings, interests in privately-held businesses.

29.     The complete records of any litigation you were involved in where Mr. Mace either discussed the litigation with you, or met with you at the courthouse the day a hearing was held, or communicated with one of your lawyers on your behalf. Include at a minimum the litigation captioned Katherine F. Domash v. Larry A. Domash, Docket No. 96D-1548-D1, Commonwealth of Massachusetts, Probate & Family Court Dept., Norfolk County Division.

Respectfully submitted,

Dated: _15 Mar 07_      Signed:   _____

Michael J. Trevelline, DC Bar # 437454
Address:      1823 Jefferson Place, NW
Washington, DC 20036-2504
Telephone:    (202) 737-1139/Fax: (202) 775-1118
Email:        mjt@mjtlegal.com

Attorney for **Plaintiff Peter M. Mace**

## Certificate of Service

I hereby certify that a copy of the **foregoing** was sent via first class mail, postage prepaid, this _15_ day of _Mar_, 20_07_, to:

Mr. Douglas S. Brooks
Kelly, Libby & Hoopes, P.C.
175 Federal Street
Boston, MA 02110

Michael J. Trevelline

# Exhibit J

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PETER M. MACE | ) |
| | ) |
| | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) Case No. 1:05CV02244 (HHK) |
| | ) NEXT EVENT: |
| LARRY A. DOMASH | ) Close of Discovery – 4/23/07 |
| | ) |
| | ) |
| | ) |
| Defendant | ) |
| | ) |

## DEFENDANT LARRY DOMASH'S RESPONSES
## TO PLAINTIFF'S SECOND REQUESTS FOR PRODUCTION

By making documents available in response to Plaintiff's Second Requests for

Production (the "Requests"), Defendant Larry Domash does not waive and does not

intend to waive any objections which he may have with respect to the subsequent use of

those documents and specifically reserves and does not waive (1) the right to object to all

requests as to the competency, privilege, relevance, materiality and admissibility of all

documents produced and the subject matter thereof; (2) the right to object to the use of

any said documents, in whole or part, or to the subject matter covered thereby, at any

subsequent step or proceeding in this action, for any and all of the grounds set forth

herein or any other proper grounds; (3) the right to object on any and all proper grounds,

at any time, to other discovery procedures involving or relating to the subject matter of

the documents thereby made available; and (4) all objections as to vagueness and

ambiguity. Nothing herein shall be construed as an admission by Defendant regarding


EXHIBIT

the admissibility or relevance of any fact or document, or regarding the truth or accuracy of any characterization contained in these requests.

Privileged documents responsive to particular requests, if any such documents exist, are not being produced. If any document which is properly the subject of the attorney-client or attorney work product doctrine is produced, such production has been inadvertent and is not to be construed as a waiver of the attorney-client or attorney work product doctrine.

## GENERAL OBJECTIONS

Defendant responds to each and every Request subject to the Preliminary Statement and General Objections stated herein. These objections form a part of the response to each and every Request, and are set forth here to avoid duplication and repetition from restating them for each Request. These General Objections may be specifically referred to in response to certain Requests for the purpose of clarity. The failure to refer specifically to a General Objection, however, shall not be construed as a waiver of the General Objection even if other General Objections are specifically stated in response to the Request.

Defendant sets for the following General Objections to Plaintiff's Second Requests for Production.

1.    Defendant objects to the Requests to the extent that they call for more by way of a response, production, or otherwise than is required by the Federal Rules of Civil Procedure or other applicable law.

2.    Defendant objects to the Requests to the extent that they call for the production of any and all information which constitutes attorney-client

2

privileged materials, other privileged matter trial preparation materials,

other protected attorney work product materials, documents covered by

another statutory or common privilege or immunity, and/or documents

created by Defendant, his counsel or his representatives after the

commencement of litigation.

3.    Defendant objects to the Requests to the extent that they seek documents

or information that is not in his actual possession, custody or control.

4.    Defendant objects to each and every Request to the extent that it is overly

broad, unduly burdensome, or intended solely to harass.

5.    Defendant objects to each and every Request to the extent that it seeks

information for an unlimited period of time and is otherwise overly broad,

as to time or scope.

6.    Defendant objects to the Requests in that they purport to subject him to the

requirements of the laws of the State of Maryland – as well as the rules of

that State's Superior Court system – notwithstanding the fact that this case

is pending is federal court.

7.    The production of documents responsive to each Request is based on

Defendant's best efforts.  Defendant expressly reserves the right to amend

and/or supplement his production as appropriate prior to the trial of this

action and reserves all evidentiary objections to the time of trial.

8.    The general objections set forth herein and any objections to the specific

Requests set forth below, are made without prejudice to, or waiver of

Defendant's right to object further on any and all appropriate grounds to

3

producing further information or to producing specific documents or

things hereafter, either prior to, or at the time the information is provided,

or at time of production of any such documents.

## OBJECTIONS AND RESPONSES TO SPECIFIC REQUESTS

Defendant responds to each and every Request subject to and without waiver of

the Preliminary Statement and General Objections stated herein.

Request No. 15:

If in Response to Interrogatory No. 21, you say that you have ever contemplated starting an investment or investment advise business of any kind, produce all documents whatsoever that concern the contemplated firm.

Response No. 15:

Mr. Domash does not have any documents responsive to this Request in his

possession, custody or control.

Request No. 16:

All records of any planned business that was referred to by the provisional name of Domash & Associates.

Response No. 16:

Mr. Domash does not have any documents responsive to this Request in his

possession, custody or control.

Request No. 17:

All records reflecting money you presently owe or have owed to Dr. George Graham or any entity of which he is a principal.

Response No. 17:

Mr. Domash produces herewith documents Bates-numbered LD 0312-0315 in

response to this Request.

4

Request No. 18:

All records reflecting payments you have ever made to Dr. George Graham or any entity of which he is a principal.

Response No. 18:

*See* Response No. 17.

Request No. 19:

All records of any business dealings you may have had with Dr. George Graham, Graham Consulting, Graham Capital International, or Versant. (Exclude any records relating to professional counseling services Dr. Graham may have provided you.)

