UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| PETER M. MACE <br><br> Plaintiff <br><br> v. <br><br> LARRY A. DOMASH <br><br> Defendant | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) No. 1:05CV02244 (HHK-DAR) <br> <u>NEXT EVENT:</u> <br> Status Conference – 2/29/08 |

## DEFENDANT LARRY DOMASH'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO FED. R. CIV. P. 12(b)(1)

Defendant Larry Domash hereby moves the Court, pursuant to Fed. R. Civ. P. 12(b)(1), to dismiss this diversity action for lack of subject matter jurisdiction because the amount in controversy does not exceed $75,000.00. *See* 28 U.S.C. § 1332. As support for this Motion, Defendant states as follows:

Although Plaintiff's Complaint alleges compensatory damages of exactly $250,000.00, his recent supplemental answers to Defendant's interrogatories make clear that the actual amount of damages – exclusive of any interest – is $46,457.07. Even if the interest on the principal of the alleged debt during the life of the alleged contract is included for purposes of determining the amount in controversy, Plaintiff's jurisdictional damages still do not exceed $75,000.00. *See* 28 U.S.C. § 1332. Accordingly, the amount of controversy is not satisfied, this Court lacks subject matter jurisdiction and the case

should therefore be dismissed. A supporting memorandum of points and authorities and a proposed order accompany this Motion.

Respectfully submitted,

/s/ Adam Augustine Carter
Adam Augustine Carter
DC Bar # 437381
888 Seventeenth Street, N.W., Suite 900
Washington, D.C. 20006-3307
Tel: 202-261-2803
Fax: 202-261-2835
acarter@acarterlaw.com


/s/ Douglas S. Brooks
Douglas S. Brooks
*Pro Hac Vice*
Kelly, Libby & Hoopes, P.C.
175 Federal Street
Boston, MA 02110
Tel: 617-338-9300
Fax: 617-338-9911
dbrooks@klhboston.com

Dated: October 31, 2007

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and accurate copy of the foregoing was delivered via the Court's electronic filing system to the following counsel for Plaintiff Peter M. Mace, this 31st day of October, 2007.

Michael J. Trevelline, Esq.
1823 Jefferson Place, NW
Washington, D.C. 20036-2504
mjt@mjtlegal.com

/s/ Douglas S. Brooks
Douglas S. Brooks

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| PETER M. MACE<br><br>Plaintiff<br><br>v.<br><br>LARRY A. DOMASH<br><br>Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) No. 1:05CV02244 (HHK-DAR)<br>) <u>NEXT EVENT:</u><br>) Status Conference – 2/29/08<br>)<br>)<br>)<br>) |

## <u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT LARRY DOMASH'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO FED. R. CIV. P. 12(b)(1)</u>

Although Plaintiff's Complaint alleges compensatory damages of exactly $250,000.00, his recent supplemental answers to Defendant's interrogatories make clear that the actual amount of damages – exclusive of any interest – is $46,457.07. Even if the interest on the principal of the alleged debt during the life of the alleged contract is included for purposes of determining the amount in controversy, Plaintiff's jurisdictional damages still do not exceed $75,000.00. *See* 28 U.S.C. § 1332. Accordingly, the amount of controversy is not satisfied, this Court lacks subject matter jurisdiction and the case should therefore be dismissed.

I. **FACTUAL BACKGROUND**

　A. **Brief Synopsis of Alleged Contract**

Plaintiff's claim arises from an alleged oral contract between the parties that Plaintiff says existed from April or May 1999 to November 24, 2002. *See* Plaintiff's Rule 26(a)(1) Disclosures at 4 (attached hereto as Exhibit A).[1] Plaintiff alleges that in or around April 1999, he had exhausted his personal resources trying to establish his own insurance company, Investors Fidelity of America ("IFA"). *Id.* Plaintiff further alleges that he and Defendant entered into an oral contract in or around that time, whereby the parties allegedly agreed that if Plaintiff continued working on trying to establish IFA (for which, according to Plaintiff, Defendant had a desire to manage money), Defendant would agree to reimburse Plaintiff for the following expenses: (1) Plaintiff's reasonable living expenses; (2) financial support that Plaintiff provided his cousin; (3) expenditures made on behalf of IFA; and (4) expenditures made directly on behalf of Defendant. *Id.*[2] Plaintiff apparently made the vast majority of his expenditures by way of his personal credit cards, with some additional expenditures made through his personal bank accounts. *See id.*

