**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Peter M. Mace<br>　　Plaintiff,<br>　　　vs.<br>Larry A. Domash<br>　　Defendant | Case No. 1: 05-02244 (HHK  DAR)<br>Judge Henry H. Kennedy, Jr.<br>Next Event:  Status Hearing 29 February 2008 |

# Memorandum of Points & Authorities
# in Opposition to
# Defendant Larry Domash's Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12 (b)(1) Disclosures

## I.  Summary

Defendant is obliged to demonstrate "to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." Government of Rwanda v. Rwanda Working Group, 150 F.Supp.2d 1, 5 (D DC 2001).  In response to discovery, Plaintiff shows that he made $108,209.46 in credit card charges and incurred $52,419.69 in finance charges for a total of $160,629.15 in debt incurred ($108,209.46 = $52,419.69 = $160,629.15) during the period of an agreement with Defendant. And Plaintiff claims that under the agreement Defendant promised to reimburse him this $160,629.15.  Although Plaintiff has approximately 2,000 pages of credit card statements, Plaintiff does not have all of the statements.  He lacks statements showing $61,752.39 of the $108,209.46 in total charges.  However, Plaintiff has later statements showing that he incurred precisely $61,752.39

*Opposition to Motion—Page 1*

in charges during the missing months, and testifies that all of these charges were under the agreement.

Without any discussion of Federal Rule of Evidence 1004, allowing testimony of the contents of lost or destroyed documents, Defendant asserts that Plaintiff cannot recover the $61,752.39 and so does not have the minimum $75,000 in damages. Defendant's assertion finds no support in the law.

In addition, Defendant asserts—again without any citation to or discussion of the law—that the quantum meruit claim is not to be considered in analyzing whether Defendant can demonstrate that the $75,000 cannot be reached. No such rule of law making quantum meruit claims irrelevant exists. Plaintiff has shown that under one measure of quantum meruit damages he has $182,000 in damages and under another $179,539.29. Therefore, Defendant's motion fails under the quantum meruit claim as well.

Plaintiff's repeated insistence that he is an oracle of law, not needing to provide any citation or discussion of the law, is at the least tedious. Defendant represented to the Court that he would make a good faith motion to dismiss on the $75,000 jurisdiction question. Considering the lack of legal citations and the erroneous nature of his oracular legal assertions on the two key points in his motion, Defendant's representation appears to border on being a bad faith delaying tactic.

*Opposition to Motion—Page 2*

## II.  Facts
## Oral Contract & Law Suit

Plaintiff's suit is on a breach of contract count and two related counts of fraud and quantum meruit.  Plaintiff alleges that in April of 1999 he contracted with Defendant for Plaintiff to invest time, effort and money into assisting Defendant with Defendant's personal legal problems (protracted divorce litigation) and emotional difficulties and to continue promoting a start-up insurance company, which business would be of benefit to Defendant and Plaintiff.  In exchange, Defendant promised to reimburse Plaintiff for all expenses and to pay for Plaintiff's living expenses during the period of divorce litigation and start-up. (Complaint at ¶¶ 8-9; Answer to Interrogatories, found at Exh. C to Defendant's Motion to Dismiss.)

When entering the agreement, Plaintiff explained that his only source of funds was credit card debt.  With the knowledge and consent of Defendant, Plaintiff went ahead and incurred expenses through approximately ten credit cards.  (Answer to Interrogatory No. 1, found at Exh. C to Defendant's Motion to Dismiss.)  The initial credit card debt of Plaintiff in April 1999 when the agreement was made was $37,069.93.  (Exh. A, Supplemental Answer to Interrogatories with 2 pages of the Financial Report.)  When on 24 November 2002 Defendant told Plaintiff he would not honor the contract, the debt had risen to

*Opposition to Motion—Page 3*

$197,699.08. Plaintiff ceased performing services under the contact on that date, 24 November 2002. (Exh. B, Affidavit of Peter Mace at ¶ 7.) Plaintiff is claiming to be reimbursed for $160,629.15 incurred during the contract period, April 1999 to November 2002, i.e., $198,699.08 minus the initial $37,069.93. (Exh. A, Supplemental Answer to Interrogatories.)

