# Exhibit A

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| Peter M. Mace )<br>Plaintiff, )<br>vs. )<br>Larry A. Domash )<br>Defendant ) | Case No. 1: 06-2244 (HHK)<br>Judge Henry H. Kennedy, Jr. |

ORIGINAL

## Plaintiff's Second Supplemental Response to
## Defendant's First Set of Interrogatories

Now comes the **Plaintiff** to supplement his answer to the interrogatories of the **Defendant** in the number and order propounded.

### Answers

1. Describe in detail each and every expenditure you made for which you are claiming that Defendant owes you reimbursement by (1) identifying the amount, purpose and date of the expenditure, (2) identifying to whom the expenditure was made and (3) identifying all documents concerning such expenditures.

**Answer:** I am demanding $381,438.59 in damages ($277,438.59+$100,000.00+$4,000=$381,438.59). First, I suffered $277,438.59 in increased credit card debt. As explained in detail in my earlier response, Mr. Domash promised to reimburse me for three categories of credit card debt. A certified public accountant has analyzed the credit card statements and prepared a report showing the debt for which Mr. Domash is responsible. His final report is bates-numbered Financial Report 0103-138. It shows that in April of 1999, I owed $37,069.93 in credit card debt (bates Financial Report 0108). April 1999 is when Mr. Domash told me he would take care of all future credit card debt. The credit card debt has now increased to $314,508.52 (bates 0103). If Mr. Domash had not made his April 1999 promise, I would have sought employment and been able to pay off the $37,069.93, which at that time was an amount quite manageable. Under the agreement, Mr. Domash owes me the entire increase in debt—$277,438.59 ($314,508.52-$37,069.93=$277,438.59).

The certified public accountant reviewed all of the credit card statements that are available in order to determine whether the available statements showed expenses attributable to the particular

*Page 1*


**EXHIBIT**
*A*

categories Mr. Domash promised to reimburse me for. The analysis shows that I spent $8,727.05 to pay creditors of Mr. Domash (bates 0103). (Remember that the credit card statements not available may well show I made even more payments to his creditors.) It shows that I paid $10,975 to my niece Judy Petoney. It shows I incurred $26,755.02 in personal living expenses. It shows I incurred $52,504.69 in interest and finance charges. It shows that the total credit cards balance had risen to $197,699.08 on 24 November 2002, the date Mr. Domash informed me he would not honor the agreement. This means that during the agreement my credit card debt increased by $160,629.15 ($197,699.08-$37,069.93) (bates 0108). Mr. Domash is obliged to reimburse me for this increase since it all is reasonable expenses incurred under the agreement. In addition, since I have not been able to pay off this debt, it has risen by $116,809.44 in interest, something Mr. Domash is also obliged to reimburse me for.

In addition, I demand to be reimbursed for the anxiety and worry I have gone through because of the unpaid credit card debt and damage to his credit. I ask $100,000 as compensation for such damage.

In addition, I demand to be reimbursed for the value of the hours spent trying to manage the debt. I have spent approximately a minimum of 200 hours phoning and writing credit card companies and debt collecting agencies working out payment plans, arranging for payment, explaining the circumstances. A value of $20 per hour of my time puts this amount of damages at $4,000.

I declare under penalty of perjury that the foregoing is true and correct. Executed on

6ᵗʰ of Sept, 2007 .

Peter M. Mace

## Certificate of Service

I hereby certify that a copy of the **foregoing** was sent via first class mail, postage prepaid, this ___7___ day of ___Sept___, 20_07_, to:Mr. Douglas Brooks

