UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PETER M. MACE ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | No. 1:05CV02244 (HHK-DAR) |
| ) | <u>NEXT EVENT:</u> |
| LARRY A. DOMASH ) | Status Conference – 2/29/08 |
| ) | |
| Defendant ) | |

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT LARRY DOMASH'S MOTION TO DISMISS FOR LACK OF <u>SUBJECT MATTER JURISDICTION PURSUANT TO FED. R. CIV. P. 12(b)(1)</u>**

Plaintiff Peter Mace's Opposition fails because the alleged damages that he argues exceed the $75,000 jurisdictional threshold are not properly part of his causes of action for breach of contract or quantum meruit. Plaintiff raises <u>entirely new</u> claims and theories of damages, which he has never pled, and which were not contained in any of his <u>three</u> damages disclosures made pursuant to Rule 26. This marks the second time Plaintiff has employed this tactic – presumably for purposes of belatedly reaching the jurisdictional minimum – after the close of the discovery period over seven months ago. Magistrate Judge Robinson correctly rejected Plaintiff's first such attempt, striking Plaintiff's prior tardy damages claims as untimely and prejudicial to Defendant.

In short, faced for the first time with (his own) evidence that the amount of his alleged damages – even when viewed in the light most favorable to him – is far less than

$75,000, Plaintiff now attempts to recast completely the claims brought in this lawsuit over two years ago. When compared to Plaintiff's pleadings, prior testimony and discovery responses, it becomes clear that Plaintiff's current position wholly depends on a disingenuous description of the alleged oral arrangement between the parties. The Court should not countenance such an approach, which prejudices Defendant because, without notice of these novel claims and theories, Defendant was not in a position to discover information about them and test their veracity during the long-since lapsed discovery period. Moreover, it is clear that such claims are not based in fact, but rather on inherently inconsistent conclusions alleged solely to satisfy the amount in controversy. Accordingly, based on the record before the Court, Plaintiff's case should be dismissed for lack of subject matter jurisdiction.

### 1.  Breach of Contract Claim

Throughout this litigation, Plaintiff has claimed that he is seeking reimbursement for various expenditures he allegedly made pursuant to an alleged oral contract between the parties. In his testimony and discovery responses, Plaintiff has repeatedly acknowledged that the alleged contract only covered four categories of expenditures: (i) expenditures made on behalf of Plaintiff's putative insurance company ("IFA"); (ii) expenditures made directly on behalf of Defendant; (iii) expenditures made for Plaintiff's reasonable living expenses; and (iv) expenditures made to provide financial support to Plaintiff's cousin. *See* Exhibit A to Defendant's Memorandum of Points and Authorities in Support of Motion to Dismiss ("Principal Memorandum").

Accordingly, on November 2, 2006, a year after Plaintiff filed suit, Defendant served Plaintiff with an interrogatory asking for information (*e.g.,* amount and purpose)

regarding each contractual expenditure for which Plaintiff sought reimbursement in this case.  A true and accurate copy of this interrogatory is attached hereto as Exhibit A.  Plaintiff responded that he was unable to provide this information but had hired an accountant to review his records in order to answer this interrogatory.  *See* Exhibit B to Principal Memorandum.  Plaintiff failed to provide this information prior to the discovery deadline.

      Over four months <u>after</u> the close of discovery, Plaintiff finally provided an "answer" to this interrogatory, but, despite the plain language of the request, it did not identify any particular expenditures.  *See* Exhibit E to Principal Memorandum.  Instead, the answer simply relied on a confusing (not to mention inadmissible) report, which was apparently prepared by Plaintiff's accountant – whom Plaintiff has never identified as either a fact or expert witness in this matter.  *See* Exhibit F to Principal Memorandum.  Although Plaintiff's supplemental interrogatory answer and accompanying accountant's report contained no information from which to glean <u>how</u> the figures were calculated, those two documents did at least provide conclusory dollar figures for the amount of expenditures that allegedly were covered by each of the four alleged contractual categories.  *See id.*  As explained in Defendant's Principal Memorandum, this aggregate amount (including any interest that accrued thereon) is far less than the $75,000 jurisdictional threshold.  The report and supplemental interrogatory answer also provided a dollar figure for the items on Plaintiff's credit card statements that were "not accounted for."  *See id.*  Plaintiff acknowledges, at least tacitly, that he has no records – and perhaps more importantly – <u>no memory</u>, of what goods or services these unaccounted-for

purchases covered, nor the purpose behind such expenditures.  *See generally* Exhibit B to Opposition.

