UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PETER M. MACE,<br><br>        Plaintiff,<br><br>        v.<br><br>LARRY A. DOMASH,<br><br>        Defendant. | Civil Action 05-02244 (HHK) |

**MEMORANDUM OPINION AND ORDER**

Invoking this court's diversity jurisdiction, Peter Mace brings this action against Larry Domash alleging fraud and unjust enrichment arising out of Domash's alleged breach of an oral contract. Before the court is Domash's motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) [#36]. Upon consideration of the motion, the opposition thereto, and the record of the case, the court concludes that Domash's motion must be denied.

**I. FACTUAL BACKGROUND**

Mace asserts that he and Domash entered into an oral contract pursuant to which Mace worked full time for Domash assisting Domash with his divorce litigation, providing emotional support, and attempting to start up an insurance company. According to Mace, Domash promised to reimburse him for three categories of expenses: (1) expenses made on behalf of Domash; (2) expenses incurred while Mace supported himself and Mace's niece; and (3) expenses Mace incurred on behalf of the insurance business Mace was trying to start up. Mace contends that Domash was aware that these expenses would be incurred through credit card debt and that Domash also agreed to reimburse Mace for the interest that Mace incurred on these charges. The alleged contract terminated after Domash allegedly told Mace that he would

not reimburse Mace for any of the above-mentioned expenses.

Mace contends that, after entering into the contract, he incurred $277,523.59[1] in three categories of credit card debt and seeks a recovery in this amount. The first category consists of credit card charges totaling $108,209.46, which Mace alleges were made pursuant to the three categories of expenses covered under the alleged contract with Domash. Mace contends that he made $8,727.05 in charges on behalf of Domash; $10,975 in charges on behalf of Mace's niece; and $26,755.02 in charges for Mace's personal expenses. He does not identify any charges made on behalf of the insurance start-up. He incurred an additional $61,752.39 in charges but, because of missing credit card statements, he is unable to specifically identify the charges. Nonetheless, Mace contends that all of the $108,209.46, including the $61,752.39, are attributable to one of the three categories of expenses covered under the alleged contract. The second category of credit card debt consists of finance and/or interest charges (hereinafter "interest") that Mace incurred *after* the termination of the alleged contract. This interest totals $116,809.44. The third category of credit card debt consists of interest charges that Mace incurred *during* the alleged contract. These interest charges total $52,504.69.[2]

---

[1] In his Second Supplemental Response to Defendant's First Set of Interrogatories, Mace asserts that he incurred $277,438.59 in credit card debt. However, it appears that the actual total is $277,523.59. Regardless of which figure is correct, the difference is insignificant.

[2] Mace also has $37,069.93 in credit card charges for which he does not seek reimbursement. He incurred these charges prior to entering into the alleged contract.

## II. ANALYSIS

Domash moves to dismiss this diversity action pursuant to Fed. R. Civ. P 12(b)(1), asserting that this court does not have subject matter jurisdiction because this action is not one wherein the amount in controversy exceeds the sum or value of $75,000.[3] Domash's position cannot be sustained.

### A. Legal Standards

Federal courts are courts of limited jurisdiction. Pursuant to 28 U.S.C. § 1332(a), federal courts have diversity jurisdiction only if the parties are diverse and the amount in controversy exceeds $75,000.[4] The amount in controversy is determined as of the time the action is commenced. *King v. Morton*, 520 F.3d 1140, 1145 (D.C. Cir. 1965). The test for determining whether the amount in controversy meets the statutory threshold is as follows:

> [U]nless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or ousts jurisdiction. . . . But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed.

*St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 288 (1938).[5]

---

[3] Diversity jurisdiction exists only "where the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs." 28 U.S.C. § 1332(a).

[4] Domash does not contest the fact that the parties here are diverse.

[5] In *Srour v. Barnes*, 670 F. Supp. 18, 20 (D.D.C. 1987), the court noted that "[c]ourts have construed this rule as a two pronged test." That is, a court must first look to determine whether the plaintiff's claim is made in good faith. *Id.* Even if the claim is made in good faith,

3

The plaintiff bears the burden of establishing subject-matter jurisdiction. *Watkins v. Pepco Energy Servs., Inc.*, 2005 WL 1903329, *2 (D.D.C. July 20, 2005) ("In this Circuit, the plaintiff bears the burden of establishing the amount in controversy once it has been put in question."). When the defendant challenges the jurisdictional amount, plaintiff must come forward with some facts in support of her assertion that the jurisdictional amount has been met. *James v. Lusby*, 499 F.2d 488, 493 (D.C. Cir. 1974) ("where the allegations as to the amount in controversy are challenged by the defendant in an appropriate manner the pleading must support them by competent proof"); *Gomez v. Wilson*, 477 F.2d 411, 420 (D.C. Cir. 1973) ("when, as here, a formal allegation of jurisdictional amount . . . is controverted, a factual issue emerges and the burden of establishing jurisdictional amount is thrust upon the claimant").

