**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

Peter M. Mace )
)
Plaintiff, )
)
vs. )
)
Larry A. Domash )
)
Defendant )
)

Case No. 1: 05-02244 (HHK  DAR)
Judge Henry H. Kennedy, Jr.

# **Index of Exhibits**

<u>**Tab**</u>  <u>**Description**</u>

A.  Statement of Facts in Dispute.........................................................................

B.  Peter Mace Declaration..................................................................................

C.  24 November 2002 Domash Letter .................................................................

D.  26 December 2002 Mace Letter ......................................................................

E.  Graham Deposition Transcript Extract.........................................................

F.  Graham Declaration .......................................................................................

G.  Wright Declaration ........................................................................................

H.  Killion Declaration........................................................................................

I.  Mace Deposition transcript Extract...............................................................

J.  18 April 2002 Mace Letter ............................................................................

K.  4 June Mace Letter .........................................................................................

L.  Koenig Declaration ........................................................................................

M.  Unreported Decision of Union Labor Life Ins. Co. v. The
    Sheet Metal Workers National Health Plan ............................................

# Exhibit A[1]

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

Peter M. Mace

 Plaintiffs,

  vs.

Larry A. Domash

 Defendant

)
)
)
)
)
)
)
)
)
)

Case No. 1: 05-02244 (HHK)
Judge Henry H. Kennedy, Jr.

In support of Plaintiff's opposition to Defendant's motion for summary judgment, Plaintiff submits that the following material facts are in dispute:

### Plaintiff's Statement of Material Facts in Dispute

1. Defendant claims that one cannot determine when payment was to be made under the agreement and how much was to be paid.

DOMASH DECLARATION at 2 and 3, included as EXHIBIT D to Defendant Larry Domash's Motion For Summary Judgment (Filed July18, 2008).

*See also below*, Defendant's "Statement Of Material Facts As To Which There Is No Genuine Issue" (Hereinafter referred to as "Defendant's Statement of Material Facts") at ¶¶ 2, 3, 4, 5,6,7,8.

Plaintiff claims Defendant was to pay the entire amount of the Defendant's credit card debt including the interest incurred on those credit cards when the dust settled on the Defendant's divorce litigation thus allowing the stabilization of Defendant's personal finances and the IFA entity was up and running.

*See*, EXHIBIT B herewith, MACE DECLARATION at 3.

*See also*, Deposition of Peter M. Mace, Wed., Feb. 21, 2007 at 44:1 to 46:2 (Washington, D.C.) (hereinafter referred to as "Mace Tr. I") included as part of EXHIBIT C to Defendant Larry Domash's Motion For Summary Judgment (Filed July18, 2008); Mace Tr. I 39:18 to 40:21, Id.; Plaintiff's Response to Defendant's First Set of Interrogatories at Answers 1 and 4, included as part of EXHIBIT B to Defendant Larry Domash's Motion For Summary Judgment (Filed July18, 2008).

2. Defendant claims one cannot determine when the agreement was to terminate. *See below*, Defendant's Statement of Material Facts at ¶¶ 9, 10, 11, 12.

Plaintiff his agreement with the Defendant was to terminate when Defendant's divorce litigation settled down or the IFA entity was launched.

*See also*, Plaintiff's First Supplemental Response to Defendant's First Set of Interrogatories at Answer 5, included as EXHIBIT H to <u>Defendant Larry Domash's Motion For Summary Judgment</u> (Filed July18, 2008).

*See also above*, Plaintiff's Statement of Material Facts in Dispute at 1.

3. Defendant claims one cannot determine how much money he owes. *See below*, Defendant's Statement of Material Facts at ¶¶ 13, 14, 35.

Plaintiff claims Defendant owes the entire outstanding credit card debt minus what Plaintiff owed on said credit cards at the commencement of the agreement between Plaintiff and Defendant in April 1999.

*See*, Plaintiff's Second Supplemental Response to Defendant's First Set of Interrogatories at Answer 1, included as EXHIBIT P to <u>Defendant Larry Domash's Motion For Summary Judgment</u> (Filed July18, 2008).

See also, Plaintiff's Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1) (Filed Nov. 17, 2006) at C; <u>Plaintiff's Memorandum of Points & Authorities in Opposition to Defendant Larry Domash's Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1) Disclosures</u> and all exhibits thereto (relating to jurisdictional amount in controversy) Filed Nov. 23, 2007, Motion Denied May 8, 2008.

4. Defendant claims one cannot determine what rate of interest governs the debt.

DOMASH DECLARATION at 9, included as EXHIBIT D to <u>Defendant Larry Domash's Motion For Summary Judgment</u> (Filed July18, 2008).

*See below*, Defendant's Statement of Material Facts at ¶¶ 15, 16, 17, 18.

Plaintiff claims it is governed by the interest rates that the various credit card companies are charging.

*See above* Plaintiff's Statement of Material Facts in Dispute at 1 and 3.

5. Defendant claims one cannot determine the manner of Plaintiff's performance. *See below*, Defendant's Statement of Material Facts at ¶¶ 31, 32, 33.