Response No. 19:

Mr. Domash does not have any documents responsive to this Request in his

possession, custody or control.

Request No. 20:

All records of any business dealing you may have had with The OSO Group.

Response No. 20:

Mr. Domash does not have any documents responsive to this Request in his

possession, custody or control.

Request No. 21:

All documents reflecting monies received by you from your father and your mother from 1990 to November 2002. Include monies received by any means such as gift, inheritance, payment.

Response No. 21:

Mr. Domash does not have any documents responsive to this Request in his

possession, custody or control.

5

Request No. 22:

All documents reflecting monies received by you from any sources by way of inheritance or gift from 1990 to November 2002.

Response No. 22:

Mr. Domash does not have any documents responsive to this Request in his

possession, custody or control.

Request No. 23:

All documents related to the corporation you formed in 2001 or early 2002, which you describe in paragraph 5 of the document bates-numbered Mace 000005.

Response No. 23:

Mr. Domash objects to this Request on the ground that he did not describe any

corporation in the document bates-numbered Mace 000005. That document is a letter

authored by Plaintiff. Without waiving this objection, Mr. Domash states that he does

not have any documents responsive to this Request in his possession, custody or control.

Request No. 24:

All documents showing the profit you made on the sale of a house located at

Wynnewood, Pennsylvania.

Response No. 24:

Mr. Domash does not have any documents responsive to this Request in his

possession, custody or control.

Request No. 25:

All documents relating to the power of attorney you granted to Mr. Mace, including any documents relating to any actions that Mr. Mace took under the authority of the power of attorney. Include the power of attorney itself.

Response No. 25:

Aside from the copy of the power of attorney that Mr. Mace produced in this case,

Mr. Domash does not have any documents responsive to this Request in his possession,

custody or control.

Request No. 26:

Any documents relating to your dealings with and views of William F.
McSweeny, III.

Response No. 26:

In addition to LD 0049, which Defendant has already produced, Defendant

produces herewith documents bates-numbered LD 0316 to 0320 in response to this

Request.

Request No. 27:

All your federal tax returns for the years 1998, 1999, 2000, 2001, 2002, and 2003.

Response No. 27:

Defendant objects to this Request on the ground that his tax returns are irrelevant

to this litigation and not reasonably calculated to lead to the discovery of admissible

evidence. Defendant has not made an issue of his income. Accordingly, Defendant's tax

returns are not discoverable, and he will not produce them pursuant to this Request.

Request No. 28:

All financial records from 1 January 1999 through 31 December 2002. Include all
records of assets of whatever type you held an interest in during this period, to include
but not limited to bank accounts, brokerage accounts, trust accounts, retirement accounts,
real estate holdings, interests in privately-held businesses.

Response No. 28:

Defendant objects to this Request on the ground that the documents sought by this

Request are irrelevant and not reasonably calculated to lead to the discovery of

admissible evidence. Defendant further objects on the ground that this Request is overly

broad and unduly burdensome. Without waiving these objections, Defendant states that

he does not have any documents responsive to this Request in his possession, custody or

control.

Request No. 29:

The complete records of any litigation you were involved in where Mr. Mace
either discussed the litigation with you, or met with you at the courthouse the day a
hearing was held, or communicated with one of your lawyers on your behalf. Include at a
minimum the litigation captioned Katherine F. Domash v. Larry A. Domash, Docket No.
96D-1548-D1, Commonwealth of Massachusetts, Probate & Family Court Dept., Norfolk
County Division.

Response No. 29:

Defendant objects to this Request as overly broad and unduly burdensome.

Defendant further objects to this Request on the ground that there is no case captioned as

set forth above. Defendant further objects to this Request on the ground that the

documents sought by this Request are irrelevant and not reasonably calculated to lead to

the discovery of admissible evidence. Defendant points out that the litigation between

Defendant and his ex-wife has been going on for approximately 11 years and is still

ongoing. Without waiving these objections, Defendant is producing herewith the

Judgments entered in this case during the time period relevant to the Complaint. These

documents are bates-numbered LD 0321 to 0391.

Respectfully submitted,

Adam Augustine Carter
DC Bar # 437381
888 Seventeenth Street, N.W., Suite 900
Washington, D.C.  20006-3307
Tel: 202-261-2803
Fax: 202-261-2835
acarter@acarterlaw.com


Douglas S. Brooks
*Pro Hac Vice*
Kelly, Libby & Hoopes, P.C.
175 Federal Street
Boston, MA 02110
Tel: 617-338-9300
Fax: 617-338-9911
dbrooks@klhboston.com


Dated:  April 23, 2007

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and accurate copy of the foregoing Defendant

Larry Domash's Responses to First Set of Requests for Production was delivered via

email and first class mail to the following counsel for Plaintiff Peter M. Mace, this 23rd

day of April, 2007.

Michael J. Trevelline, Esq.
1823 Jefferson Place, NW
Washington, D.C. 20036-2504
mjt@mjtlegal.com

Douglas S. Brooks

# Exhibit K

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Peter M. Mace )
)
Plaintiffs, )
)
vs. )
)
Larry A. Domash )
)
Defendant )
)
)

Case No. 1: 06-02244 (HHK)
Judge Henry H. Kennedy, Jr.
Next Event: Discovery Completion Date 22
March 2007

ORIGINAL

## Plaintiff's First Set of Request for Admission

**Plaintiff** pursuant to Rule 36 of the Federal Rules of Civil Procedure, directs the following requests for admission to the **Defendant**. Each matter upon which an admission is requested will be deemed admitted unless, within thirty (30) days after service of these requests, the above-named party serves upon the undersigned its written denial.

### A. Definitions

As used herein, the terms listed below have the following meaning:

1. The term "documents" means all written, graphic matter, as well as computer files, however produced or reproduced, and copies thereof, in the possession, custody, or control of the above-named party, including but not limited to maps, blueprints, correspondence, telegrams, notes, sound recordings of any type, notes of telephone conversations or of meetings or conferences, minutes of meetings, memoranda, interoffice communications, studies, analyses, reports, results of investigations, contracts, licenses, agreements, working papers, statistical records, ledgers, books of accounts, vouchers, invoices, charts, slips, timesheets or logs, computer data, stenographer's notebooks, diaries or papers similar to any of the foregoing, however, denominated.