Although the so-called contract contained no agreed-upon termination date (*see* Deposition Transcript of Peter Mace at 61:20-62:2, relevant excerpts attached hereto as

---

[1] Throughout this case, Plaintiff has alternatively claimed that the alleged contract commenced in both April and May 1999. For purposes of this motion only, Defendant will give Plaintiff the benefit and assume an April 1999 contract start date (so as to include all expenditures during that month under the alleged contract for amount-in-controversy purposes).

[2] Plaintiff did not mention the category regarding his cousin's expenses in the Complaint. This first appeared a year after Plaintiff filed the Complaint when he provided his initial Rule 26 disclosures. *See* Exhibit A at 4. Although not germane to the present motion, it is worth noting that it is unlikely that the cousin's expenses were actually discussed as part of the alleged contract that was formed in April 1999, because Plaintiff did not start making payments to his cousin until April 2000, a full year later (discussed further below). Accordingly, Plaintiff's testimony that, in April/May 1999 he "mentioned that [he] was supporting a cousin of [his] in California and her two children," is highly suspect. *See* Deposition Transcript of Peter Mace at 39:17-18, attached hereto as Exhibit B.

2

Exhibit B), Plaintiff alleges that it ran from April/May 1999 to November 24, 2002, when Defendant formally denied its existence in writing. *See* Exhibit A at 4. During that time (more than three and one-half years), Defendant never paid Plaintiff any money under the alleged contract. *See* Complaint ¶ 15. While Plaintiff claims that Defendant orally acknowledged the existence of the alleged contract, he has no documentary support whatsoever for this contention. During the life of the alleged contract (and indeed, until the filing of this litigation in November 2005, a span of over six and one-half years), Plaintiff never provided Defendant with any documentation whatsoever regarding his expenditures, credit card payments, interest that accrued on his credit cards or the balance that Defendant allegedly owed to him. *See* Exhibit B at 269:15-270:4. Indeed, based on the documents Plaintiff has produced in this matter, it is clear that Plaintiff kept no contemporaneous records of any kind related to his expenditures under the alleged contract.[3] Plaintiff also alleges that there was no understanding as to any type of payment schedule under the alleged contract. *Id.* at 54:16-18.

### B.  Plaintiff's Damages Claim

Plaintiff's damages case has been a moving target throughout this litigation. In his Complaint, he alleged compensatory damages in the amount of $250,000.00, without providing any meaningful explanation. Complaint ¶ 14. The Complaint contained no claims for emotional damages or for punitive damages. The Complaint also asserted claims for quantum meruit and fraud, but did not allege any damages from those claims independent of the damages resulting from the alleged breach of contract claim. *See*

---

[3] The lack of contemporaneous records is also corroborated by the erroneous allegations regarding damages contained in the Complaint. For example, Plaintiff claims that as of October 2000, he had already expended $75,000 "for the agreed purposes." Complaint ¶ 11. As set forth in more detail below, not only is this inaccurate, but Plaintiff never expended nearly $75,000 "for the agreed purposes" during <u>the entire life of the alleged contract</u> (which Plaintiff claims existed for more than two additional years).

3

Complaint ¶¶ 17, 21 and 27 (alleging the same $250,000.00 in compensatory damages on each of the three causes of action). The Complaint did not allege that Defendant was responsible for the interest that accrued on Plaintiff's pre-existing credit card debt under the alleged contract (*i.e.,* debt incurred before the formation of the alleged contract) or for the interest that accrued on Plaintiff's credit card expenditures during the life of the alleged contract in connection with purchases that were not made pursuant to the alleged contract. Based on the allegations in the Complaint that Plaintiff suffered $250,000.00 in compensatory damages, Defendant did not challenge the amount in controversy in this case at the time of his Answer.