Of this $160,629.15, $108,209.46 is charges Plaintiff made during the period of the agreement. (Exh. A, Supplemental Answer to Interrogatories; Exh. B, Affidavit of Peter Mace at ¶ 3.) Plaintiff claims that Defendant agreed to reimburse him for all of these charge of $108,209.46. (Exh. A, Supplemental Answer to Interrogatories; Exh. B, Affidavit of Peter Mace at ¶¶ 3-4.) The $108,209.46 includes $26,755.02 in Plaintiff's personal expenses, $10,975 in expenses Plaintiff incurred on behalf of his niece, $8,727.05 in expenses Plaintiff incurred on behalf of Defendant, and $61,752.39 in expenses Plaintiff incurred in all of the categories, but with no specific categorization because the credit card statements are unavailable. (Exh. B, Affidavit of Peter Mace at ¶ 6.) In addition, during the period of the contract, Plaintiff incurred $52,241.69 in finance charges, which Plaintiff is claiming as well.

## Value of Work Plaintiff Performed

Plaintiff worked full-time for Defendant under the terms of

their agreement for forty-two months (three & one-half years), mostly attending to Defendant's divorce litigation and providing Defendant emotional support. (Exh. B, Affidavit of Peter Mace at ¶ 8.) Exhibit C is the portion of Plaintiff's answer to interrogatories detailing the work he performed for Defendant. Exhibit D is the portion of the initial disclosures identifying witness; the witness identifications show that many of the witnesses will be testifying to the extensive labor Plaintiff performed on behalf of Defendant. (Defendant provides these complete documents at his Exhibits C & G to his Motion to Dismiss. However, he never explains why Plaintiff should not be paid for this work; indeed, Defendant never addresses the extensive work Plaintiff performed for Defendant.)

 Plaintiff has a juris doctorate degree and so is qualified to act as a paralegal and qualified to help a busy executive such as Defendant manage his many lawyers and legal problems. (Exh. B, Affidavit of Peter Mace at ¶ 8.) During the years of Plaintiff's service to Defendant, Plaintiff managed at least eight different lawyers that Defendant employed is divorce litigation. (Exh. B, Affidavit of Peter Mace at ¶ 8.) As well Plaintiff communicated with and managed Defendant's relations with other professionals such as private investigators and forensic experts. (Exh. B, Affidavit of Peter Mace at ¶ 8.) From approximately June of 1998 to June of 2001 Plaintiff provided theses services in support of the

*Opposition to Motion—Page 5*

divorce and child custody litigation, as well as emotional support. (Exh. B, Affidavit of Peter Mace at ¶ 8.) During this period of time, Plaintiff devoted on average a minimum of thirty hours per week to Defendant's divorce and child custody matters. (Exh. B, Affidavit of Peter Mace at ¶ 8.) After June of 2001, Plaintiff devoted most of his time to the start-up business, but did continue to devote time to Defendant's emotional support and to his legal matters. (Exh. B, Affidavit of Peter Mace at ¶ 8.)

This work was not limited to occasional friendly assistance—it was a sustained provision of work that might be generally characterized as functioning as Defendant's aide-de-camp vis-à-vis liaison with Defendant's own lawyers for the divorce litigation—making arrangements for evidentiary matters such as expert analysis of recorded telephone calls, receiving and transmitting legal material and communications on behalf of Defendant, and attendance at actual Court proceedings in a support role to Defendant and his attorneys—all of which involvement is extensively documented by the thousands of pages of contemporaneous records – i.e, faxes, telephone records, letters to and from lawyers addressed directly to Plaintiff on behalf of Defendant.

Indeed Plaintiff Mace's role in doing such work for Defendant Domash rose to such a level that Defendant actually executed and granted a full power of attorney to Plaintiff expressly

*Opposition to Motion—Page 6*

granting Plaintiff power to act for him "in all of my legal matters"! (Exh. F, Power of Attorney.)

Following 24 November 2002, when Defendant told Plaintiff that Defendant would not honor the contract, Plaintiff ceased working for Defendant, and, when unsuccessful with getting the start-up business financed, sought full-time employment. (Exh. B, Affidavit of Peter Mace at ¶¶ 7-8.) Thus, when Defendant defaulted on his promise to reimburse Plaintiff for the credit card debt, he essentially shifted all of the risk of their joint enterprise (the start-up business) onto Defendant.