Kelly, Libby & Hoopes, P.C.
175 Federal Street
Boston, MA  02110

Page 2   Michael Trevelline

P. Mace
Inventory of Personal credit card statements
4/99-11/02

| | 3/99 or 4/99 bal or beg bal | 11/02 or 12/02 bal or end bal Charge from 3/99-12/02 |
|---|---|---|
| Chase #0076 | $ 17.50 | $ 10,398.00 |
| BOA #4896 & #5447 | $ 97.90 | $ 12,495.10 |
| Capital One #15712282464 | $ 15,381.00 | $ 9,469.06 |
| Discover # 7980 | $ 102.81 | $ 10,834.29 |
| Optima AMEX #92000 | $ 1,859.74 | $ 10,068.91 |
| First USA #2942 | $ 14,450.41 | $ 14,630.59 |
| MBNA # 014 197 | $ - | $ 23,932.05 |
| Flee/BOA #0050 | $ - | |
| AMEX #42007 | $ 273.00 | $ 591.13 |
| Chase #4427 | $ 31.74 | $ 9,083.52 |
| MBNA # 9823 | $ 4,657.84 | $ 43,779.18 |
| First USA #3798 | $ 197.99 | $ 44,417.25  Advances |
| Amount owed | $ 37,069.93 | $ 197,699.08  $ 190,629.15 |

| | |
|---|---|
| Total of all credit card charges approximate beginning balance | $ 37,069.93 |
| Pers Exp- P. Mace | $ 26,755.02 |
| Pers Exp- Pentoney | $ 10,975.00 |
| Domash Expenses | $ 8,722.05 |
| Finance charges | $ 52,504.69 |
| Less:BOA M.M. Finance Chgs | $ (85.00) |
| Minimum items not accounted for | $ 61,752.39 |
| Approximate increase: 4/99-11/02 | $ 197,629.15 |

*(handwritten notes)*

$52,341.69 =

52,504.69
(85.00)
= 52,341.69

Charges = $46,457.07

$61,752.39
$108,209.46  Total Charges
+ 52,341.69  Finance Charges
$160,629.15  Total Debt incurred April 1999-November 2002

JOSEPH V. CUPO
CERTIFIED PUBLIC ACCOUNTANT
1726 M ST., N.W., SUITE 1101
WASHINGTON, D.C.  20036
(202) 659-1040
FAX # (202) 659-1049
E MAIL: JOECUPOCPA@AOL.COM

August 29, 2007

To whom it may concern:

Here are the results from my examination of the Mace documents # 110-212, 333, 334, #1342-1637, and #3469-3716.

Expense Summary

| | |
|---|---|
| Expenses attributable to Larry Domash | $ 8,727.05 |
| Personal Expenses- Judy Petoney | 10,975.00 |
| Personal Expenses- Peter Mace | 26,755.02 |
| IFA Expenses | -0- |
| Interest and Finance Charges | 52,504.69 |
| TOTAL | $98,961.76 |

Compounding amount of credit card balance:

| | |
|---|---|
| Balance of Credit Card balance at November 24, 2002 | $197,699.08 |
| Application of interest rate of 9.99%, compounded monthly | 116,809.44 |
| Balance at August 24, 2007 | $314,508.52 |

Joseph V. Cupo, CPA

**Financial Report  0103**

# Exhibit B

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Peter M. Mace                )
    Plaintiffs,          )
        vs.              )
Larry A. Domash              )
    Defendant             )
             )

Case No. 1: 05-02244 (HHK)
Judge Henry H. Kennedy, Jr.

### Affidavit of Peter M. Mace

District of Columbia  )
               ) ss:
City of Washington    )

I, Peter M. Mace, being duly sworn, do hereby depose and say:

1.      I am over the age of 18 and am competent to testify and to make this affidavit and make this affidavit from personal knowledge. I am the Plaintiff in the above-captioned matter.

2.      I want to explain the status of my credit card debt in April 1999 when Mr. Domash and I made our agreement. As seen on the pages bates-stamped Financial Report 0108 & 0103, in April 1999, I owed $37,069.93 in credit card debt. (Exh. A, Supplemental Answer to Interrogatories & 2 pages from Financial Report.) If Mr. Domash had not promised me in April to reimburse me for future debt, I would have ceased full-time work on Mr. Domash's behalf and would have obtained a salaried job and paid off the debt. Instead, in the following months and years I continued to work full-time on Mr. Domash's divorce proceedings

*Affidavit of Peter Mace—Page 1 of 6*



and continued to promote the start-up business.