Notwithstanding this fundamental defect, Plaintiff nonetheless claims that Defendant owes him reimbursement for all of these unaccounted-for expenditures, and thus his claim is for over $75,000.  *See generally* Opposition.  In support of this position, Plaintiff baldly alleges by way of affidavit that, although he apparently does not remember the circumstances surrounding even one of these unaccounted-for expenditures, he is certain that all of them were covered by alleged contract.  *See* Exhibit B to Opposition.  This argument, made for the first time in his Opposition and obviously asserted solely to defeat Defendant's jurisdictional argument, is unsupportable, and certainly ignores that Plaintiff – not Defendant – has the burden of establishing subject matter jurisdiction.  *See Caesar v. United States*, 258 F.Supp.2d 1, 3 (D.D.C. 2003).  Indeed, it would turn that important burden on its head if Plaintiff were allowed to invoke the limited jurisdiction of this Court merely by asserting, without any corresponding support, such a general and self-serving statement.

To this end, for purposes of the present motion, the Court is not to simply take Plaintiff at his (unsubstantiated) word.  Where, as here, Defendant is mounting a "factual," rather than a "facial" attack on jurisdiction, "no presumption of truthfulness applies to the factual allegations."  *Richards v. Duke University*, 480 F.Supp.2d 222, 233 (D.D.C. 2007) (quoting *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)).

> [W]hen the attack is factual, the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56.  Because the issue in a factual 12(b)(1) motion is the trial court's jurisdiction-its very power to hear the case-there is substantial authority that the trial court is free to weigh the

4

> evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) (quoting *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981) and *Mortensen v. First Fed. Sav. & Loan Ass'n.*, 549 F.2d 884, 891 (3d Cir. 1977)).

Notably, Plaintiff provides no explanation as to how he can even proceed on a contractual damages claim without knowing what he purchased under the alleged contract. Just by way of one example, Plaintiff maintains that the alleged contract only covered reasonable expenditures.[1] Yet if Plaintiff does not know the specific nature of the disputed expenditures, there is no way that he can prove such expenditures were reasonable, regardless of whether or not the expenditures fell under one of the enumerated contractual categories (and it obviously follows that there is no way that Defendant can challenge the reasonableness of the expenditures under these circumstances). Put simply, there is no principled manner in which these unaccounted-for expenditures can be considered in determining the jurisdictional amount at issue, because they cannot properly be considered part of Plaintiff's case.[2]

---

[1] *See, e.g.,* excerpt of Transcript of Deposition of Plaintiff at 48 (attached hereto as Exhibit B) (Q: "Pursuant to this agreement, you say that Mr. Domash agreed to reimburse you for all of your expenditures?" A: "He agreed to reimburse me for reasonable expenditures, for my living expenses to continue to help him to promote IFA and to cover my cousin's expenses.") (emphasis added).

[2] Tellingly, in his Opposition, Plaintiff alleges: "That Plaintiff does not have a credit card statement for the $61,752.39 portion of the charges he made under the agreement does not prevent him from testifying what the charges were." *See* Opposition at 10. Regardless of whether this argument has merit in theory, it nonetheless misses the mark here, because Plaintiff does not testify what the charges were. In spite of the fact that he has the burden of proof, Plaintiff simply concludes that, despite not knowing what the expenditures were for, they must have been made pursuant to the alleged oral contract. *See generally* Exhibit B to Opposition. Again, Plaintiff cannot satisfy his burden under these circumstances.

5

**2.    The Quantum Meruit Claim**

Likely recognizing that his supplemental interrogatory answer and accompanying accountant's report are fatal to his claim of federal jurisdiction, in his Opposition, Plaintiff provides the Court with alternative – and never-before raised – valuations of his quantum meruit claim, based on the alleged value of the services that he allegedly provided to Defendant.  *See* Opposition at 11-12.  In doing so, Plaintiff not only ignores that he has never raised the theories behind these valuations in connection with this lawsuit, but also that such theories are facially inconsistent with his actual quantum meruit claim.  Notably, Magistrate Judge Robinson has already denied Plaintiff's similar attempts to add new damages claims and theories after the discovery deadline.  A true and accurate copy of the transcript of the hearing and Judge Robinson's ruling is attached hereto as Exhibit C.  Specifically, Judge Robinson granted Defendant's motion to strike Plaintiff's second supplemental Rule 26 disclosures (also filed after the discovery period terminated), in which he asserted, for the first time, damages for emotional distress and time spent managing his alleged debt as part of his pre-existing fraud and contract claims.  *See id.*  Plaintiff's Opposition relies on this same (already rejected) tactic.