Interest must be excluded when determining the amount in controversy. 28 U.S.C. § 1332(b) (the amount in controversy must be determined "exclusive of interest and costs"). Under this rule, interest that accrues solely due to a party's delay in paying the principal does not count towards the amount in controversy. *Principal Mut. Life Ins. Co. v. Juntunen*, 838 F.2d 942, 943 (7th Cir. 1988); *Regan v. Marshall*, 309 F.2d 677, 678 (1st Cir. 1962). However, when interest is an "essential ingredient of the principal claim," then interest is counted towards the amount in controversy. *Grunblatt v. UnumProvident Corp.*, 270 F. Supp. 2d 347, 349 (E.D.N.Y. 2003) (citing *Brown v. Webster*, 156 U.S. 328, 330 (1895)); *see also Transaero, Inc. v. LaFuerza Area Boliviana*, 24 F.3d 457, 461 (2d Cir. 1994) ("[W]here . . . interest is owed as part of an underlying contractual obligation, unpaid interest becomes part of the principal for

---

the claim must be dismissed if the court finds to a "legal certainty" that the claim is really for less than the jurisdictional amount." *Id.*

jurisdictional purposes.").

    **B.    The Parties' Arguments**

Mace asserts that the amount of damages involved here exceeds the jurisdictional threshold of $75,000 because he incurred $277,523.59 in debt as a result of the alleged contract with Domash. Domash does not contest Mace's assertion that he incurred $277,523.59 in debt, but Domash asserts that the court cannot count all of this amount towards the amount in controversy. A resolution of the jurisdictional dispute requires the court to analyze the three categories of credit card debt and to determine whether they count towards the amount in controversy.

    **1. $108,209.46 in Credit Card Charges**

Over the life of the alleged contract, Mace made $108,209.46 in credit card charges and asserts that all of these charges must be counted towards the amount in controversy. Domash does not contest Mace's assertion that Mace made $108,209.46 in charges. Domash asserts, however, that the court must exclude $61,752.39 of these charges from the amount in controversy because Mace cannot specifically attribute them to any of the three categories of expenses covered under the alleged contract.[6]

Domash misunderstands the test for determining whether this court has subject matter jurisdiction. Whether the amount in controversy includes the $61,752.39 in charges is a separate question from whether Mace can prove that the $61,752.39 in charges were made

---

[6] Mace attests that while he "cannot break down the [$61,752.39] charges into the categories of charges covered by the agreement," he "recall[s] that all of the . . . charges that I made were covered by the agreement with Mr. Domash." Pl.'s Ex. B 3.

pursuant to the alleged contract. When determining whether to dismiss for lack of subject matter jurisdiction, the court is only concerned with the first question – whether the amount in controversy includes the $61,752.39 in charges. Mace has the burden of demonstrating that the amount in controversy includes these charges. *Watkins*, 2005 WL 1903329, at *2 (stating that plaintiff has the burden of demonstrating the amount in controversy meets the jurisdictional threshold).

Mace has met this burden. Mace asserts that Domash agreed to reimburse Mace for three categories of credit card charges. Mace has provided an accountant's report that demonstrates that Mace made $108,752.39 in credit card charges, all of which Mace claims as damages. This amount includes the $61,752.39 that Mace cannot identify with specificity. Thus, it is clear that the $61,752.39 in charges count towards the amount in controversy.