Plaintiff claims his performance consists of the work he performed from April 1999 through November 2002.

Exh. B, Mace Declaration at ¶¶ 3-4; Plaintiff's Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1) (Filed Nov. 17, 2006) at C, included as part of EXHIBIT A to <u>Defendant Larry Domash's Motion For Summary Judgment</u> (Filed July18, 2008); Plaintiff's Response to Defendant's First Set of Interrogatories at Answer 6, , included as part of EXHIBIT B to <u>Defendant Larry Domash's Motion For Summary Judgment</u> (Filed July18, 2008).

6. Defendant claims he had no agreement with Plaintiff, he never represented to Plaintiff that there was an agreement, and he never did anything that would lead Plaintiff to believe there was an agreement. *See below*, Defendant's Statement of Material Facts at ¶¶ 54, 66.

Plaintiff claims there was an agreement and that never before 24 November 2002 did Defendant deny the existence of the agreement.

*See*, EXHIBIT B, MACE DECLARATION at ¶¶ 5-13.

7. Defendant claims that Plaintiff realized throughout 2002 that Defendant was defrauding Plaintiff. *See below*, Defendant's Statement of Material Facts at ¶¶ 44, 45, 46, 47, 49, 50, 51, 57.

Plaintiff claims that he had suspicions in 2002 before receipt of the 24 November letter, but that Defendant never refused to pay and actually promised to pay several times in 2002 especially after financing of IFA appeared imminent.

Exh. B, MACE DECLARATION at ¶¶ 5-13; **Exh. F, Graham Declaration**; Exh. G, .Wright Declaration; Exh. H, Killion Declaration; **Exh. L Koenig Declaration and accompanying 12 August 2002 letter of Domash**; Exh. M to Summary Judgment Motion, 10 July 2002 letter where Plaintiff discusses Defendant's statement on the night before to Dr. Graham that Defendant would pay.

8. Defendant claims he never gave Plaintiff

Plaintiff claims that Defendant left

any reason to believe Defendant would honor the agreement Plaintiff alleges existed. *See below*, Defendant's Statement of Material Facts at ¶ 66.

several voice mail messages with him in 2002 confirming the agreement and that in the fall of 2002 Defendant told Dr. Graham that he would abide by the agreement in late 2002.

EXHIBIT B herewith, MACE DECLARATION at ¶ 7; EXHIBIT F herewith, GRAHAM DECLARATION at ¶2 & 5; EXHIBIT G, WRIGHT DECLARATION at ¶ 2; EXHIBIT H herewith, KILLION DECLARATION at ¶ 2; Exh. L, Koenig Declaration and the attached 12 August 2002 letter.

9. Defendant claims that Plaintiff never conferred a benefit on Plaintiff including by having Plaintiff act as his power of attorney.

DOMASH DECLARATION at 4, 5, 6 included as EXHIBIT D to Defendant Larry Domash's Motion For Summary Judgment (Filed July18, 2008).

*See also below*, Defendant's Statement of Material Facts at ¶¶ 67, 68, 69.

Plaintiff claims that he acted as Defendant's power of attorney through 24 November 2002. Plaintiff claims that he further conferred a benefit by working to establish IFA through 24 November 2002 with the intention of granting to Defendant the contract to manage IFA's investments.

EXHIBIT B, MACE DECLARATION at ¶ 4; Exh. L, Koenig Declaration and attached letters.

10. Defendant claims he never had an agreement with Plaintiff, but offers no explanation why he never communicated to Plaintiff that he was denying the existence of an agreement until 24 November 2002. 73, 74, 75

Plaintiff claims that throughout 2002 he kept Defendant informed of several viable prospects for financing of IFA, resulting in Defendant not denying the agreement until after Defendant thought that financing would not occur.

Exh. B, MACE DECLARATION at ¶¶ 5-13; **Exh. F, Graham Declaration**; Exh. G, Wright Declaration; Exh. H, Killion Declaration; **Exh. L Koenig Declaration and accompanying 12 August 2002 letter of Domash**; Exh. M to Summary Judgment Motion, 10 July 2002 letter where Plaintiff discusses Defendant's statement on the night before to Dr. Graham that Defendant would pay.