2. The terms "refer," "relate" or "respecting" mean constituting, reflecting, relating to, concerning, referring to, stating, describing, recording, noting, embodying, containing, mentioning, studying, analyzing, discussing, or evaluating.

3. The term "you" or "your" means the above-named party and any other person who is in possession of, or may have obtained, information for or on behalf of the entities to whom this discovery is directed and any other person acting or authorized to act on behalf of the entities.

4. The term "person" means any natural person, legal person, group of individuals, corporation, limited liability company, partnership of any kind, government, or business entity.

### B. General Instructions

1. If any request for admission cannot be answered in full, answer to the extent possible, state the reasons for your inability to answer the remainder, and state whatever information or knowledge you have regarding the unanswered portion.

2. The words "and" and "or" shall be interpreted either conjunctively or disjunctively, as necessary to include any information otherwise within the scope of any request for admission.

*Requests for Admission—Page 1*


EXHIBIT

3. Where appropriate, the use of the singular includes the plural and the use of the plural includes the singular, and the use of any tense of any verb shall be considered to include also within its meaning all of the tenses of the verb so used.

4. There shall be a continuing duty to furnish additional and supplemental answers to these requests for admission in accordance with **the Federal Rules of Civil Procedure.**

## C. Requests for Admission

1. Each of the following documents is a true and correct copy of the original:

1. IFA's Financial Team, bates-stamped Graham 1044.

2. Larry Domash resumes, bates-stamped Mace 000047-000053.

3. 21 August 1990 Mace letter to Domash, bates-stamped Mace 000054-000055.

4. General Observations, bates-stamped Mace 000058.

5. Flow Chart, bates-stamped Mace 000108.

6. Domash & Associates Organizational Chart, bates-stamped Graham 1054.

7. Undated Ackerman letter to Barshak, bates-stamped Mace 000060-000069.

8. IFA calling cards, bates-stamped Graham 0114.

9. IFA Offering Memorandum, bates-stamped Graham 0512-0650.

10. Organizational Chart, bates-stamped Graham 0676.

11. IFA Offering Memorandum, bates-stamped Graham 0677-0700.

12. .

13. Mace fax to Graham, bates-stamped 1184-1187.

14.

15. .

16. 15 May 1992 attachment to 3 March 2003 Mace fax to Lee, bates-stamped Graham 1142-1143.

17. 17 November 1998 Ackerman letter to Barshak, bates-stamped Graham 1030-1039.

18. 16 April 1999 Mace fax to Graham, bates-stamped Graham 0120-0123.

19. 10 December 1999 Warren letter to Mace, bates-stamped Mace 000033.

*Requests for Admission—Page 2*

20. 16 June 2000 McSweeny letter to Mace, bates-stamped LD 0049.

21. 21 July 2000 Mace fax to Graham, bates-stamped Mace 000027-000031.

22. 26 July 2000 Domash letter to McColl, bates-stamped Mace 000025-000026.

23. 18 August 2000 Domash letter to McColl, bates-stamped Mace 000023-000024.

24. 5 October 2000 Mace letter, bates-stamped Graham 0491-0492.

25. 20 October 2000 Mace letter to Foreman, bates-stamped Mace 000022.

26. 2 November 2000 BEK TEK invoice to Mace, bates-stamped Mace 000199-000200.

27. 14 September 2000 $25,000 check, bates-stamped LD 0050-0051.

28. 15 November 2000 Mace fax to Graham, bates-stamped Graham 0151.

29.

30. 17 December 2000 Graham fax to Domash, bates-stamped Graham 0008.

31. 21 December 2000 Domash power of attorney to Mace, bates-stamped Graham 1089.

32.

33. 8 October 2001 Mace note to Domash and newspaper article, bates-stamped Graham 0067-0069.

34. 11 November 2001 fax to Graham, bates-stamped Graham 0045.

35. 24 November 2001 Plymouth Partners, L.P., brochure, bates-stamped Graham 0651-0668.

36. 14 January 2002 Koenig letter to Mace, bates-stamped Mace 000201.

37. 17 January 2002 Mace letter to Bruce Koenig, bates-stamped Mace 000202-000203.

38. 4 February 2002 Mace fax to Graham, bates-stamped Graham 0002-0003.

39. 8 February 2002 Graham letter to Mace, bates-stamped Graham 0702-0703.

*Requests for Admission—Page 3*

40. 16 April 2002 Mace fax to Graham, bates-stamped Graham 0039-0044.

41. 18 April 2002 Mace letter to Jordan, bates-stamped Graham 0405-0406.

42. 24 May (no year, probably 2002) Mace letter to Larry Domash, bates-stamped Graham 1777.

43. 21 June 2002 Mace note to Stein, bates-stamped Graham 1107.

44. 21 June 2002 Mace fax to Graham, bates-stamped Graham 1227-1232.

45. 24 June 2002 Mace letter to Larry Domash, bates-stamped Mace 000042-000046.

46. 2 July 2002 Raines letter to Mace and response, bates-stamped Graham 0728-0729.

47. 5 July 2002 Mace fax to Graham, bates-stamped Graham 1108-1109.

48. 5 July 2002 Mace letter to Domash, bates-stamped Mace 000040.

49. 10 July 2002 Mace fax to Graham, bates-stamped Graham 1110-1111.

50. 10 July 2002 Mace letter to Domash, bates-stamped Mace 000012.

51. 30 October 2002 Mace letter to Larry Domash, bates-stamped Mace 000034-000038.

52. 22 November 2002 second notice sending of 30 October 2002 letter, bates-stamped Graham 1117.

53. 22 November 2002 Mace fax to Graham & Killion, bates-stamped Mace 000001.

54. 24 November 2002 Domash letter to Mace, bates-stamped Graham 0704-0705.

55. 26 November 2002 hand notes of Wendy, bates-stamped Graham 1122-1126.