A full year after filing the Complaint (which itself was filed three years after Plaintiff claims the alleged contract terminated), Plaintiff served his initial disclosures under Fed. R. Civ. P. 26(a)(1). *See* Exhibit A. With respect to his "computation of any category of damages claimed" pursuant to subsection (C) of that Rule, Plaintiff claimed that he incurred approximately $205,530.38 in expenses under the alleged contract between May 1999 and November 24, 2002. *Id.* at 4. As set forth below, this claim is completely belied by his subsequent "accountant's report." Plaintiff made no reference to emotional damages or punitive damages in these disclosures. Notably, Plaintiff did not claim that, under the alleged oral contract, Defendant was responsible for interest that accrued as a result of his pre-existing credit card debt or for interest that accrued in connection with purchases that, although made during the life of the alleged contract, were not covered by the alleged contract. Indeed, he specifically stated that the alleged contract only covered finance charges and interest "<u>resulting from</u>" the alleged contractual expenses. *Id.* at 4 (emphasis added). Finally, Plaintiff did not claim that he

4

had any additional damages flowing from his fraud or quantum meruit claims that were independent of his contract claim. Based on the allegations in these disclosures that Plaintiff's expenses under the alleged contract equaled $205,530.38, Defendant did not challenge the amount in controversy in this case at that time.

One month later, on December 14, 2006, Plaintiff answered Defendant's first requests for interrogatories. (A true and accurate copy is attached hereto as Exhibit C). In response to an interrogatory asking Plaintiff to identify the amount, purpose and date of each expenditure he made under the alleged contract, Plaintiff answered that he was in the process of working with an accountant to prepare a more detailed accounting. *See* Exhibit C at 1-2. He reiterated that the categories of expenditures were those made on behalf of Defendant, those made for Plaintiff's own living expenses, money sent to Plaintiff's cousin and money spent on IFA. *Id.* at 3.

The discovery period closed on March 22, 2007. Five days after the close of discovery, Plaintiff moved to extend it, for purposes, *inter alia*, of providing his accountant's report. (*See* Docket No. 17). Plaintiff asked for 30 days to do so. *Id.* On April 10, 2007, the Court granted Plaintiff's motion, extending the discovery period until April 21, 2007. Plaintiff did not provide the promised accountant's report by that date.

On June 27, 2007, over two months after the close of discovery, Plaintiff served his <u>second</u> supplemental Rule 26 disclosures. (A true and accurate copy is attached hereto as Exhibit D). For the first time, he made claims for emotional damages (in the amount of $100,000) and for damages based on the time he spent "trying to manage the debt" (in the amount of $4,000). *Id.* at 2. After hearing, on September 27, 2007, Magistrate Judge Robinson struck these new damages theories as untimely. Plaintiff did

5

not set forth any claim of punitive damages in his second supplemental disclosures, nor did he provide any additional information on his original damages claim. In connection with his June 27 second supplemental disclosures, Plaintiff did not claim that he had any additional damages flowing from his fraud or quantum meruit claims that were independent of his contract claim.

On September 7, 2007, four and one-half months after the close of discovery, Plaintiff served his Second Supplemental Responses to Defendant's First Set of Interrogatories, which finally attached the long-awaited "report" of his accountant. (A true and accurate copy of the supplemental responses is attached hereto as Exhibit E; a true and accurate copy of the accountant's report is attached hereto as Exhibit F).[4] That supplemental interrogatory answer relied on the report from the accountant, which is completely at odds with all of Plaintiff's previous discovery responses and submissions regarding damages. Based on his accountant's report, Plaintiff's supplemental interrogatory answer lists the following alleged contractual expenditures: $8,727.05 in expenses attributable to payments Plaintiff allegedly made on behalf of Defendant; $10,975.00 in expenses attributable to payments Plaintiff allegedly made on behalf of his cousin; $26,755.02 in expenses attributable to payments Plaintiff allegedly made for his own personal expenses; and $0.00 in expenses attributable to payments Plaintiff made on

---

[4] Plaintiff's accountant's report is not admissible evidence in this case. First, Plaintiff has never listed his accountant as a witness in this case – much less designated him as an expert. Second, the report was produced months after discovery closed and thus Plaintiff cannot affirmatively rely on it. Because he bases his supplemental interrogatory response on the information contained in the report, however, Defendant cites to it for purposes of demonstrating the jurisdictional deficiencies in Plaintiff's case.

behalf of IFA. *See* Exhibit E at 2.[5] In sum, Plaintiff alleges that he made, <u>at most</u>, $46,457.07 in credit card expenditures under the alleged contract.