Plaintiff became employed as a security officer by a government contractor, with a duty title of Elite Team Security Officer or informally deputy project manager for the site. (Exh. B, Affidavit of Peter Mace at ¶ 7.) His salary in that position was approximately $52,000 per year. (Exh. B, Affidavit of Peter Mace at ¶ 7.) If Defendant had not induced Plaintiff to work full-time for him and the business start-up in April 1999, Plaintiff would have sought similar full-time employment then. (Exh. B, Affidavit of Peter Mace at ¶ 7.) Plaintiff's wife owns their home so that Plaintiff has no mortgage obligations. (Exh. B, Affidavit of Peter Mace at ¶ 7.) Plaintiff lives modestly and has very little expenses. (Exh. B, Affidavit of Peter Mace at ¶ 7.) At a salary of $52,000 per year Plaintiff could have paid off the $37,069.93 in credit card debt rather promptly. (Exh. B, Affidavit of Peter Mace at ¶ 7.)

*Opposition to Motion—Page 7*

However, Plaintiff could not possibly manage the over $250,000 in credit card debt he is now carrying on such a salary.

Plaintiff worked a minimum of forty hours per week for the forty-two months of the contract. (Exh. B, Affidavit of Peter Mace at ¶ 8.) This three & one-half years of service represents at $52,000 per year $182,000 in lost income Plaintiff would have earned elsewhere.

Besides, income foregone, Plaintiff could establish value by showing the hours worked and multiplying by the market hourly rate. Forty-two months of full-time employment for Defendant at forty hours per week, at four weeks per months comes to 6,720 hours of work (42 x 4 x 40 = 6,720). Exhibit E is the 1999 U.S. Department of Labor's prevailing wage table for the Washington, D.C. area. It shows that a Paralegal/Legal Assistant IV in 1999, the year of the contract, would earn $24.95 per hour and receive $282.53 per month in benefits. This means the value of the service Plaintiff proved was $179,539.26—$167,664.00 in wages ($24.95 x 6,720 hours = $167,664.00) and $11,866.26 in benefits ($282.53 x 42 months = $11,866.26).

### III. Law & Argument

#### A. Law of Rule 12(b)(6) Motion to Dismiss

To prevail, Defendant must show beyond doubt that Plaintiff can prove no set of facts in support of his claim that would entitle

*Opposition to Motion—Page 8*

him to relief. Johnson-El v. District of Columbia, 579 A.2d 163, 166 (D.C. 1990).

> In reviewing the dismissal of a complaint, [the court] must construe the complaint in the light most favorable to the Plaintiff and assume, for purposes of the motion, that the allegations in the complaint are true. . . . Any ambiguities or doubts concerning the sufficiency of the claim must be resolved in favor of the pleader. . . . Moreover, a complaint should not be dismissed on grounds that the court doubts that the Plaintiff will prevail.

Id. (citations and internal quotations omitted). "The court should construe a plaintiff's allegations liberally because the rules require only general or notice pleading rather than detailed fact pleading." Moore's Manual: Federal Practice and Procedure § 11.24 (2000) (construing the federal rules).

## B. Has Defendant Shown to a Legal Certainty that the Claim is for less than $75,000 and that It Is Beyond Doubt that Plaintiff Can Prove No Set of Facts that the Claim Is for $75,000?

### 1. Legal Standard

The unequivocal legal standard has been articulated by this Court:

> In testing whether a claim satisfies the minimum dollar amount for diversity jurisdiction, the sum claimed by the plaintiff controls if the claim is

*Opposition to Motion—Page 9*

apparently made in good faith.  See St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288-89, 58 S.Ct. 586, 82 L.Ed. 845 (1938).  That is, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."  Id.; see also Allen v. Rehman, 2000 WL 33201275, *1 (D.D.C.2000) (Urbina, J.).

Government of Rwanda v. Rwanda Working Group, 150 F.Supp.2d 1, 5 (D DC 2001).

### 2. Contract Claim

Where Plaintiff explains that $108,209.46 in expenses were incurred under the forty-two month agreement, he has certainly made out a claim for more than $75,000.  Defendant's motion must be denied.

Plaintiff very specifically claims that the credit card debt increased by $160,629.15.  (Exh. A, Supplemental Answer to Interrogatories.)  Plaintiff explains that this $160,629.15 includes $52,241.69 in interest & finance charges leaving $108,209.46 in charges.  (Exh. A, Supplemental Answer to Interrogatories.)  Plaintiff has provided further explanation in the form of an affidavit.  (Exh. B, Affidavit of Peter Mace at ¶¶ 2-3.)