3.      From April 1999 to 24 November 2002, I made $108,209.46 in credit card charges.  (Exh. A, Supplemental Answer to Interrogatories & 2 pages from Financial Report.)  All of these charges were covered under the agreement with Mr. Domash, that is, Mr. Domash is required to reimburse me for all $108,209.46 in charges.  In addition, he is required under the agreement to reimburse me for $52,419.69 in interest & finance charges that the credit card debt incurred during the period of the contract.  The finance charges were part of our agreement.  It was understood in April 1999 that I would be accumulating debt through credit cards including interest and other charges.  This $108,209.46 in charges and $52,419.69 in finance charges amounts to $160,629.15 in contractual obligations incurred during the period of the contract.  In addition, he owes me for interest and penalties I incurred after 24 November 2002.

4.      I want to explain why all of the $108,209.46 in charges is reimbursable under the agreement even though I cannot break down all of this amount into the categories of the agreement.  I have about 2,000 credit card statements that I produced to the accountant and to Mr. Domash.  These represent about 40% of the credit card statements that I received from April 1999 to present.  I do not have about 60% of the statements.  The 60% that I do not have are mostly from some years ago.  I did attempt to keep all the

*Affidavit of Peter Mace—Page 2 of 6*

credit card records.

5.        However, I no longer have approximately 60%
because they were destroyed. One of my partners in the start-up
business, Mr. Gene Sierzant, threw many of them away without
realizing that I needed them. In addition, in 2003 there was a
water leak in the garage of my home where I was storing them and
this leak destroyed many records including credit card statements.
I may have lost some additional credit card statements through
inadvertence. I paid my accountant and my lawyer's staff much
money to attempt to obtain the missing credit card statements from
the credit card companies. However, since credit card companies
only keep records for a limited number of years, they were
unsuccessful in obtaining most of the statements I lost. My lawyer
provided the defense with a complete written record of all of the
work that was done in attempting to recover the lost statements, a
record that was quite lengthy.

6.        I do have the most recent statements and so know
precisely the amount of charges I made ($108,209.46) and the
amount of interest and finance charges ($52,419.69 during the
contract period and $116,809.44 since then). (Exh. A,
Supplemental Answer to Interrogatories & 2 pages from Financial
Report.) As I said above, I do recall that all of the $108,209.46 in
charges that I made were covered by the agreement with Mr.
Domash. However, since I do not have all of the statements, I

*Affidavit of Peter Mace—Page 3 of 6*

cannot break down the charges into the categories of charges covered by the agreement. I do understand from the accountant's report that the 40% of statements available do show that I incurred $26,755.02 for my own living expenses, $10,975 for my niece, and $8,727.05 for Mr. Domash. I do know that all of the additional $61,752.39 in charges will fit into one of the categories of expenses Mr. Domash promised to reimburse me for.

7.        Following 24 November 2002, when Mr. Domash told me he would not honor the contract, I ceased working for him. Later, when I was unsuccessful with getting the start-up business up and running, I sought and obtained full-time employment. I became employed as a security officer by a government contractor, with my duty title being Elite Team Security Officer or informally deputy project manager for the site. My salary in that position was approximately $52,000 per year. If Mr. Domash had not induced me to work full-time for him and the business start-up in April 1999, I would have sought similar full-time employment then. In April of 1999, the start-up business was too far from obtaining financing for me to risk continued full-time devotion to it. I would have sought full-time employment. My wife owns our home so that I have no mortgage obligations. I live modestly and have very little expenses. At a salary of $52,000 per year I could have paid off the $37,069.93 in credit card debt rather promptly. However, I could not possibly manage the over $250,000 in credit card debt I

*Affidavit of Peter Mace—Page 4 of 6*

am now carrying on such a salary.

8.     I worked full-time for Mr. Domash under the terms of our agreement for forty-two months (three & one-half years), mostly attending to Mr. Domash's divorce litigation and providing him emotional support. I worked a minimum of forty hours per week for the forty-two months of the contract. This three & one-half years of service represents at $52,000 per year $182,000 in lost income I would have earned elsewhere. At Exhibit C is an extract of my answers to interrogatories where I detail the many services I provided to Mr. Domash. I have a juris doctorate degree and so am qualified to act as a paralegal and qualified to help a busy executive such as Mr. Domash manage his many lawyers and legal problems. During the years of my service to him, I managed at least eight different lawyers that he employed on his divorce litigation. As well I communicated with and managed his relations with other professionals such as private investigators and forensic experts. From approximately June of 1998 to June of 2001 I provided theses services in support of the divorce and child custody litigation and the emotional support. During this period of time, I devoted on average a minimum of thirty hours per week to his divorce and child custody matters. After June of 2001, I devoted most of my time to the start-up business, but did continue to devote time to his emotional support and to his legal matters.