Plaintiff's Complaint and his subsequent discovery material make clear that his quantum meruit claim is based <u>only</u> on the out-of-pocket expenditures he made (purportedly for the benefit of Defendant), and not on the value of his services, as he claims for the first time in his Opposition. Specifically, Count III of Plaintiff's Complaint, titled "Unjust Enrichment – Quantum Meruit," alleges: "<u>In making expenditures</u> after April, 1999 in support of the development of IFA and D & A and the management of Defendant's personal legal problems, Plaintiff conferred a benefit upon

6

Defendant." Complaint ¶ 23 (emphasis added). "In conferring that benefit, <u>Plaintiff was promised reimbursement by Defendant for the expenditures concerned</u>. Defendant understood that Plaintiff expected <u>reimbursement for the expenditures</u>." Complaint ¶ 25 (emphasis added). "If Defendant were allowed to retain the benefit of <u>Plaintiff's expenditures</u> without reimbursing therefor, Defendant would be unjustly enriched." Complaint ¶ 26 (emphasis added).

The Complaint contains <u>no</u> allegations supporting a quantum meruit claim based on the value of the alleged services provided by Plaintiff; rather, as set forth above, the claim is based entirely on the unjust benefit Defendant would allegedly receive if he were not required to reimburse Plaintiff for his alleged out-of-pocket expenditures, which specifically included Plaintiff's reasonable living expenses. To this end, it is notable (indeed, it is dispositive) that the amount of damages Plaintiff seeks pursuant to his quantum meruit Count in the Complaint corresponds to the exact dollar amount of the <u>expenditures</u> that Plaintiff claims in accordance with his alleged agreement with Defendant. *See* Complaint ¶ 26.

Separate and apart from his Complaint, Plaintiff's <u>three</u> Rule 26 damages disclosures are consistent with the position he has taken throughout this litigation (until he filed the present Opposition), that his quantum meruit claim is based only on the alleged expenditures he made pursuant to his alleged agreement with Defendant. *See* Exhibits A, D & G to Principal Memorandum. In these three disclosures, contrary to Rule 26's requirements, Plaintiff never set forth a damages claim or calculation based on the alleged value of his services to Defendant. As previously recognized by the Magistrate Judge, to permit him to do so now after the close of discovery would be

7

extremely prejudicial to Defendant. *See* Exhibit C at 22-23. Plaintiff should not be allowed to save his jurisdictionally flawed cause of action by raising entirely new claims months after the discovery period has closed and only in response to a meritorious motion to dismiss.

Not surprisingly, because Plaintiff never asserted a claim based on the value of his services, Defendant's discovery requests and questions to Plaintiff at his deposition did not focus on the issue. However, to the extent that Plaintiff's deposition testimony did relate to his alleged services, it confirms that, until now, Plaintiff was not seeking recovery based on the value of those alleged services to Defendant. For example, as support for the notion that Plaintiff has a right to receive compensation in this regard, Plaintiff's Opposition relies heavily on the fact that Defendant granted Plaintiff a power of attorney during the timeframe of the parties' alleged agreement. *See* Opposition at 6-7. Yet, during his deposition, Plaintiff unequivocally testified that he did not expect payment for such services:

> Q: Was there an understanding between the two of you that you would be paid for your role in taking over power of attorney for Mr. Domash?
>
> A: <u>No. Not at all. I never would have accepted money for something like that.</u>

*See* Deposition Transcript of Plaintiff Peter Mace at 271 (attached hereto as Exhibit B).

Additionally, Plaintiff's deposition testimony generally indicates that he was not expecting money from Defendant other than to reimburse him for his expenditures:

> Q: Under the contract, did Mr. Domash have a responsibility to pay you for your help to him other than to reimburse your credit card debt?
>
> A: Well, that was where the money was coming, Mr. Brooks.
>
> Q: Was there any understanding, for instance, that if you came to court [on Defendant's behalf], he just had to give you $200?

8

>    A:    No.
>
>    Q:    And nothing like that?
>
>    Q:    <u>Nothing like that</u>.

*See id.* at 68-69.