It may well be that Mace will not be able to prove that the $61,752.39 in charges were made pursuant to the alleged contract. But a plaintiff's inability to recover must not be conflated with a court's jurisdiction over a matter. "[T]he inability of plaintiff to recover an amount adequate to give the court jurisdiction does not . . . oust . . . jurisdiction." *St. Paul Mercury Indem. Co.,* 303 U.S. at 288.[7] Accordingly, the court will count all of Mace's

---

[7] In *Watson v. Blankinship*, 20 F.3d 383, 387 (10th Cir. 1994), the Tenth Circuit noted that there is a "distinction . . . between subsequent events that change the amount in controversy and subsequent revelations that, in fact, the required amount was or was not in controversy at the commencement of the action." Here, Mace's inability to specifically identify the credit card charges is a subsequent event that, while it may limit his ability to *recover* all of his charges, does not change the fact that over $75,000 was in controversy at the time the action was commenced. *See also Gen. Elec. Capitol Corp. v. Limousines Unlimited LLC*, 2005 WL 3276279, *1 (D.D.C. Aug. 2, 2005) ("Subsequent events that reduce the amount in controversy do not divest the court of its jurisdiction").

$108,752.39 in credit card charges towards the amount in controversy.

### 2. $116,809.44 in Interest Charges Accrued After the Termination of the Contract

Mace asserts that the court should count the $116,809.44 in interest charges that accrued after the termination of the contract towards the amount in controversy. Domash asserts that the court should not count this amount towards the amount in controversy because 28 U.S.C. § 1332(b) mandates that interest must be excluded when determining the amount in controversy.

Domash is correct. Mace asserts that he accrued the interest charges to "maintain[] [his] debt post [contractual period]." Def.'s Ex. A 2. Because he accrued the interest charges to maintain his debt after the termination of the alleged contract, they cannot be counted towards the amount in controversy pursuant to 28 U.S.C. § 1332(b). Charges that accrue solely due to a party's delay in paying the amount owed on his/her credit card bills do not count towards the amount in controversy. *Principal Mut. Life Ins. Co.*, 838 F.2d at 943; *Regan*, 309 F.2d at 678. Accordingly, the court will not count the $116,809.44 in interest charges towards the amount in controversy.

### 3. $52,504.69 in Interest Charges Accrued During the Term of the Contract

Mace incurred $52,504.69 in interest charges over the term of the alleged contract. Domash asserts that there is "no definitive answer" as to whether all or a portion of these charges should count towards the amount in controversy. Domash contends that the court might count all or a portion of these charges towards the amount in controversy because the alleged contract required that Domash compensate Mace for all interest charges incurred during the term of the contract. *Grunblatt*, 270 F. Supp. 2d at 349 (court should count interest towards

the amount in controversy when it is an "essential ingredient of the principal claim"). Domash argues that the court should not count these charges towards the amount in controversy because Mace incurred them solely due to his delay in paying his credit card debt. *Regan*, 309 F.2d at 678 (charges due to delay in paying debt do not count towards the amount in controversy).

Contrary to Domash's attempt to complicate the issue, there is a "definitive answer" as to whether the court must count all or a portion of the $52,504.69 in interest charges towards the amount in controversy. "[W]here . . . interest is owed as part of an underlying contractual obligation, unpaid interest becomes part of the principal for jurisdictional purposes." *Transaero, Inc.,* 24 F.3d at 461. The alleged contract required Domash to reimburse Mace for interest charges incurred during the life of the contract. Thus, because payment of interest charges were integral components of the underlying contract, all or a portion of the $52,504.69 in interest charges must be counted towards the amount in controversy.[8]

Not *all* of the $52,504.69 in interest charges should be counted towards the amount in controversy, however. Before entering into the alleged contract, Mace held $37,069.93 in credit card debt. Mace does not seek reimbursement for this $37,069.93. A portion of the $52,504.69 in interest charges is attributable to the $37,069.93 of prior debt, and thus cannot be counted towards the amount in controversy.

The court cannot calculate the precise amount of interest that should be counted towards the amount in controversy because Mace did not provide a breakdown of how much interest is attributable to the pre-existing credit card debt. The court need not determine how much

---

[8] In contrast, the $116,809.44 in interest does not count towards the amount in controversy because this interest accrued *after* the termination of the alleged contract.

interest is attributable to the pre-existing debt, however, because the court has already determined that the $108,209.78 in credit card charges count towards the amount in controversy. This puts the amount in controversy well above the $75,000 jurisdictional threshold.[9]

### III.  CONCLUSION

For the foregoing reasons, it is this 8th day of May 2008, hereby

**ORDERED** that Domash's motion to dismiss for lack of subject matter jurisdiction [#36] is **DENIED.**

                                                               Henry H. Kennedy, Jr.
                                                               United States District Judge

---

[9] Mace also asserts that the amount of damages that he claims pursuant to quantum meruit satisfies the jurisdictional threshold. The court does not reach this issue.