*-4-*

## Plaintiff's Opposition to Defendant's
## "Statement of Material Facts As To Which There Is No Genuine Issues"

| DEFENDANT's STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE | PLAINTIFF's OPPOSITION |
|---|---|
| 1. Plaintiff Peter Mace describes the lack of specific provisions in the alleged contract as follows: "This was [a] conversation between two men who Larry had described to me as a friend and a brother, you know. There was nothing like that." Deposition Transcript of Peter Mace ("Mace Tr.") at 55:11-14 (copies of the relevant excerpts of Mace's deposition transcript are attached as Exhibit C to the Memorandum of Points and Authorities in Support of Defendant Larry Domash's Motion for Summary Judgment ("Memorandum")). | Contra:<br>[By Mr. Brooks, Attorney for Defendant Domash]<br>Q Anything else in that discussion between you and Mr. Domash in April 1999?<br><br>[By Plaintiff Mr. Mace]:<br>A I asked him if he wanted it memorialized, if he wanted, you know, written down or if he wanted me to follow some reporting requirement to him with the expenses. And he was very cavalier about that whole issue and blew it off. And said that he had the same arrangement with George Graham, and that he owed George Graham $50,000. But he was quite confident that without question he'd have no problem in paying this.<br><br>Mace Tr.I at 41:13-22 to 42:1 included as part of EXHIBIT C to Defendant Larry Domash's Motion For Summary Judgment (Filed July18, 2008).<br><br>Furthermore, Plaintiff disputes Defendant mischaracterization of Mr. Mace's deposition testimony as "describing the lack of specific provisions" (emphasis added). Mr. Mace's statement related only to a late payment penalty provision, i.e.:<br><br>[By Mr. Brooks, Attorney for Defendant Domash]<br>Q. What kind of penalties did the contract call for if Mr. Domash was late with a payment?<br>[By Plaintiff Mr. Mace]:<br>A. Absolutely none. This was conversation between two men who Larry had described to me as a friend and a brother, you know. There was nothing like that.<br><br>Mace Tr. I at 55:9-14 included as part of EXHIBIT C to Defendant Larry Domash's Motion For Summary Judgment (Filed July18, 2008); Exh. B, Mace Declaration at ¶¶ 2-4. |

| DEFENDANT's STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE | PLAINTIFF's OPPOSITION |
|---|---|
| 2. The parties did not reach any agreement on any kind of payment schedule. *Id.* at 54:16-18. | *See above* Plaintiff's Statement of Material Facts in Dispute at 1. |
| 3. The parties did not reach any agreement on a specific date by which Domash had to make any payment. *Id.* at 89:16-17. | *See above* Plaintiff's Statement of Material Facts in Dispute at 1. |
| 4. At the time they entered into the alleged oral contract, the parties did not know when Domash's obligation to reimburse Mace would occur. *Id.* at 45:17-21. | *See above* Plaintiff's Statement of Material Facts in Dispute at 1. |
| 5. When asked for an estimate on how long it would take the above to occur as of the time the parties entered into the alleged oral contract, Mace testified, "if you want a time line, I don't know, two years, two and a half years, three years." *Id.* at 88:8-9. | *See above* Plaintiff's Statement of Material Facts in Dispute at 1. |
| 6. The parties did not reach an agreement on a specific triggering event that required Domash to make payment to Mace. *Id.* at 90:7-13. | *See above* Plaintiff's Statement of Material Facts in Dispute at 1. |
| 7. The parties did not reach any agreement with respect to how often payments were due under the alleged contract. *Id.* at 55:6-8. | *See above* Plaintiff's Statement of Material Facts in Dispute at 1. |
| 8. The parties did not reach any agreement on an outstanding dollar amount, which would trigger Mace's right to demand payment. *Id.* at 56:2-5. | *See above* Plaintiff's Statement of Material Facts in Dispute at 1. |
| 9. The alleged contract contained no termination date. *Id.* at 61:20-21. | *See above* Plaintiff's Statement of Material Facts in Dispute at 2. |

| DEFENDANT's<br>STATEMENT OF MATERIAL FACTS AS TO<br>WHICH THERE IS NO GENUINE ISSUE | PLAINTIFF's<br>OPPOSITION |
|---|---|
| 10. The parties did not reach an agreement on how either side could terminate the alleged contract. *Id.* at 64-6-9. | *See above* Plaintiff's Statement of Material Facts in Dispute at 2. |
| 11. The parties did not reach an agreement as to a notice provision required to terminate the alleged contract. *Id.* at 65-14-17. | *See above* Plaintiff's Statement of Material Facts in Dispute at 2. |
| 12. The parties did not discuss whether any interim payment of the full amount outstanding by Domash would have terminated the alleged contract or whether Mace could have continued to make expenditures. *Id.* at 65:5-9. When questioned about this, Mace replied, "I think we would have had to have seen what the relationship was like at that time." *Id.* at 65:10-11. | *See above* Plaintiff's Statement of Material Facts in Dispute at 2. |
| 13. The parties never reached agreement on the amount of reimbursable expenditures Mace was allowed to incur under the alleged contract. *Id.* at 61:3-7. As Mace put it, "there was never an upper ceiling." | *See generally above* Plaintiff's Statement of Material Facts in Dispute at 3.<br><br>Plaintiff further specifically contests the Defendant's characterization of this material fact. Mr. Mace in his deposition at the cited section testified as follows:<br><br>[By Mr. Brooks, Attorney for Defendant Domash]<br>Q Under the contract, what say did Mr. Domash have with respect to your expenditures?<br>[By Plaintiff Mr. Mace]:<br>A That I keep the expenditures -- that I keep the expenditures within the framework of our agreement.<br>Q What was the frame work of your agreement with respect to expenditures?<br>A That the expenditures would cover my reasonable living expenses, that of my cousin in California, that we would use money to further increase the chance of creating IFA. And that I would be available to him to help him in matters he thought were important to his personal and legal situation.<br>Q Were your reasonable living expenses further defined under the contract?<br>A They were reasonable expenses, that was the |