56. 26 December 2002 Mace letter to Graham, bates-stamped Graham 1019-1027.

57. 28 December 2002 Mace letter to Stein, bates-stamped Mace 000013.

58. 6 January 2003 Mace fax to Martin, bates-stamped Graham 1016-1018.

59. 14 January 2003 Wendy notes, bates-stamped

*Requests for Admission—Page 4*

Graham 1174-1175.

60. 15 January 2003 Wendy notes, bates-stamped Graham 1168-1169.

61. 16 January 2003 Wendy notes, bates-stamped Graham 1170-1171.

62. 17 January 2003 Wendy notes, bates-stamped Graham 1172-1173.

63. 10 February 2003 Wendy notes, bates-stamped Graham 1144-1145.

64. 11 April 2006 Davis letter to Mace, bates-stamped Graham 1296-1297.


2.      Defendant has experience in investing for an insurance company.

3.      Defendant has experience in investment research.

4.      Defendant is experienced in portfolio management.

5.      Defendant had aspirations to form his own investment business.

6.      Defendant has told others that he had aspirations to form his own investment business.

7.      Defendant told Plaintiff that Defendant had aspirations to form his own investment business.

8.      Defendant met Plaintiff on or about 2 August 1990.

9.      When Defendant met Plaintiff, Defendant had been offered employment with Fidelity Management and Research Co.

10.     When Defendant met with Plaintiff for the first time, Defendant was employed by Gofen & Glossberg.

11.     In the 1980s and in the 1990s and 2000, 2001, 2002, 2003, 2004 Plaintiff was working to establish a start-up insurance company known as Investors Fidelity of America (IFA).

12.     In the 1990s and in 2000, 2001, and 2002, Defendant knew that Plaintiff was working to establish IFA.

13.     In the 1980s and 1990s and in 2000, 2001, and 2002, Plaintiff was devoting much of his time to establish IFA.

14.     In the 1990s and in 2000, 2001, and 2002, Defendant knew that Plaintiff was devoting much of his time to establish IFA.

15.     In the 1980s and 1990s and in 2000, 2001, and 2002, much of Plaintiff's efforts to establish IFA consisted of

attempting to obtain start-up capital.

16.     In the 1990s and in 2000, 2001, and 2002,
Defendant knew that much of Plaintiff's efforts to establish IFA
consisted of attempting to obtain start-up capital.

17.     In the late 1990s and in 2000, and into 2001,
Defendant and Plaintiff communicated on average at least twice
per day by telephone during periods of time.

18.     On or about the late 1990s and in 2000, 2001, and
2002, Defendant was engaged in divorce, alimony and child
custody litigation in Massachusetts.

19.     On or about the late 1990s and into 2000, 2001, and
2002, Defendant periodically discussed this litigation with
Plaintiff.

20.     On or about the late 1990s, 2000 and 2001, at times,
at the request of Defendant, Plaintiff communicated with
Defendant's lawyers on behalf of Defendant.

21.     On or about the late 1990s and into 2000 and 2001,
at times, at the request of Defendant, Plaintiff accompanied
Defendant to a courthouse where Defendant attended hearings in
the divorce, alimony and child custody litigation.

22.     On or about the late 1990s, and 2000, 2001 and
2002, at times, Plaintiff supported Defendant emotionally by
discussing with Defendant Defendant's divorce, alimony, and child
custody litigation and Defendant's career.

23.     On or about the late 1990s and into 2000 and 2001,
Plaintiff managed some of Defendant's personal legal matters.

24.     On or about 2 August 1990, Defendant told Plaintiff
that Defendant would like to establish his own investment
management firm rather than continue to work for others.

25.     In early April of 1999, Plaintiff telephoned
Defendant.

26.     In the early April 1999 telephone conversation,
Plaintiff told Defendant that Plaintiff had exhausted his personal
resources.

27.     In the early April 1999 telephone conversation,
Plaintiff told Defendant that since Plaintiff had exhausted his
personal resources, Plaintiff would have to seek employment and
cease working full-time on the development of IFA.

28.     In the early April 1999 telephone conversation,
Defendant told Plaintiff that Defendant would reimburse Plaintiff
for Plaintiff's expenses if Plaintiff would continue working full-
time to develop IFA.

*Requests for Admission—Page 6*

29.    In the early April 1999 telephone conversation, Plaintiff told Defendant that Plaintiff had approximately ten credit cards with credit totaling well over $200,000.

30.    In the early April 1999 telephone conversation, Plaintiff told Defendant that Plaintiff's expenses to continue on to develop IFA would include (1) Plaintiff's modest living expenses, (2) financial assistance Plaintiff was providing to his cousin Judy Pentoney, (3) expenses incurred on behalf of IFA, (4) expenses incurred in supporting Defendant by speaking to Defendant frequently, going to a courthouse at Defendant's request when Defendant had hearings, communicating with Defendant's lawyers, performing administrative tasks in support of Defendant's divorce, alimony, and child custody litigation, and managing certain aspects of the litigation.

31.    Defendant agreed to reimburse Plaintiff for all of these expenses as well as credit card interest and charges associated with them in exchange for Plaintiff working to have IFA hire Defendant or a firm established by Defendant to manage IFA's money.

32.    From April 1999 to sometime in 2002, under this April 1999 understanding, Plaintiff did perform as promised and did incur the four categories of expenses.

33.    From April 1999 to sometime in 2002, Defendant did on several occasions confirm that he would honor the April 1999 understanding.

34.    From April 1999 to sometime in 2002, Plaintiff did on several occasions confirm that he would honor the April 1999 understanding by having IFA hire Defendant or a firm established by Defendant to manage IFA's money.

35.    In the April 1999 telephone conversation, Defendant told Plaintiff that Defendant had the financial wherewithal to honor the agreement and would reimburse Plaintiff either when the divorce and child custody litigation settled and his financial situation eased or when IFA obtained financing and started operations.

36.    On or about late 2001 or 2002, Defendant's financial situation eased and the divorce, alimony, and child custody litigation substantially ended.