These supplemental interrogatory responses also purport to claim damages (albeit not explicitly) for $61,752.39 of credit card expenditures, which Plaintiff acknowledges were not attributable to any of the categories of expenses covered by the alleged contract. *See* Exhibit E (relying on Exhibit F at Bates number 0108). Plaintiff also states that he accrued $52,504.69 in interest and finance charges during the life of the alleged contract. Exhibit E at 2. However, Plaintiff does not allocate from this aggregate interest figure the amount of interest that was attributable to his pre-existing debt or the amount of interest that accrued based on the credit card expenditures unrelated to the alleged contract. In other words, Plaintiff does not provide a number indicating how much interest accrued on his alleged contract-related expenditures. Finally, Plaintiff also makes a claim for $116,809.44 in interest that accrued after the termination of the alleged contract. *Id.*[6]

---

[5] It appears that Plaintiff made none of the alleged payments to his cousin and virtually none of the alleged payments on behalf of Defendant by way of the credit cards. Nonetheless, for purposes of this motion only, in order to read the interrogatory answer in the light most favorable to Plaintiff, Defendant assumes that all such payments were made by credit card (directly or indirectly, through cash advances), so as to allocate the maximum amount of interest to the alleged contract.

[6] Defendant wishes to make clear that he does not agree with Plaintiff's own reading of the accountant's report and does not waive any future argument he may have on this point; however, for purposes of this Motion, Defendant is reading the supplemental interrogatory answer in the light most favorable to Plaintiff. Just by way of brief example, Plaintiff purports to allocate <u>all</u> of the expenditures that his accountant deemed to be Plaintiff's "personal expenses," as part of the alleged contract. However, Plaintiff has never claimed that the alleged contract covered all of his personal expenses; rather, Plaintiff's position was that the alleged contract covered his "reasonable living expenses." *See, e.g.,* Exhibit A at 4. As it appears from discovery that a significant amount of the "personal expenses" were spent on items such as flowers, gifts and meals away from home, it is unlikely that these would ultimately be considered "reasonable living expenses." In addition, in reviewing the accountant's report, it appears that there is significant "double counting" as to certain credit card expenses. Again for purposes of this Motion, Defendant is assuming that all of Plaintiff's "personal" expenses are covered by the alleged contract and that no double counting occurred.

7

II. **ARGUMENT**

  A. **Standard of Review**

In determining the amount in controversy, the Court is not confined to the bald allegations in the Complaint. "The standard of review for a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) is virtually identical to that used for 12(b)(6) motions, except that the Court is free to consider material outside the pleadings for purposes of resolving jurisdictional issues." *Jackson v. District of Columbia Dept. of Health*, 2007 WL 1307891, *1 (D.D.C. May 3, 2007) (citing *Caesar v. United States*, 258 F.Supp.2d 1, 2 (D.D.C. 2003)). "In the Rule 12(b)(1) context, Plaintiff bears the burden of proving jurisdiction." *See id.*; *Caesar, supra* at 3. *See also Smith v. Washington*, 593 F.2d 1097, 1100 (D.C. Cir. 1978) (when defendant controverts plaintiff's claim of jurisdictional amount, a factual issue emerges and the burden is on plaintiff to establish jurisdictional amount). It must appear to a legal certainty that the amount in controversy is not met to justify dismissal. *See St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938).