That Plaintiff does not have a credit card statement for the $61,752.39 portion of the charges he made under the agreement does not prevent him from testifying what the charges were.  Secondary evidence of a written record is admissible when unavailable for various reasons including when destroyed through accident.  Fed. R. of Evidence 1004.  Indeed, Plaintiff's testimony

*Opposition to Motion—Page 10*

that $160,629.15 in charges, interest and penalties were incurred is corroborated by the more recent credit card statements summarized in the accountant's report showing that $160,629.15 was incurred (108,209.46 in charges and $52,419.69 in finance charges).

Defendant argues that only $46,457.07 in expenses were incurred during the contract. (Motion to Dismiss at 7.) However, Defendants provide no support or explanation for the proposition that the remaining $61,752.39 in charges are not included in Plaintiff's claim. Defendant provides no explanation at all why the $160,629.15 figure provided by Plaintiff is to be ignored, why the $61,752.39 is not to be included. No affidavit from Defendant. No legal citation. No affidavit from a defense accountant analyzing the report prepared by Plaintiff's accountant. No argument of counsel. No affidavit from an employee of a credit card company. No citation to the Federal Rules of Evidence.

Defendant has not even climbed to the low approaches of the distant heights it would have to scale to make out a Rule 12(b)(1) dismissal.

### 3. Quantum Meruit Claim

In addition, Defendant's argues that Plaintiff's quantum meruit damages (Count III) are not to be considered in determining whether the $75,000 requirement has been met since the quantum meruit claim is dependant on the contract claim. (Motion to Dismiss at 4-5, 12.) Defendant cites no legal citation for this

*Opposition to Motion—Page 11*

erroneous proposition.  Count III is entitled "Unjust Enrichment – Quantum Meruit."  It alleges in part:  "In making expenditures after April, 1999 in support of the development of IFA and D & A and the management of Defendant's personal legal problems , Plaintiff conferred a benefit upon Defendant." (Complaint at ¶ 23.)  This type of quantum meruit claim is called quasi-contract or unjust enrichment.  <u>Vreen v. Clayborne</u>, 623 A.2d 1190, 1193-94 (D.C. App. 1993).  To recover on such a claim, a plaintiff "must show that [the defendant] was unjustly enriched at [plaintiff's] expense and that the circumstances were such that in good conscience [the defendant] should make restitution."  <u>Id.</u> at 1194.

Plaintiff's complaint, answers to discovery, and affidavit (Exh. B, Affidavit of Peter Mace at ¶¶ 6-9) make out just such a claim for $182,000 in wages foregone or $179,539.29 in the hourly value of the work performed.  (Exh.. B, Affidavit of Peter Mace at ¶¶ 7-8; Exh. E, Dept. of Labor Prevailing Wage Determination.)  On quantum meruit claims, courts allow evidence of several different valuation methods to determine the reasonable value of the services provided.  <u>IBF Corp. v. Alpern</u>, 487 A.2d 493, 597-98 (D.C. App. 1985).  The Court could well credit either method of establishing quantum meruit value.  At Exhibit B to Defendant's Motion to Dismiss, he provides an extensive extract of Plaintiff's deposition transcript.  At no place in the transcript, does Plaintiff contract the affidavit he now submits at Exhibit B, which details

*Opposition to Motion—Page 12*

the credit card charges and the extent of work he performed for Defendant.

## IV.  Conclusion

WHEREFORE, since Plaintiff's has shown damages of over $75,000 on his breach of contract claim as well as on his quantum meruit claim, Defendant has failed to demonstrate "to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."

Respectfully submitted,

Dated: 23 November 2007   Signed:   ___/s/  Michael Trevelline_____
                                     Michael J. Trevelline, DC Bar # 437454
                          Address:   1823 Jefferson Place, NW
                                     Washington, DC 20036-2504
                          Telephone: (202) 737-1139/Fax:  (202) 775-1118
                          Email:     mjt@mjtlegal.com

Attorney for **Plaintiff Peter M. Mace**

6 Exhibits:
A.  Supplemental Answer to Interrogatories with 2 pages of financial report with annotations
B.  Affidavit of Peter M. Mace
C.  Portion of Answer to Interrogatories with annotations
D.  Portion of Initial Disclosures with annotations
E.  Extract of U.S. Department of Labor Prevailing Wage determination for Washington, DC are in 1999
F.  Power of Attorney

## Certificate of Service

I hereby certify that the **foregoing Memorandum of Points & Authorities in Opposition to Defendant Larry Domash's Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Fed. R. civ. P. 12 (b)(1) Disclosures** this **23 November 2007** was served by electronic case filing through the Court.

___/s/_ Michael Trevelline_____
Michael J. Trevelline