*Affidavit of Peter Mace—Page 5 of 6*

_Peter M. Mace_

Peter M. Mace

Subscribed and sworn to before me this ___21___ day of ___November___, 20_07_.

_Delia C. Johnson_

NOTARY PUBLIC

**My Commission Expires**
**July 14, 2009**

My Commission Expires: _____

# Exhibit C

6. State the basis for your contention in paragraph 23 of the Complaint that you conferred a benefit on the Defendant by (1) identifying all facts or information supporting your contention, (2) identifying all documents supporting or concerning your contention, and (3) identifying all persons possession knowledge of facts or information supporting the contention, and summarizing the facts or information each such person possesses.



**Answer:** The assistance I supplied to Mr. Domash consisted of the following: (1) I provided him with extensive emotional support by speaking with him on the telephone during all times of the day or night from September 1998 to November 2002. I would estimate that he called me approximately two times per day on average during this time in order to receive emotional support. (2) On his behalf I communicated to his domestic relation lawyers including: Mr. Paul Perocchi, Ms. Chouteau Merrill, Mr. Edward Barshak, Mr. Val Diviacchi, Mr. Joseph Walsh, and Mr. Paul Kelly. (3) On his behalf I arranged litigation support for his domestic relation litigation including: locating, hiring and managing Bet Tek to provide analysis of tape recordings, as well I actually paid part of the Bet Tek bill myself. (4) I paid part of Mr. Diviacchi's bill. (5) I contacted several psychologists and psychiatrists regarding his legal situation. (6) I acted as a "switchboard" facilitating communication between all parties regarding his domestic relations litigation. (7) I kept Dr. Graham informed and engaged in the process of supporting Mr. Domash during his domestic relations litigation, something of immense importance. (8) I developed a friendship with Mr. Steve Killion of Bet Tek that assisted Mr. Domash by way of receiving advice from Mr. Killion and passing it on to Mr. Domash. (9) I worked with Mr. Steve Shar, Mr. Domash's trust lawyer, to resolve particularly bitter family disputes that erupted between Mr. Domash and his two brothers. (10) I worked with Mr. Tim Hughes, Esq., who represented Mr. Domash in a dispute over fees owed to Mr. Perocchi's law firm. (11) I traveled to Boston and New York for meetings with lawyers. (12) I accompanied Mr. Domash to many court proceedings in Boston concerning child custody matters. (13) I worked many, many hours and did my best to get IFA off of the ground so that Mr. Domash could form D&A.

The financial records found at bates-stamped Mace 185-1535 contain the record of expenditures I made on his behalf or expenses I incurred in helping him. As explained above, with the help of a bookkeeper or accountant I will provide a further breakdown of these. Other documents reflecting help I provided to Mr. Domash include Mace 32, showing that I had authority to act on his behalf; Mace 59-71, showing I was privy to his family law

**EXHIBIT**

_C_

*Answers to Interrogatories—Page 6*

litigation and so assisted him; Mace 110-120, showing I assisted him with one of his family law litigators; Mace 180-184, showing I obtained litigation support for him and actually paid part of the bill on his behalf out of my own funds.



The witnesses with knowledge of the assistance I provided to Mr. Domash are George A. Graham, Jr., Ph.D.; Darryl R. Wright; Steve Killion; Bruce E. Koenig; Gene E. Sierzant; Tex Hunt; Judy Arellano; Bernice Pentoney; Chris Dowell, Ph.D., Paul Perrochi, Chouteau Merrill; Edward Barshak; Joseph Walsh; Val Diviacchi; Paul Kelly; Tim Hughes; and Ron Mysleviec.

7. Describe in detail the involvement and relationship that Graham Capital International had with IFA and/or D & A, identifying all documents concerning this relationship and all persons possessing knowledge of facts or information regarding this relationship.