Moreover, in response to a question as to whether Defendant's divorce attorney believed that Plaintiff was being paid for the assistance he allegedly provided Defendant, Plaintiff's testimony reveals that he was not expecting payment for such services, but instead, consistent with his expenditure-reimbursement theory of quantum meruit, was doing so because he believed it would assist his goal of launching IFA, his putative insurance company:

>    Q:    As far as you know, did [Defendant's divorce attorney] have an understanding that you were being paid for your services?
>
>    A:    Being paid for my services, I mean – I wasn't an employee of Larry's.  I was Larry's – he would describe it as kind of coordinator, switchboard between all these different parties.  I wasn't paid for it.  My goal was to try to get IFA up and running.

*See id.* at 212-213.

In a classic straw-man approach, Plaintiff (erroneously) asserts that Defendant's argument rests on a position that quantum meruit damages <u>never</u> can be considered in determining whether the jurisdictional threshold has been met. *See* Opposition at 2.  This completely mischaracterizes Defendant's true position; indeed, Defendant takes no position as to whether Plaintiff could rely on a "value of services" calculation of damages had he in fact pled or set forth such a calculation in his Rule 26 disclosures as part of his case.  Defendant's argument, consistent with the Magistrate Judge's prior ruling in this case, is simply that Plaintiff cannot now rely on damages from a quantum meruit claim other than one based on his out-of-pocket expenditures, because (i) he never raised such a

9

claim, and (ii) such a claim is inconsistent with his prior pleadings and Rule 26 disclosures.

As recognized by the Magistrate Judge, the prejudice to Defendant in allowing Plaintiff to proceed on these newly raised claims is real. Defendant's discovery requests and questions posed to Plaintiff at his deposition would have been extremely different had Plaintiff timely notified Defendant that he was proceeding on a "value of services" claim. For example, among other things, Defendant certainly would have sought all records demonstrating the amount of time Plaintiff actually spent on Defendant's behalf; and through deposition testimony, Defendant would have sought comprehensive information about the nature of, and purpose behind, all such work (allegedly spanning more than three and one-half years) as well as information regarding Plaintiff's computation of such damages – which very likely would have been the subject of <u>expert</u> opinion. As such, Defendant will either be permanently deprived of information necessary to mount his defense, or will be forced to incur significant additional costs and fees associated with the re-opening of discovery as to Plaintiff's novel theories and claims.

Notably, as was the case with his belated emotional distress claim, Plaintiff offers no justification for raising these new damages claims more than seven months after the close of discovery; more than two years after filing suit; and five years after he acknowledges he was on notice of his causes of action. Accordingly, Plaintiff's jurisdictional claim should be analyzed as pled and as it stood at the close of discovery

based on his testimony and various written discovery responses.  Under such a proper analysis, this Court lacks subject matter jurisdiction.[3]

### 3. Conclusion

For the foregoing reasons and those contained in Defendant's Principal Memorandum, Plaintiff cannot satisfy the jurisdictional threshold for diversity purposes. Accordingly, this Court should dismiss this action for lack of subject matter jurisdiction.

                         Respectfully submitted,

                         /s/ Adam Augustine Carter_____
                         Adam Augustine Carter
                         DC Bar # 437381
                         888 Seventeenth Street, N.W., Suite 900
                         Washington, D.C.  20006-3307
                         Tel: 202-261-2803
                         Fax: 202-261-2835
                         acarter@acarterlaw.com


                         /s/ Douglas S. Brooks_____
                         Douglas S. Brooks
                         *Pro Hac Vice*
                         Kelly, Libby & Hoopes, P.C.
                         175 Federal Street
                         Boston, MA 02110
                         Tel: 617-338-9300
                         Fax: 617-338-9911
                         dbrooks@klhboston.com

Dated:  December 5, 2007

---

[3] Plaintiff's bald claims for the amount of damages he would be entitled to based on "wages foregone" or the "hourly value of his work" are themselves highly suspect (in addition to the fact that he never raised them until many months after the close of discovery).  Tellingly, Plaintiff relies on *IBF Corp. v. Alpern*, 487 A.2d 593, 597-98 (D.C. App. 1985) for the proposition that "[o]n quantum meruit claims, courts allow evidence of several different valuation methods to determine the reasonable value of the services provided."  Opposition at 12.  *IBF Corp.*, however, did not involve a claim for quantum meruit, and thus this case, erroneously cited by Plaintiff, is inapposite here.

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that a true and accurate copy of the foregoing was delivered via the Court's electronic filing system to the following counsel for Plaintiff Peter M. Mace, this 5th day of December, 2007.

Michael J. Trevelline, Esq.
1823 Jefferson Place, NW
Washington, D.C. 20036-2504
mjt@mjtlegal.com

                                            /s/ Douglas S. Brooks_____
                                            Douglas S. Brooks