| DEFENDANT's STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE | PLAINTIFF's OPPOSITION |
|---|---|
| | extent. Q So then they weren't further defined? A I would say that they were reasonable and that's how they were defined. Q Okay. How were your cousin's reasonable living expenses defined? A I was trusted with making those determinations. Q Did Mr. Domash -- under the contract, did Mr. Domash have any veto power with respect to expenditures that you made? A Veto power was never discussed. Q Under the contract, if you went out and bought a jet plane, would he have to reimburse you? A That wouldn't be reasonable. Q So if you bought a jet plane, that would have been outside the parameters of this contract? A Yes. Q What was the limit in terms of dollars that you were allowed to spend under this contract? A It was discussed that I had in excess of $200,000 available in credit cards. There was never an upper ceiling. Q When you say "it was discussed," you mean you told Mr. Domash I have $200,000 in credit? A It was actually more than that, but yes. Mace Tr.I at 59:12 to 61:10 included as part of EXHIBIT C to Defendant Larry Domash's Motion For Summary Judgment (Filed July18, 2008). |
| 14. The parties never reached agreement on a monthly spending limit under the alleged contract. *Id.* at 61:11-13. | *See above* Plaintiff's Statement of Material Facts in Dispute at 3. *See also* immediately above at 13. |
| 15. The parties never reached agreement on any other limits to Mace's spending authority under the alleged contract. *Id.* at 61:14-17. | *See above* Plaintiff's Statement of Material Facts in Dispute at 4. *See also* immediately above at 13. |
| 16. The alleged contract had no terms regarding interest, apart from the interest that accrued on Mace's credit cards. *Id.* at 57:1-14. | *See above* Plaintiff's Statement of Material Facts in Dispute at 4. |

| DEFENDANT's STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE | PLAINTIFF's OPPOSITION |
|---|---|
| 17. The credit cards that Mace used throughout the life of the alleged contract contained different and varying interest rates. *Id.* 340:9-13. | *See above* Plaintiff's Statement of Material Facts in Dispute at 4. |
| 18. The parties never discussed limits on the interest rates of the credit cards that Mace was permitted to use. *Id.* at 70:2-11. | *See above* Plaintiff's Statement of Material Facts in Dispute at 4. |
| 19. The parties never discussed Mace's minimum payment obligations to the credit card companies pursuant to his alleged contract with Domash. *Id.* at 59:6-11. | *See* immediately above at 13. |
| 20. The parties never discussed the number of different credit cards that Mace was permitted to use. *Id.* at 70:12-18. | *See* immediately above at 13. |
| 21. The parties never reached any agreement as to how partial payments would be applied to the various credit cards in use under the alleged contract. *Id.* at 300:3-9. | Defendant never made any partial payments to Plaintiff and does not claim to have made any partial payments so that the fact is irrelevant. |
| 22. During the life of the alleged contract, the only funds Mace used to make partial payments on the various credit cards came from cash advances from other credit cards. *Id.* at 343:1-16. | Admitted. |
| 23. At least some (and perhaps all) of the credit cards charged higher interest for cash advances than they did for direct purchases. *Id.* at 344:8-12. | Admitted, but Defendant was kept apprised of this. Exh. B, Mace Declaration at ¶ 4. |
| 24. The parties never discussed the possibility of Mace using cash advances from certain credit cards to pay off his credit | Yes, they did discuss and Defendant was kept apprised of this. Exh. B, Mace Declaration at ¶ 4. |

| DEFENDANT's STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE | PLAINTIFF's OPPOSITION |
|---|---|
| card debt on other cards or his incurring late fees on the cards. *See* Affidavit of Larry A. Domash ("Domash Aff.") ¶ 9, attached as Exhibit D to the Memorandum. | |
| 25. The alleged contract did not require Domash to reimburse Mace for unreasonable expenditures. Mace Tr. at 48:5-13. | Admitted, but none were made. Exh. B, Mace Declaration at ¶ 4. |
| 26. The parties did not agree on what constituted a reimbursable expenditure under the alleged contract. *Id.* at 49:18-22. | *See* immediately above at 13. |
| 27. The parties did not reach any agreement as to the permissible nature of Plaintiff's expenditures under the alleged contract. *Id.* at 49:18-22. | *See generally above* Plaintiff's Statement of Material Facts in Dispute at 3.<br>*See also* immediately above at 13. |
| 28. The parties never discussed whether Domash could exercise veto power with respect to any of Mace's expenditures. *Id.* at 60:15-18. | Admitted, but Defendant was kept apprised of expenditures and never attempted to exercise such. Exh. B, Mace Declaration at ¶ 4. |
| 29. The alleged contract did not contain any requirement that Mace submit anything in writing to Domash regarding his expenditures. *Id.* at 56:17-22. | Admitted, but Defendant was kept apprised of expenditures and never requested a writing. Exh. B, Mace Declaration at ¶ 4. |
| 30. Mace never submitted anything in writing to Domash regarding his expenditures. Domash Aff. ¶ 2. | Admitted, but Defendant was kept apprised of expenditures and never requested a writing. Exh. B, Mace Declaration at ¶ 4. |
| 31. The parties never reached any agreement as to what Mace had to do specifically in connection with his obligations under the alleged contract. Mace Tr. at 67:1-3. | *See above* Plaintiff's Statement of Material Facts in Dispute at 5. |