37.    On or about late 2001 and 2002, Defendant misrepresented his financial situation to Plaintiff by denying that Defendant was now in a position to begin reimbursing Plaintiff for the expenses incurred under the April 1999 understanding.

38.    In 2002, Plaintiff began making demands upon

Defendant to begin reimbursing Plaintiff.

39.     In response to these 2002 demands, Defendant never told Plaintiff that Defendant would not honor the April 1999 understanding, but Defendant lead Plaintiff to believe that Defendant would begin making payments later.

40.     Despite Defendant's refusal to begin making payments in 2002, Plaintiff continued to honor the 1999 understanding by continuing to work to develop IFA.

41.     On 24 November 2002, Defendant wrote a letter to Plaintiff saying that Defendant would not reimburse Plaintiff.

42.     Defendant has breached the 1999 understanding with Plaintiff.

### Interrogatories Related to Denials of Request for Admission

1. If you have denied any of the foregoing requests for admission, please provide for each request denied the following information:

a.     Explained in detail the salient facts on which you rely to support your denials.

b.     Identify all witnesses (including their last known business and residential addresses and telephone numbers) having personal knowledge of the salient facts upon which you rely to deny the requests.

c.     Identify all documents or other tangible items on which you rely to support your denial of the requests.

64 Attachments (12, 14, 15,29, & 32 blank)

Dated: 21 Mar 07     Signed:

Michael J. Trevelline, DC Bar # 437454
Address:     1823 Jefferson Place, NW
            Washington, DC 20036-2504
Telephone:  (202) 737-1139/Fax:  (202) 775-1118
Email:      mjt@mjtlegal.com

Attorney for **Plaintiff Peter M. Mace**

### Certificate of Service

I hereby certify that a copy of the **foregoing** was sent via first class mail, postage prepaid, this _21_ day of _Mar_, 20_07_, to:
Mr. Douglas S. Brooks
Kelly, Libby & Hoopes, P.C.
175 Federal Street
Boston, MA  02110

Michael J. Trevelline

*Requests for Admission—Page 8*

# Exhibit L

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PETER M. MACE                          )
                                       )
                                       )
                                       )
                                       )
                    Plaintiff          )
                                       )
v.                                     )   Case No. 1:05CV02244 (HHK)
                                       )   NEXT EVENT:
LARRY A. DOMASH                        )   Close of Discovery – 4/23/07
                                       )
                                       )
                                       )
                    Defendant          )
                                       )

**DEFENDANT LARRY DOMASH'S RESPONSES TO**
**PLAINTIFF'S FIRST SET OF REQUEST FOR ADMISSION**

Defendant Larry Domash responds to Plaintiff's First Set of Request for

Admission (the "Requests") pursuant to Fed. R. Civ. P. 36 as follows:

**GENERAL OBJECTIONS**

Defendant objects to the Requests to the extent that they call for more by way of a

response, production, or otherwise than is required by the Federal Rules of Civil

Procedure or other applicable law.

**RESPONSES**

1.      Each of the following documents is a true and correct copy of the
original:

1.  IFA's Financial Team, bates-stamped Graham 1044.



EXHIBIT
tabbies

Response – Defendant cannot truthfully admit or deny that this is a true and correct copy of the original because he had never seen this document before it was produced in this litigation.

2. Larry Domash resumes, bates-stamped Mace 000047-000053.

Response - Admitted

3. 21 August 1990 Mace letter to Domash, bates-stamped Mace 000054-000055.

Response – Denied. Mr. Domash believes the original was signed. Otherwise admitted.

4. General Observations, bates-stamped Mace 000058.

Response - Defendant cannot truthfully admit or deny that this is a true and correct copy of the original because he had never seen this document before it was produced in this litigation.

5. Flow Chart, bates-stamped Mace 000108.

Response - Defendant cannot truthfully admit or deny that this is a true and correct copy of the original because he had never seen this document before it was produced in this litigation.

6. Domash & Associates Organizational Chart, bates-stamped Graham 1054.

Response - Defendant cannot truthfully admit or deny that this is a true and correct copy of the original because he had never seen this document before it was produced in this litigation. Answering further, Defendant denies that this is an "organizational chart."

7. Undated Ackerman letter to Barshak, bates-stamped Mace 000060-000069.

2

Response - Defendant cannot truthfully admit or deny that this is a true and correct copy of the original because he had never seen this document before it was produced in this litigation.

8.   IFA calling cards, bates-stamped Graham 0114.

Response - Defendant cannot truthfully admit or deny that this is a true and correct copy of the original because he had never seen this document before it was produced in this litigation.

9.   IFA Offering Memorandum, bates-stamped Graham 0512-0650.

Response - Defendant cannot truthfully admit or deny that this is a true and correct copy of the original because he had never seen this document before it was produced in this litigation.

10. Organizational Chart, bates-stamped Graham 0676.

Response - Defendant cannot truthfully admit or deny that this is a true and correct copy of the original because he had never seen this document before it was produced in this litigation.  Answering further, Defendant denies that this is an "organizational chart."

11.  IFA Offering Memorandum, bates-stamped Graham 0677-0700.

Response - Defendant cannot truthfully admit or deny that this is a true and correct copy of the original because he had never seen this document before it was produced in this litigation.

12.

Response – No response is necessary as this Request was left blank.

13.  Mace fax to Graham, bates-stamped 1184-1187.

Response – Defendant denies that this was a fax sent from Mr. Mace to Dr. Graham. It appears to be a fax sent from Mr. Mace to his former attorney, Robert Ackerman. Defendant notes that this document would have been protected by the attorney-client privilege but for its production in this case. Subject to the foregoing, Defendant cannot truthfully admit or deny that this is a true and correct copy of the original because he had never seen this document before it was produced in this litigation.

14.

Response - No response is necessary as this Request was left blank.

15.

Response - No response is necessary as this Request was left blank.

16. 15 May 1992 attachment to 3 March 2003 Mace fax to Lee, bates-stamped Graham 1142-1143.

Response – As to Bates number 1142, Defendant denies that this is a true and correct copy of the original. Defendant believes that the original was signed. Moreover, to the extent that this document contains a handwritten note from Mr. Mace to "Sonny," Defendant cannot truthfully admit or deny that this is a true and correct copy of the original because he had never seen this document before it was produced in this litigation.