  B. **The Counting of "Interest" in Determining the Amount in Controversy**

Where, as here, a plaintiff's claim of federal jurisdiction rests on a claim of diversity jurisdiction, the amount in controversy must exceed $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332. In *Brown v. Webster*, the Supreme Court distinguished between "interest as such," which must not be considered when calculating the amount in controversy, and interest that is "an instrumentality in arriving at the amount of damages to be awarded on the principal demand." 156 U.S. 328, 329 (1895). Interest may be considered an element of damages when the "interest is owed as part of

8

the underlying contractual obligation." *Transaero, Inc. v. La Fuerza Area Boliviana*, 24 F.3d 457, 461 (2d Cir. 1994). On the other hand, interest that becomes due because of delay in payment is the type that is excluded under § 1332(a). *Principal Mut. Life Ins. Co. v. Juntunen*, 838 F.2d 942, 943 (7th Cir. 1988).

Here, there are two categories of interest: the first consists of the interest that accrued on the credit cards during the life of the alleged contract (April/May 1999 to November 24, 2002); the second consists of the interest that accrued on the same credit cards after the alleged contract terminated (November 24, 2002 to present). It is clear beyond peradventure that the second category of interest is excluded from the amount-in-controversy determination. The post-contract interest accrued <u>only</u> because of delay in payment after the alleged contract terminated, *see Juntunen, supra*, and thus cannot be considered part of the underlying contractual obligation. *See Brown*, 156 U.S. at 330 (holding when interest is sought merely as accessory to underlying injury and not part of principal demand, it is not included in amount in controversy).

Defendant acknowledges that the first category of interest is a closer call. On the one hand, Plaintiff alleges that pursuant to the alleged contract, Defendant was responsible for the interest that accrued in connection therewith. On the other hand, the amount of interest was non-determinable and completely in Plaintiff's control, because it was, according to Plaintiff, solely within his discretion as to how much principal he needed to pay on each credit card – or even whether he had to pay any principal at all. As such, the interest, even assuming it was part of the alleged contractual obligation, accrued <u>only</u> because of a delay in paying the principal amount. *See Juntunen*, 838 F.2d at 943. Accordingly, the facts here (*i.e.*, the interest was both allegedly part of the

9

underlying contract <u>and</u> accrued only as a result of a delay in payment) do not fit squarely with any of the court decisions finding that interest on a contract was part of the principal demand and thus included for amount-in-controversy purposes. *See, e.g., Edwards v. Bates County*, 163 U.S. 269 (interest not excluded where plaintiff sues to collect on a bond coupon); *Parris v. Mego Mortg. Corp.*, 14 Fed. Appx. 394, 392 n.2 (6th Cir. 2001) (interest not excluded where plaintiff sues for damages under state usury law); *Brainin v. Melikian*, 396 F.2d 153, 155 (3d Cir. 1968) (interest "integral" to contract because it represented "not a charge for delay in the payment of money, but interest exacted as the <u>agreed upon price</u> for the hire of money insofar as it claims interest at the rate specified in the note during the period before maturity") (emphasis added). Indeed, the interest at issue here is of the type that courts have deemed both includable (because it was allegedly part of the contractual arrangement) and excludable (because it accrued as a result of a delay in payment) for purposes of determining the amount in controversy. *See Transaero, supra; Juntunen, supra.*

In sum, the caselaw provides no definitive answer as to whether the interest that accrued between April/May 1999 to November 24, 2002, should be included in determining the amount in controversy. However, the Court need not resolve this issue at the present time, because even assuming it is included, Plaintiff still cannot meet the $75,000 threshold.[7]

### C. Plaintiff Cannot Meet his Burden of Establishing the Jurisdictional Amount in Controversy.

Even reading Plaintiff's interrogatory answers and accompanying accountant's report in the light most favorable to him, it is clear that his jurisdictional damages do not

---

[7] Defendant does not intend to waive any future argument he may have that the April 1999 to November 24, 2002 interest should be excluded for amount-in-controversy purposes.

exceed $75,000. According to Plaintiff, the total expenditures under the alleged contract equal $46,457.07. Exhibit E at 2. The pre-existing debt ($37,069.93) added to the credit card debt that was not part of the alleged contract ($61,752.39) equals $98,822.32. *See* Exhibit F at Bates number 0108. Together, the $46,457.07 of alleged contract expenditures, plus the $98,822.32 of non-contract expenditures, resulted in $52,504.69 of interest and finance charges during the life of the alleged contract. *See* Exhibit E at 2.