**Answer:** Schematics of the relationship is found at the documents bates-stamped Mace 108, 006, 011 and 1638. The original idea was Gene Sierzant's. The formation of Graham Capital was a means to integrate and provide unified leadership to the various divisions of the company as they emerged over ten to fifteen years. Graham Capital International never was formed. We, meaning Greorge Graham, Larry Domash, Gene Sierzant and myself, decided that IFA could be owned by a holding company called Graham Capital International. This was discussed during the late summer of 2000. Darryl Wright and Tex Hunt helped significantly to shape the discussion that lead to pursuing this option. D&A was never contemplated to have an ownership relationship with IFA or Graham Capital, rather D&A would be a vendor to IFA providing financial services.

8. Describe in detail each communication you had with Defendant concerning IFA, D & A, or any other issue referenced in the Complaint by (1) identifying the content, date and location of each such communication, (2) identifying whether any other person was present during these communications, and (3) identifying all documents concerning these communications.

**Answer:** The communications I had with Mr. Domash were overwhelmingly telephonic. This is so since that is how he preferred to communicate. We never used email. He did mail us large files sometimes, numbering several hundred pages per shipment. Often we would receive this mail unexpectedly with no explanation as to its significance or context. Parenthetically, sometimes he told us to expect certain documents via mail and

# Exhibit D

1.      George A. Graham, Jr., Ph.D., N8 W 20095 Woodcrest Drive, Waukesha, Wisconsin 53188, (262) 968-5814. Psychologist for Mr. Domash, has knowledge of Investor's Fidelity as well as knowledge of the assistance Mr. Mace provided to Mr. Domash.



2.      Phillip R. O'Brien, Reinhart Boerner Van Deuren s.c., 1000 N. Water Street, Suite 2100, Milwaukee, WI 53202, (414) 298-8243. George Graham's attorney, has knowledge of Mr. Domash.

3.      Darryl R. Wright, 9627 Leesburg Pike, Vienna, VA 22182, (703) 328-2612. Supporter of Investors Fidelity, helped reorient Mr. Domash, has knowledge of Mr. Domash's promises and Mr. Mace's efforts on Mr. Domash's behalf.



4.      Steven A. Killion, 7630 Sawmill Court, Manassas, VA 20111, (703) 361-0446. Supporter of Investors Fidelity and has knowledge of Mr. Domash's promises and Mr. Mace's efforts on Mr. Domash's behalf.



5.      Bruce E. Koenig, 12115 Sangsters Court, Clifton, VA 20124, (703) 631-7099. Has knowledge of Mr. Domash's promises and Mr. Mace's efforts on Mr. Domash's behalf.



6.      Gene E. Sierzant, 3429 Stoneybrae Drive, Falls Church, VA 22044, (703) 354-3009. A founder of Investors Fidelity and has knowledge of Mr. Domash's promises and Mr. Mace's efforts on Mr. Domash's behalf.



7.      Thomas A. "Tex" Hunt, 2 Pigeon Hill Drive, Apt. 100, Sterling, VA 20165, (703) 433-6805. Supporter of Investors Fidelity and has knowledge of Mr. Domash's promises and Mr. Mace's efforts on Mr. Domash's behalf.



8.      Judy Arellano, 2027 Thornton Street, Riverside, CA 92507, (951) 683) 3783. Received help from Mr. Mace.



9.      Bernice Pentoney, 1711 Mathews Street, Riverside, CA 92507, (951) 683-3783. Has knowledge of help provided by Mr. Mace to Ms. Arellano.



10.     Chris Dowell, Ph.D., 230 Western Avenue, Sherborn, MA 01770, (617) 354-5638. A psychologist who treated Mr. Domash, supporter of Investors Fidelity, has knowledge of Mr. Mace's efforts on Mr. Domash's behalf.

11.     Paul Perocchi, Brown Rudnick Freed & Gesmer, P.C., One Financial Center, Boston, MA 02111, (617) 856-8219. An attorney who represented Mr. Domash, has knowledge of Mr. Mace's efforts on behalf of Mr. Domash.

12.     Chouteau Merrill, Brown Rudnick Freed & Gesmer, P.C., One Financial Center, Boston, MA 02111, (617) 856-8219.

*Rule 26(a)(1) Initial Disclosures—Page 2*



An attorney who represented Mr. Domash, has knowledge of Mr. Mace's efforts on behalf of Mr. Domash.