| DEFENDANT's<br>STATEMENT OF MATERIAL FACTS AS TO<br>WHICH THERE IS NO GENUINE ISSUE | PLAINTIFF's<br>OPPOSITION |
| --- | --- |
| 32. The alleged contract did not specify whether IFA or Domash's personal and legal problems took priority. *Id.* at 67:11-16 | *See above* Plaintiff's Statement of Material Facts in Dispute at 5. |
| 33. The alleged contract did not specifically require that Mace perform his obligations in order for Domash's payment obligations to ripen. *Id.* at 69:5-10. | *See above* Plaintiff's Statement of Material Facts in Dispute at 5. |
| 34. No specific terms were ever discussed in connection with the alleged 1990 Promise (defined in the Memorandum). *Id.* at 75:10-16. | Irrelevant since Defendant never managed money, but such terms are commonly supplied by industry usage. |
| 35. The parties never discussed compensation pursuant to the alleged 1990 Promise. *Id.* at 75:17-18. | *See above* Plaintiff's Statement of Material Facts in Dispute at 3. |
| 36. The parties never discussed the length of time Domash would manage IFA's money pursuant to the alleged 1990 Promise. *Id.* at 76:1-4. | Irrelevant since Defendant never managed money, but such terms are commonly supplied by industry usage. |
| 37. By November 2001, Mace was concerned that Domash might not be able to work for IFA in the future because, according to Mace, Domash "was consuming a lot of alcohol." *Id.* at 111:21-112:8. | Admitted. |
| 38. Mace wrote a letter to Domash, dated October 30, 2002, in which he wrote, *inter alia*,: "I'd expect you to run IFA's money" and "If you're up to it I'd want you to take the post." *See* Exhibit E to the Memorandum. | Admitted |

| DEFENDANT's STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE | PLAINTIFF's OPPOSITION |
|---|---|
| 39. Mace continued making expenditures for which he now seeks reimbursement in this lawsuit after November 2001. Domash Aff. ¶ 8. | Admitted |
| 40. The parties never reached any agreement as to how the reimbursement payments would be treated from a tax perspective. Mace Tr. at 299:12-15. | Admitted but irrelevant since no payments were ever made and are not commonly a provision in a reimbursement contract. Defendant has put on no evidence that such a term is common to a reimbursement contract. |
| 41. The parties never reached any agreement as to how the interest from the credit cards would be treated from a tax perspective. *Id.* at 299:16-20. | Admitted but irrelevant since no payments were ever made and are not commonly a provision in a reimbursement contract. Defendant has put on no evidence that such a term is common to a reimbursement contract. |
| 42. Prior to September 2000, Mace told Dr. Graham that he was quite anxious to have what he felt was a payment due him from Domash. Deposition of George Graham at 15 (relevant excerpt attached as Exhibit F to the Memorandum). | Admitted. |
| 43. In March 2001, Mace told an individual named Steven Killion that Domash's outstanding financial obligation to Mr. Killion's company "was only the latest in Mr. Domash's pattern of unmet responsibilities to financially reimburse [Plaintiff] for [Plaintiff's] efforts to support and assist him." *See* September 1, 2006 letter from Killion to Mace, attached as Exhibit G to the Memorandum. | Admitted |
| 44. In or about June 2001, Killion told Mace that he did not believe Domash was being truthful regarding his (Domash's) financial affairs. Mace Tr. at 262:17-263:4. | *See above* Plaintiff's Statement of Material Facts in Dispute at 7. |
| 45. In December 2001 or January 2002, | *See above* Plaintiff's Statement of Material |

| DEFENDANT's STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE | PLAINTIFF's OPPOSITION |
|---|---|
| Mace came to feel that Domash was in a financial position to reimburse Mace. *Id.* at 103:7-20. | Facts in Dispute at 7. |
| 46. During that timeframe, Domash purchased a speedboat. *Id.* at 103:20-104:9. | *See above* Plaintiff's Statement of Material Facts in Dispute at 7. |
| 47. Mace viewed the purchase of the speedboat, which he learned about in or about January 2002, as being "inconsistent" with his statement about the necessity of conserving financial liquidity. *See* Exhibit H to the Memorandum at 2. | *Generally see above* Plaintiff's Statement of Material Facts in Dispute at 7.<br><br>Specifically, Defendant fails to fully set forth the relevant facts in regard to this issue, i.e., Mr. Mace's further explanation of his "view" of Defendant's purchase of a speedboat during the course of his deposition:<br><br>[By Mr. Brooks, Attorney for Defendant Domash]<br>Q. Under the contract that you entered into with Larry, should he have reimbursed you before he went out and bought a speedboat?<br>[By Plaintiff Mr. Mace]:<br>A You have to give me the question again. I've had the dust settled and the case and then his whole life. And had the company been up and running yet? And the answer to that is apparently no. I mean, would I have bought a speedboat? No. But that's me and that's not within the context of the agreement that he and I had.<br>Q So why are you writing letters about him buying a speedboat if it has nothing to do with the contract that you entered into with him?<br>A I think it's indignation and I think it's, again, frustration in that I had a difficult time understanding what he was at that moment about. I mean, why did George have -- I don't know why George ended up, you know, in the litigation against Larry, I can't answer that.<br>Q Okay. This note was written only six days after the letter that we looked at that was Mace Exhibit 9 that you wrote to Mr. Koenig, correct?<br>A I'll take your word for it.<br>Q At that point you said you were all set, 30 to 45 days it's going to get funded, right?<br>A Uh-huh.<br>Q So why six days later do you care what Mr. Domash is buying? |