As to Bates number 1143, Defendant cannot truthfully admit or deny that this is a true and correct copy of the original because, despite the fact that it was addressed to him, he had never seen this document before it was produced in this litigation.

4

17. 17 November 1998 Ackerman letter to Barshak, bates-stamped Graham 1030-1039.

Response - Defendant cannot truthfully admit or deny that this is a true and correct copy of the original because he had never seen this document before it was produced in this litigation.

18. 16 April 1999 Mace fax to Graham, bates-stamped Graham 0120-0123.

Response - Defendant cannot truthfully admit or deny that this is a true and correct copy of the original because, despite the fact that it was addressed to him, he had never seen this document before it was produced in this litigation.

19. 10 December 1999 Warren letter to Mace, bates-stamped Mace 000033.

Response - Defendant cannot truthfully admit or deny that this is a true and correct copy of the original because he had never seen this document (or at least does not recall whether he saw it) before it was produced in this litigation.

20. 16 June 2000 McSweeny letter to Mace, bates-stamped LD 0049.

Response – Admitted.

21. 21 July 2000 Mace fax to Graham, bates-stamped Mace 000027-000031.

Response – Admitted as to Mace 000028-000031.  As to Mace 000027, Defendant cannot truthfully admit or deny that this is a true and correct copy of the original because he had never seen this document before it was produced in this litigation.

22. 26 July 2000 Domash letter to McColl, bates-stamped Mace 000025-000026.

Response – Admitted.

5

23. 18 August 2000 Domash letter to McColl, bates-stamped Mace 000023-000024.

Response – Admitted.

24.  5 October 2000 Mace letter, bates-stamped Graham 0491-0492.

Response - Defendant cannot truthfully admit or deny that this is a true and correct copy of the original because he had never seen this document before it was produced in this litigation.

25. 20 October 2000 Mace letter to Foreman, bates-stamped Mace 000022.

Response – Denied.  Mr. Domash believes the original was signed.  Otherwise admitted.

26. 2 November 2000 BEK TEK invoice to Mace, bates-stamped Mace 000199-000200.

Response – Defendant cannot truthfully admit or deny that this is a true and correct copy of the original because he had never seen this document before it was produced in this litigation.

27. 14 September 2000 $25,000 check, bates-stamped LD 0050-0051.

Response – Admitted.

28. 15 November 2000 Mace fax to Graham, bates-stamped Graham 0151.

Response - Response – Defendant cannot truthfully admit or deny that this is a true and correct copy of the original because he had never seen this document before it was produced in this litigation.

29.

Response - No response is necessary as this Request was left blank.

30. 17 December 2000 Graham fax to Domash, bates-stamped Graham 0008.

6

Response – Defendant denies this Request.  This one-page document appears

to be part of a two-age document that was not produced pursuant to this

litigation.

31. 21 December 2000 Domash power of attorney to Mace, bates-stamped
Graham 1089.

Response – Admitted.

32.

Response - No response is necessary as this Request was left blank.

33. 8 October 2001 Mace note to Domash and newspaper article, bates-
stamped Graham 0067-0069.

Response - Defendant cannot truthfully admit or deny that this is a true and

correct copy of the original because he had never seen this document (or at

least does not recall whether he saw it) before it was produced in this

litigation.

34. 11 November 2001 fax to Graham, bates-stamped Graham 0045.

Response - Defendant cannot truthfully admit or deny that this is a true and

correct copy of the original because he had never seen this document before it

was produced in this litigation.

35. 24 November 2001 Plymouth Partners, L.P., brochure, bates-stamped
Graham 0651-0668.

Response - Defendant cannot truthfully admit or deny that this is a true and

correct copy of the original because he had never seen this document before it

was produced in this litigation.

36. 14 January 2002 Koenig letter to Mace, bates-stamped Mace 000201.

Response – Admitted.

7

37. 17 January 2002 Mace letter to Bruce Koenig, bates-stamped Mace 000202-000203.

Response – Admitted.

38. 4 February 2002 Mace fax to Graham, bates-stamped Graham 0002-0003.

Response – Admitted.

39. 8 February 2002 Graham letter to Mace, bates-stamped Graham 0702-0703.

Response - Defendant cannot truthfully admit or deny that this is a true and correct copy of the original because he had never seen this document before it was produced in this litigation.

40. 16 April 2002 Mace fax to Graham, bates-stamped Graham 0039-0044.

Response - Defendant cannot truthfully admit or deny that this is a true and correct copy of the original because he had never seen this document before it was produced in this litigation.

41. 18 April 2002 Mace letter to Jordan, bates-stamped Graham 0405-0406.

Response - Defendant cannot truthfully admit or deny that this is a true and correct copy of the original because he had never seen this document (or at least does not recall whether he saw it) before it was produced in this litigation.

42. 24 May (no year, probably 2002) Mace letter to Larry Domash, bates-stamped Graham 1777.

Response - Defendant cannot truthfully admit or deny that this is a true and correct copy of the original because he had never seen this document (or at

least does not recall whether he saw it) before it was produced in this
litigation.

43. 21 June 2002 Mace note to Stein, bates-stamped Graham 1107.

Response- Admitted with the caveat that the date is June 24, 2002 – not June

21, 2002.

44. 21 June 2002 Mace fax to Graham, bates-stamped Graham 1227-1232.

Response – Admitted.

45. 24 June 2002 Mace letter to Larry Domash, bates-stamped Mace 000042-
000046.

Response – Admitted.

46. 2 July 2002 Raines letter to Mace and response, bates-stamped 0728-0729.

Response - Defendant cannot truthfully admit or deny that this is a true and

correct copy of the original because he had never seen this document before it

was produced in this litigation.

47. 5 July 2002 Mace fax to Graham, bates-stamped Graham 1108-1109.

Response – Admitted.

48. 5 July 2002 Mace letter to Domash, bates-stamped Mace 000040.

Response – Admitted.