Clearly, the non-contract expenditures (which are more than twice the amount of alleged contract expenditures) must have resulted in significantly more than half of that total amount, thus placing the amount in controversy well below the $75,000 threshold. Moreover, the entire amount of pre-existing debt was, of course, accruing interest as of the first day of the alleged contract, and thus significantly more interest accrued on that amount than on expenditures made under the alleged contract in later years. To this end, it is notable that many of the alleged contractual expenditures occurred well after April 1999 (*e.g.*, Plaintiff did not start providing money to his cousin until, at the earliest, April 2000 -- a full year after the alleged contract commenced). *See* Exhibit F at Bates number 0133. Indeed, based on the accountant's report, most of the expenditures which Plaintiff attributes to the alleged contract appear to have been made in 2001 and 2002. *See generally* Exhibit F.

Accordingly, although Plaintiff (who has the burden here) has not yet provided a meaningful breakdown of how much interest accrued under the alleged contract between April 1999 and November 24, 2002, based on the other material he has provided, this Court can determine, to a "legal certainty," that Plaintiff's jurisdictional damages do not exceed $75,000.

### D. Plaintiff Cannot Rely on New Claims for Damages First Raised Months After the Close of Discovery.

Perhaps recognizing that his alleged damages do not meet the jurisdictional threshold, Plaintiff has attempted – well after the close of discovery – to add new damages claims that are not properly part of his case. Any alleged damages flowing from these fatally tardy claims cannot properly be considered.

For example, months after the discovery deadline passed, Plaintiff attempted to add a claim for emotional distress damages and damages for his time managing his debt. *See* Exhibit D. The Magistrate Judge struck these damages disclosures as untimely. Additionally, in his Objections to the Magistrate's ruling, Plaintiff, anticipating the present motion, asserted that he could meet the jurisdictional threshold by way of punitive damages. (Docket No. 31). However, in making this assertion, Plaintiff conspicuously ignores the rather basic point <u>that he does not have a punitive damages claim</u>; he did not plead a claim for punitive damages in his Complaint, nor did he set forth a computation of such, as required, in any of his <u>three</u> subsequent Rule 26 disclosure statements. *See* Complaint; Rule 26 Disclosures, Exhibits A, D and G. (Exhibit G is a true and accurate copy of Plaintiff's first supplemental Rule 26 disclosures). In addition, Plaintiff curiously alleged in his Objections that he could meet the jurisdictional amount because he has a claim for quantum meruit. (Docket No. 31). As is the case with punitive damages, however, Plaintiff has no claim for quantum meruit damages independent of his damages arising out of his breach of contract count. *See* Complaint; Exhibits A, D and G.

### III.  **CONCLUSION**

For the foregoing reasons, Plaintiff cannot satisfy the jurisdictional threshold for diversity purposes. Accordingly, this Court should dismiss this action for lack of subject matter jurisdiction.

Respectfully submitted,

/s/ Adam Augustine Carter
Adam Augustine Carter
DC Bar # 437381
888 Seventeenth Street, N.W., Suite 900
Washington, D.C. 20006-3307
Tel: 202-261-2803
Fax: 202-261-2835
acarter@acarterlaw.com


/s/ Douglas S. Brooks
Douglas S. Brooks
*Pro Hac Vice*
Kelly, Libby & Hoopes, P.C.
175 Federal Street
Boston, MA 02110
Tel: 617-338-9300
Fax: 617-338-9911
dbrooks@klhboston.com

Dated:  October 31, 2007

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and accurate copy of the foregoing was delivered via the Court's electronic filing system to the following counsel for Plaintiff Peter M. Mace, this 31st day of October, 2007.

Michael J. Trevelline, Esq.
1823 Jefferson Place, NW
Washington, D.C. 20036-2504
mjt@mjtlegal.com

/s/ Douglas S. Brooks
Douglas S. Brooks