13.     Edward Barshak, Sugarman Rogers Barshak & Cohen, P.O. Box 9610, Boston, MA 02114, (617) 227-3030. An attorney who represented Mr. Domash, has knowledge of Mr. Mace's efforts on behalf of Mr. Domash.

14.     Joseph Walsh, Menard Murphy & Walsh L.L.P., 60 State Street, 34th Floor, Boston, MA 02109, (617) 832-2500. An attorney who represented Mr. Domash, has knowledge of Mr. Mace's efforts on behalf of Mr. Domash.

15.     Valerio Diviacchi, 59 Temple Place, Suite 507, Boston, MA 02111, (617) 542-3175. An attorney who represented Mr. Domash, has knowledge of Mr. Mace's efforts on behalf of Mr. Domash.

16.     Margaret S. Travers, P.C., 75 Federal Street, Boston, MA 02110, (617) 423-0099. An attorney who represented Mr. Domash, has knowledge of Mr. Domash's character.

17.     Paul Kelly, Kelly, Libby & Hoopes P.C., 175 Federal Street, Boston, MA 02110, (617) 338-0300. An attorney who represented Mr. Domash, has knowledge of Mr. Mace's efforts on behalf of Mr. Domash.

18.     Tim Hughes, 307 East Annandale Road, Suite 101, Falls Church, VA 22042, (703) 536-8233. An attorney who represented Mr. Domash, has knowledge of Mr. Mace's efforts on behalf of Mr. Domash.

19.     Ronald P. Mysliwiec, 110 Greene Street, Suite 101, New York, NY 10012, (212) 219-4000. An attorney who represented Mr. Domash, has knowledge of Mr. Mace's efforts on behalf of Mr. Domash.

Respectfully submitted,

Dated: _27 Nov 04_     Signed: _____
                                Michael J. Trevelline, DC Bar # 437454
                       Address:    1823 Jefferson Place, NW
                                   Washington, DC 20036-2504
                       Telephone:  (202) 737-1139/Fax:  (202) 775-1118
                       Email:      mjt@mjtlegal.com

Attorney for **Plaintiff Peter M. Mace**

## Certificate of Service

I hereby certify that a copy of the **foregoing** was sent via first class mail, postage prepaid,

# Exhibit E

```
SCA NO: 94-2103 REV-18 ISSUED 06/01/1999


WAGE DETERMINATION NO: 94-2103 REV (18) AREA: DC,DISTRICT-WIDE


HEALTH AND WELFARE LEVEL - INSURANCE ONLY **OTHER WELFARE LEVEL WD: 94-2104**


******THIS IS AN INFORMATIONAL DISPLAY OF AN SCA WAGE DETERMINATION AND*******
        SHOULD NOT BE USED IN A FEDERAL SERVICE SOLICIATION OR CONTRACT


****************************************************************************


                                                      Page 1

                                   |
REGISTER OF WAGE DETERMINATION UNDER  |      U.S. DEPARTMENT OF LABOR

      THE SERVICE CONTRACT ACT        | EMPLOYMENT STANDARDS ADMINISTRATION

By direction of the Secretary of Labor |     WAGE AND HOUR DIVISION

                                   |       Washington, D.C. 20210

                                   |

                                   | Wage Determination No.: 94-2103

                                   |          Revision No.: 18

Division of        Wage Determinations|  Date of Last Revision: 06/01/1999
_____

 | State): District of Columbia, Maryland, Virginia

 |
_____

 | Areas: Maryland COUNTIES OF Calvert, Charles, Frederick, Montgomery,

 |        Prince George's, St Mary's

 |        Virginia COUNTIES OF Arlington, Fairfax, Fauquier, King George,

 |        Loudoun, Prince William, Stafford, Alexandria, Falls Church

 |
_____


              ** Fringe Benefits Required For All Occupations Included In

                 This Wage Determination Follow The Occupational Listing **



    OCCUPATION CODE AND TITLE                    MINIMUM HOURLY WAGE
```