*-13-*

| DEFENDANT's STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE | PLAINTIFF's OPPOSITION |
|---|---|
| | A  Because you had asked earlier about how many times we thought we were going to get the company up and running.  We didn't have the deal put together.  It just seemed untoward to me.  And there's another aspect of this too.  I just didn't think it was the right thing to do.<br>Q  Did it concern you that because he bought a speedboat, maybe he wouldn't reimburse you in the future?<br>A  I didn't view it that way.<br>Q  You had no concern whatsoever?<br> A  I had concerns but not that concern.  I wondered what was going through his mind.<br><br>Mace Tr.I at 124:6 to 126:2 included as part of EXHIBIT C to Defendant Larry Domash's Motion For Summary Judgment (Filed July18, 2008). |
| 48. On January 17, 2002, Plaintiff wrote a letter to an individual named Bruce Koenig, where he wrote, referring to Defendant's financial obligations, that: "If you're frustrated after thirteen months and partial payment imagine how we feel after years and years and no payment." Mace Tr. at 114:9-20; 118:13-18 (a copy of the letter is attached as Exhibit I to the Memorandum). | Admitted. |
| 49. Referring to what he perceived to be Domash's misrepresentations about his ability to reimburse Mace, on January 23, 2002, Mace wrote the following to Dr. George Graham, "That Larry [Domash] may have been 'somewhat less than forthcoming] is an understatement. THIS CRAP IS GOING TO STOP. Do nothing until we speak. He has put everything at risk." *Id.* at 121:6-122:14 (a copy of this letter is attached as Exhibit J to the Memorandum). Mace was referring to what he perceived as Domash's deceit: "I think what I was concerned about was Larry not being straightforward with us. I mean, you know, | *See above* Plaintiff's Statement of Material Facts in Dispute at 7. |

| DEFENDANT's STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE | PLAINTIFF's OPPOSITION |
|---|---|
| you can't say that you don't have it [money to reimburse] when you're going off and buying a speedboat." Mace Tr. at 123:21-124:5. | |
| 50. In January 2002, although Mace claims that Domash had given him the impression that he was seriously strapped for cash, Mace believed this was inconsistent with other things he learned about Domash's finances. *Id.* at 266:2-8. | *See above* Plaintiff's Statement of Material Facts in Dispute at 7. |
| 51. Specifically, by January 2002, Mace had formed an understanding that Domash had a corporation with $1.13 million in it. *Id.* at 265:14-17. | *See above* Plaintiff's Statement of Material Facts in Dispute at 7. |
| 52. Mace did not speak to Domash in connection with providing him legal and emotional support under the alleged contract after May or June 2002. *Id.* at 188:10-12. | Admitted, but he did continue to confer a benefit on Defendant but continuing to work for IFA, in particular he continued to work on obtaining financing, which resulted in Defendant becoming interested and promising to Dr. Graham and to BEK TEK that they and Plaintiff would be paid. *See above* Plaintiff's Statement of Material Facts in Dispute, especially at 10. |
| 53. Mace cannot identify any acts that he took, after June 2002, which conferred a benefit of any kind on Domash. *Id.* at 191:11-21. Domash did not actually receive any benefit, after June 2002, from any actions taken by Mace. Domash Aff ¶ 4. | *See immediately above* number 52. |
| 54. Domash never promised to reimburse Mace after May or June 2002. *Id.* at 195:2-8. | *See above* Plaintiff's Statement of Material Facts in Dispute at 6. |
| 55. On June 24, 2002, Mace wrote and sent Domash a letter. In that letter, Mace agreed with an assessment that Domash was | Admitted |

| DEFENDANT's STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE | PLAINTIFF's OPPOSITION |
|---|---|

"weak," a "coward" and a "weasel." Mace Tr. at 134:16-135:22 (a copy of the June 24, 2002 letter is attached as Exhibit K to the Memorandum). Mace further stated that:

"[a]nyone who's spent a considerable period of time with you would add that you don't do what you say you're going to do, or what you've agreed to do, that you're deceitful, frequently confused and have a serious problem with selfishness. For someone who's public mantra is 'always tell the truth', always do the right thing', always turn the other cheek', in private you're the essence of hypocrisy and denial. In some deep, essential way, Larry, you have let your life become a lie." Exhibit K to the Memorandum.