49. 10 July 2002 Mace fax to Graham, bates-stamped graham 1110-1111.

Response - Defendant cannot truthfully admit or deny that this is a true and

correct copy of the original because he had never seen this document before it

was produced in this litigation.

50. 10 July 2002 Mace letter to Domash, bates-stamped Mace 000012.

Response- Admitted.

9

51. 30 October 2002 Mace letter to Larry Domash, bates-stamped Mace 000034-000038.

Response – Admitted.

52. 22 November 2002 second notice sending of 30 October 2002 letter, bates-stamped Graham 1117.

Response – Admitted.

53. 22 November 2002 Mace fax to Graham & Killion, bates-stamped Mace 000001.

Response - Defendant cannot truthfully admit or deny that this is a true and

correct copy of the original because he had never seen this document before it

was produced in this litigation.

54. 24 November 2002 Domash letter to Mace, bates-stamped Graham 0704-0705.

Response – Admitted.

55. 26 November 2002 hand notes of Wendy, bates-stamped Graham 1122-1126.

Response - Defendant cannot truthfully admit or deny that this is a true and

correct copy of the original because he had never seen this document before it

was produced in this litigation.

56. 26 December 2002 Mace letter to Graham, bates-stamped Graham 1019 1027.

Response - Defendant cannot truthfully admit or deny that this is a true and

correct copy of the original because he had never seen this document before it

was produced in this litigation.

57. 28 December 2002 Mace letter to Stein, bates-stamped Mace 000013.

10

Response – Denied.

7.    Defendant told Plaintiff that Defendant had aspirations to form his own
investment business.

Response – Denied.

8.    Defendant met Plaintiff on or about 2 August 1990.

Response – Despite taking reasonable steps to determine the veracity of this

Request, Defendant cannot remember whether he met with Plaintiff on or about

August 2, 1990.

9.    When Defendant met Plaintiff, Defendant had been offered employment
with Fidelity Management and Research Co.

Response – Denied.

10.    When Defendant met with Plaintiff for the first time, Defendant was
employed by Gofen & Glossberg.

Response – Denied.  Defendant was a shareholder of Gofen & Glossberg.

11.    In the 1980s and in the 1990s and 2000, 2001, 2002, 2003, 2004 Plaintiff
was working to establish a start-up insurance company known as Investors
Fidelity of America (IFA).

Response – Defendant denies knowledge of whether Plaintiff was working to

establish a start-up insurance company known as Investors Fidelity of America

(IFA) during that time period.

12.    In the 1990s and in 2000, 2001, and 2002, Defendant knew that Plaintiff
was working to establish IFA.

Response - Defendant denies that he knew that Plaintiff was working to establish

a start-up insurance company known as Investors Fidelity of America (IFA)

during some of that time period.  Defendant believed Plaintiff was looking for

Working Capital for IFA during that time period.

13

13.    In the 1980s and 1990s and in 2000, 2001, and 2002, Plaintiff was devoting much of his time to establish IFA.

Response – Defendant cannot truthfully admit or deny this fact because he did not

know how much of his time Plaintiff was devoting to establish IFA during these

years.

14.    In the 1990s and in 2000, 2001, and 2002, Defendant knew that Plaintiff was devoting much of his time to establish IFA.

Response – Defendant cannot truthfully admit or deny this fact because he did not

know how much of his time Plaintiff was devoting to establish IFA during these

years.

15.    In the 1980s and 1990s and in 2000, 2001, and 2002, much of the Plaintiff's efforts to establish IFA consisted of attempting to obtain start-up capital.

Response – Defendant cannot truthfully admit or deny this fact because he does

not know what Plaintiff was doing to establish IFA.

16.    In the 1990s and in 2000, 2001, and 2002, Defendant knew that much of Plaintiff's efforts to establish IFA consisted of attempting to obtain start-up capital.

Response – Defendant cannot truthfully admit or deny this fact because he does

not know what Plaintiff was doing to establish IFA.

17.    In the late 1990s and in 2000, and into 2001, Defendant and Plaintiff communicated on average at least twice per day by telephone during periods of time.

Response – Denied.

18.    On or about the late 1990s and in 2000, 2001, and 2002, Defendant was engaged in divorce, alimony and child custody litigation in Massachusetts.

Response – Admitted.

14

19.   On or about the late 1990s and into 2000, 2001, and 2002, Defendant periodically discussed this litigation with Plaintiff.

<u>Response</u> – Admitted.

20.   On or about the late 1990s, 2000 and 2001, at times, at the request of Defendant, Plaintiff communicated with Defendant's lawyers on behalf of Defendant.

<u>Response</u> – Denied.  Defendant states that he believes Plaintiff did, on limited

occasion, communicate with Defendant's lawyers – but it was not at Defendant's

request.



21.   On or about the late 1990s and in to 2000 and 2001, at times, at the request of Defendant, Plaintiff accompanied Defendant to a courthouse where Defendant attended hearings in the divorce, alimony and child custody litigation.

<u>Response</u> – Defendant admits that Plaintiff appeared at the courthouse where

Defendant attended hearings in the divorce, alimony and child custody litigation

but Defendant denies that he requested that Plaintiff do so.  Defendant also denies

that Plaintiff "accompanied" Defendant on these occasions.  They did not travel

together.



22.   On or about the late 1990s, and 2000, 2001, and 2002, at times, Plaintiff supported Defendant emotionally by discussing with Defendant Defendant's divorce, alimony, and child custody litigation and Defendant's career.

<u>Response</u> – Denied.

23.   On or about the late 1990s and into 2000 and 2001, Plaintiff managed some of Defendant's personal legal matters.

<u>Response</u> – Denied.

24.   On or about 2 August 1990, Defendant told Plaintiff that Defendant would like to establish his own investment management firm rather than continue to work for others.

Response – Denied.  Defendant further states that as of August 2, 1990, he did

not, nor had he "worked for others" for several years.

25.     In early April of 1999, Plaintiff telephoned Defendant.

Response – Defendant cannot truthfully admit or deny this fact because he does

not remember.

26.     In the early April 1999 telephone conversation, Plaintiff told Defendant
        that Plaintiff had exhausted his personal resources.