| | |
|---|---|
| 29362 Paralegal/Legal Assistant II | $ 16.86 |
| 29363 Paralegal/Legal Assistant III | $ 20.62 |
| 29364 Paralegal/Legal Assistant IV | $ 24.95 |
| 29390 Photooptics Technician | $ 18.48 |
| 29480 Technical Writer | $ 16.72 |
| 29491 Unexploded Ordnance Technician I | $ 15.55 |
| 29492 Unexploded Ordnance Technician II | $ 18.82 |
| 29493 Unexploded Ordnance Technician III | $ 22.55 |
| 29494 Unexploded Safety Escort | $ 15.55 |
| 29495 Unexploded Sweep Personnel | $ 15.55 |
| 29620 Weather Observer, Senior 3/ | $ 17.02 |
| 29621 Weather Observer, Combined Upper Air & Surface Programs 3/ | $ 14.62 |
| 29622 Weather Observer, Upper Air 3/ | $ 14.62 |

Transportation/Mobile Equipment Operation Occups:

| | |
|---|---|
| 31030 Bus Driver | $ 13.24 |
| 31260 Parking and Lot Attendant | $ 7.50 |
| 31290 Shuttle Bus Driver | $ 10.42 |
| 31300 Taxi Driver | $ 9.67 |
| 31361 Truckdriver, Light Truck | $ 10.42 |
| 31362 Truckdriver, Medium Truck | $ 13.24 |
| 31363 Truckdriver, Heavy Truck | $ 15.54 |
| 31364 Truckdriver, Tractor-Trailer | $ 16.93 |

Miscellaneous Occupations:

| | |
|---|---|
| 99020 Animal Caretaker | $ 8.61 |
| 99030 Cashier | $ 6.51 |
| 99041 Carnival Equipment Operator | $ 9.33 |
| 99042 Carnival Equipment Repairer | $ 10.06 |
| 99043 Carnival Worker | $ 7.23 |
| 99050 Desk Clerk | $ 9.45 |
| 99095 Embalmer | $ 18.40 |
| 99300 Lifeguard | $ 6.89 |
| 99310 Mortician | $ 18.40 |

```
99350 Park Attendant (Aide)                                        $  8.48

99400 Photofinishing Worker (Photo Lab Tech., Darkroom Tech)       $  7.58

99500 Recreation Specialist                                        $ 15.40

99510 Recycling Worker                                             $  9.33

99610 Sales Clerk                                                  $  6.75

99620 School Crossing Guard (Crosswalk Attendant)                  $  7.23

99630 Sports Official                                              $  6.75

99658 Survey Party Chief (Chief of Party)                          $ 10.93

99659 Surveying Technician (Instr. Person/Surveyor Asst./Instr.)   $  9.42

99660 Surveying Aide                                               $  6.16

99690 Swimming Pool Operator                                       $ 11.47

99720 Vending Machine Attendant                                    $  9.33

99730 Vending Machine Repairer                                     $ 11.47

99740 Vending Machine Repairer Helper                              $  9.33
```

WAGE DETERMINATION NO.:94-2103 (Rev.18)    ISSUE DATE:06/01/1999    Page 7

```
          ** Fringe Benefits Required For All Occupations Included In

                       This Wage Determination **
```



HEALTH & WELFARE:  $1.63 an hour or $65.20 a week or $282.53 a month.

```
    VACATION:  Two weeks paid vacation after 1 year of service with a

    contractor or successor; 3 weeks after 5 years; 4 weeks after 15 years.

    Length of service includes the whole span of continuous service with

    the present contractor or successor, wherever employed, and with the

    predecessor contractor in the performance of similar work at the same

    Federal facility. (Reg. 4.173)
```

# Exhibit F

12/21/00 Domash  New File

# LARRY DOMASH

KENTON PLACE
305 E. 63RD STREET
NEW YORK, NEW YORK 10021
HOME (212) 371 - 1778
OFFICE (212) 940-9610

**Strictly Personal & Confidential**
Mr. Brett Mace

Dear Brett:

This letter authorizes you to have power of attorney in all of my legal matters.

Sincerely,

Larry A. Domash

SWORN TO BEFORE ME
THIS 21 DAY OF DECEMBER 2000

JOHN J. SWEENEY
Notary Public, State of New York
No. 4514809
Qualified in Kings County
Commission Expires June 20, 2004

EXHIBIT

F

Graham 1089