56. In the June 24, 2002 letter, Mace also wrote:

"And remember this – whether you heed my warning or not – you have a number of outstanding responsibilities to the people that have gotten you this far and whether you take my advice or not you are not going to get a pass from any of us. You have to face your responsibilities, Larry, and live up to your obligations. If you don't you are never going to get well. Let me say that again for emphasis. You have to, you are going to, one way or the other, face your responsibilities and live up to your obligations. You're very good at conveniently forgetting that when you think it suits your purpose. Let me assure you we have no intention of letting you forget." *Id.*

Admitted

57. Mace further testified that he believed Domash was deceitful as of June 24, 2002. Mace Tr. at 136:1-16.

*See above* Plaintiff's Statement of Material Facts in Dispute at 7.

| DEFENDANT's<br>STATEMENT OF MATERIAL FACTS AS TO<br>WHICH THERE IS NO GENUINE ISSUE | PLAINTIFF's<br>OPPOSITION |
|---|---|
| 58. According to Mace, one of Domash's "outstanding responsibilities" for which he wrote Domash was not going to get a pass, in Mace's June 24, 2002 letter, was Domash's alleged obligation to reimburse Mace. *Id..* at 138:7-16; 139:14-19. | Admitted, but context and circumstances discussed in Plaintiff's Statement of Facts in Dispute |
| 59. On July 5, 2002, Plaintiff resent Defendant a copy of the above-referenced June 24, 2002 letter. Plaintiff marked the copy, in red ink, "2nd notice, 7/5/02." *Id.* at 141:4-14; 142:14-18; *see also* Exhibit L to the Memorandum. | Admitted, but context and circumstances discussed in Plaintiff's Statement of Facts in Dispute |
| 60. On July 10, 2002, Mace wrote another letter to Domash, in which he stated, "To say that you don't owe BEK TEK and yours truly money is absurd as suggesting you don't owe George money." *Id.* at 148:3-11; 15-18 (a copy of the July 10, 2002 letter is attached to the Memorandum as Exhibit M). | Admitted, but context and circumstances discussed in Plaintiff's Statement of Facts in Dispute |
| 61. At the time Mace wrote this letter, he had concerns that Domash had not reimbursed him. Mace Tr. at 155:10-18. | Admitted, but context and circumstances discussed in Plaintiff's Statement of Facts in Dispute |
| 62. On October 27, 2002, Mace wrote yet another letter to Domash, which he mailed to Domash on October 30, 2002, after sending a draft version to Graham's assistant, Wendy Tonn on October 27, 2002. *Id.* at 165:13-15 (a copy of the October 27, 2002 draft is attached to the Memorandum as Exhibit N; a copy of the October 30, 2002 letter is attached to the Memorandum as Exhibit E). In that letter, Mace stated:<br><br>Regardless of how that works out, however thats (sic) resolved, you have an obligation to me that is overdue. Prior to the Walsh trial, as you knew and acknowledged you | Admitted, but context and circumstances discussed in Plaintiff's Statement of Facts in Dispute |

| DEFENDANT's<br>STATEMENT OF MATERIAL FACTS AS TO<br>WHICH THERE IS NO GENUINE ISSUE | PLAINTIFF's<br>OPPOSITION |
|---|---|
| owed me $75,000. After the trial on the drive from Boston to New York you spoke repeatedly of repaying me. Larry, its been two years, indeed almost exactly two years. I've done what you asked me to do, what I said I would do and now you have to meet your committment (sic). You made the promise to repay me, live up to it. Write me a check for $100,000 in the next two weeks. Just to build the relationship with Mr. Stein—who played a key role in getting us to this point – cost $25,000 since my visit to Providence 13 months ago. You need to keep your word, you can not afford its loss. As health permits, over the next several weeks I'll figure out what remains, notify you and expect you to close out the balance in monthly payments over the following five months. *See* Exhibit E to the Memorandum. | |
| 63. On November 9, 2002, Mace wrote a note to third party George Graham. He stated, "Damn Larry and his selfishness and deceit." This note was affixed to a letter Mace wrote, on the same date, to the Credit Services Unit of First USA Bank, N.A. Mace's letter to the credit card company responded to the company's letter to him, dated October 31, 2002, alerting him that they were closing his account. Mace Tr. 180-184 (a copy of this correspondence is attached as Exhibit O to the Memorandum). | |
| 64. Mace testified that part of Domash's deceitful conduct he was referring to, as of November 9, 2002, included his failure to reimburse Mace as of that date. Mace Tr. at 184:9-22. | |
| 65. Domash did not make the $100,000 payment – or any payment whatsoever – within the two weeks following the October 30, 2002 letter. | Admitted |