Response -- Denied.

27.     In the early April 1999 telephone conversation, Plaintiff told Defendant
        that since Plaintiff had exhausted his personal resources, Plaintiff would
        have to seek employment and cease working full-time on the development
        of IFA.

Response – Denied.

28.     In the early April 1999 telephone conversation, Defendant told Plaintiff
        that Defendant would reimburse Plaintiff for Plaintiff's expenses if
        Plaintiff would continue working full-time to develop IFA.

Response – Denied.

29.     In the early April 1999 telephone conversation, Plaintiff told Defendant
        that Plaintiff had approximately ten credit cards with credit totaling well
        over $200,000.

Response – Denied.

30.     In the early April 1999 telephone conversation, Plaintiff told Defendant
        that Plaintiff's expenses to continue on to develop IFA would include (1)
        Plaintiff's modest living expenses, (2) financial assistance Plaintiff was
        providing to his cousin Judy Pentoney, (3) expenses incurred on behalf of
        IFA, (4) expenses incurred in supporting Defendant by speaking to
        Defendant frequently, going to a courthouse at Defendant's request when
        Defendant had hearings, communicating with Defendant's lawyers,
        performing administrative tasks in support of Defendant's divorce,
        alimony, and child custody litigation, and managing certain aspects of the
        litigation.

Response – Denied.

31.    Defendant agreed to reimburse Plaintiff for all of these expenses as well as credit card interest and charges associated with them in exchange for Plaintiff working to having IFA hire Defendant or a firm established by Defendant to manage IFA's money.

Response – Denied.

32.    From April 1999 to sometime in 2002, under this April 1999 understanding, Plaintiff did perform as promised and did incur the four categories of expenses.

Response – Defendant denies the existence of the April 1999 understanding and

further denies that Plaintiff performed as promised based on the April 1999

understanding that Plaintiff alleges exists.

33.    From April 1999 to sometime in 2002, Defendant did on several occasions confirm that he would honor the April 1999 understanding.

Response – Denied.

34.    From April 1999 to sometime in 2002, Plaintiff did on several occasions confirm that he would honor the April 1999 understanding by having IFA hire Defendant or a firm established by Defendant to manage IFA's money.

Response – Denied.

35.    In the April 1999 telephone conversation, Defendant told Plaintiff that Defendant had the financial wherewithal to honor the agreement and would reimburse Plaintiff either when the divorce and child custody litigation settled and his financial situation eased or when IFA obtained financing and started operations.

Response – Denied.

36.    On or about late 2001 or 2002, Defendant's financial situation eased and the divorce, alimony, and child custody litigation substantially ended.

Response – Denied.

37.    On or about late 2001 and 2002, Defendant misrepresented his financial situation to Plaintiff by denying that Defendant was now in a position to

17

> begin reimbursing Plaintiff for the expenses incurred under the April 1999 understanding.

Response – Denied.

38.    In 2002, Plaintiff began making demands upon Defendant to begin reimbursing Plaintiff.

Response – Defendant admits that in 2002 Plaintiff began making demands upon

Defendant to pay him money but Defendant denies that Plaintiff indicated that he

wanted Defendant to "reimburse" Plaintiff at that time.

39.    In response to these 2002 demands, Defendant never told Plaintiff that Defendant would not honor the April 1999 understanding, but Defendant lead Plaintiff to believe that Defendant would begin making payments later.

Response – Denied.

40.    Despite Defendant's refusal to begin making payments in 2002, Plaintiff continued to honor the 1999 understanding by continuing to work to develop IFA.

Response – Defendant cannot truthfully admit or deny this allegation.

41.    On 24 November 2002, Defendant wrote a letter to Plaintiff saying the Defendant would not reimburse Plaintiff.

Response – Defendant denies that on November 24, 2002, he wrote a letter to

Plaintiff saying that he "would not reimburse Plaintiff." Defendant admits that on

November 24, 2002, he wrote a letter to Plaintiff denying that Plaintiff was, or

ever had been, a creditor of Defendant's.

42.    Defendant has breached the 1999 understanding with Plaintiff.

Response – Denied.

**Interrogatories Related to Denials of Request for Admission**

1.    If you have denied any of the foregoing requests for admission, please provide for each request denied the following information:

a.     Explain in detail the salient facts on which you rely to support your denials.

b.     Identify all witnesses (including their last known business and residential addresses and telephone numbers) having personal knowledge of the salient facts upon which you rely to deny the requests.

c.     Identify all documents or other tangible items on which you rely to support your denial of the requests.

Response – Defendant objects to this interrogatory because in effect it calls for him to

answer dozens of interrogatories and thus reflects a violation of the Court's Scheduling

Order limiting each party to 25 interrogatories.  Defendant notes that Plaintiff has already

served 23 interrogatories – many of which are multi-part interrogatories (which in itself

violates the Court's Scheduling Order).  Further, Defendant objects because this

"interrogatory" purportedly places an obligation on him to provide information that he is

not obligated to provide pursuant to Fed. R. Civ. P. 36.  Defendant states that his denials

are in conformity with that Rule and thus no answer to this "interrogatory" is necessary.

Respectfully submitted,

Adam Augustine Carter
DC Bar # 437381
888 Seventeenth Street, N.W., Suite 900
Washington, D.C.  20006-3307
Tel: 202-261-2803
Fax: 202-261-2835
acarter@acarterlaw.com

19

Douglas S. Brooks
*Pro Hac Vice*
Kelly, Libby & Hoopes, P.C.
175 Federal Street
Boston, MA 02110
Tel: 617-338-9300
Fax: 617-338-9911
dbrooks@klhboston.com

Dated:  April 23, 2007

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and accurate copy of the foregoing Defendant

Larry Domash's Objection to Plaintiff's Second Requests for Production was delivered

via email and first class mail to the following counsel for Plaintiff Peter M. Mace, this

23rd day of April 2007.

Michael J. Trevelline, Esq.
1823 Jefferson Place, NW
Washington, D.C. 20036-2504
mjt@mjtlegal.com

Douglas S. Brooks