| DEFENDANT's STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE | PLAINTIFF's OPPOSITION |
|---|---|
| 66. On November 24, 2002, Domash wrote Mace, denying that he owed Mace any money. | *See above* Plaintiff's Statement of Material Facts in Dispute at 6 and 8. |
| 67. Domash never received any benefit from any expenditures that Mace made in connection with IFA. Mace Tr. at 186:14-19. | *See above* Plaintiff's Statement of Material Facts in Dispute at 9. |
| 68. Domash never received any benefit from any expenditures that Mace made on behalf of Mace's cousin. Domash Aff. ¶ 5. | *See above* Plaintiff's Statement of Material Facts in Dispute at 9. |
| 69. Domash never received any benefit from any expenditures that Mace made on behalf of himself. Domash Aff ¶ 6. | *See above* Plaintiff's Statement of Material Facts in Dispute at 5 and 9. |
| 70. Mace is unable to identify any specific credit card expenditures that he made under the alleged contract. *See, e.g.,* Mace's Response No. 1 to Domash's First Set of Interrogatories (a copy is attached as Exhibit B to the Memorandum). | Defendant again mis-characterizes the nature of the testimony cited. Defendant refers to Mr. Maces's Response No. 1 to Defendant's First Set of Interrogatories as standing for the implication that Mr. Mace is *presently* unable to "identify any specific credit card expenditures." |
| | However, Mr. Mace's original Response No. 1 was stated on Dec. 14, 2006 and *at that time* referred only to Mr. Mace's status of then being "in the process of working with an accountant or bookkeeper to prepare a more detailed accounting and will provide it to you when completed. I believe it would be physically impossible for such to be prepared on such short notice." Mace's Response No. 1 to Domash's First Set of Interrogatories included as EXHIBIT B to <u>Defendant Larry Domash's Motion For Summary Judgment</u> (Filed July18, 2008). |
| | The indicated such accounting has long since been amply provided to the Defendant and the Court. *See above* Plaintiff's |

*-19-*

| DEFENDANT's STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE | PLAINTIFF's OPPOSITION |
|---|---|
| | Statement of Material Facts in Dispute at 3. |
| 71. Mace is unable to allocate any specific credit card expenditures he made under the alleged contract to one of the four categories of the contract. *See* Mace Tr. at 93:22-94:8; Exhibit B, Response No. 1. | *See immediately above* at 70. |
| 72. Other than whatever was reflected in his various credit card statements, Mace did not keep any records regarding his expenditures under the contract. | Admitted |
| 73. Mace was not expecting payment from Domash in connection with his services other than reimbursement for his reasonable expenditures under the contract. *See generally* Mace Tr. 68:16-69:4; 212:16-213:2; 271:3-7. | *See above* Plaintiff's Statement of Material Facts in Dispute at 10. |
| 74. For example, Mace did not accept – and would not have accepted – money for taking over power of attorney for Domash. *Id.* at 271:3-7. | *Generally, see above* Plaintiff's Statement of Material Facts in Dispute at 10. Specifically, Plaintiff objects to the Defendant's misleading characterization of Mr. Mace's deposition testimony here cited as comprising a support "example" of the preceeding assertion (i.e., at 73) that "Mace was not expecting payment from Domash …" Instead, Mr. Mace made clear in his testimony that the matter of accepting the responsibility of a power of attorney for Domash was an entirely independent matter distinct from his and Mr. Domash's business agreement at issue here: [By Mr. Brooks, Attorney for Defendant Domash] Q   At some point Mr. Domash gave you power of attorney? [By Plaintiff Mr. Mace]: |

| DEFENDANT's STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE | PLAINTIFF's OPPOSITION |
|---|---|
| | A   Yes, he did.<br>Q   Did you ever do anything for Mr. Domash in that regard, pursuant to that power of attorney?<br>Yes, I did.<br>Q   What did you do for him?<br>A   We used it with Tim Hughes who helped Larry deal with an issue about a dispute over a payment that was allegedly due to some attorneys that Larry was working with.<br>Q   When was that?<br>A   I don't recall, sir.  I'd have to go back and look at the date of that.  And we also used it with I believe Val Diviacchi.  And that was to help Larry on another legal matter also.<br>Q   Anything else?<br>A   Off the top of my head, I don't believe so. I felt -- this was something that he asked me to have. It was never something that I asked him to give me.<br>Q   Was there an understanding between the two of you that you would be paid for your role in taking over his power of attorney for Mr. Domash?<br>A   No.  Not at all.  I never would have accepted money for something like that.<br><br>Deposition of Peter M. Mace, Thus., Feb. 22, 2007 at 270:5 to 271:7 (Washington, D.C.) (hereinafter referred to as "Mace Tr. II") included as part of EXHIBIT C to <u>Defendant Larry Domash's Motion For Summary Judgment</u> (Filed July18, 2008). |
| 75. The parties had no understanding that Domash would pay Mace directly for Maces purported help to Domash, other than the alleged promise to reimburse Mace's reasonable expenditures under the alleged contract. *Id.* at 68:16-69:4. | *See above* Plaintiff's Statement of Material Facts in Dispute at 10. |

Respectfully submitted,

Dated: _18 Aug 2008_   Signed: _____

Michael J. Trevelline, DC Bar # 437454

Address:   1823 Jefferson Place, NW

Washington, DC 20036-2504

Telephone:    (202) 737-1139/Fax:  (202) 775-1118
Email:        mjt@mjtlegal.com
Attorney for **Plaintiff Peter M. Mace**