# Exhibit M.13

11 of 100 DOCUMENTS



Cited
As of: Aug 11, 2008

UNION LABOR LIFE INSURANCE COMPANY, Plaintiff, v. THE SHEET MET-
AL WORKERS NATIONAL HEALTH PLAN, Defendant

Civil Action No. 90-2728 (RCL)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

*1991 U.S. Dist. LEXIS 13613*

September 30, 1991
September 30, 1991, Filed

## CASE SUMMARY:

**PROCEDURAL POSTURE:** Plaintiff insurance company filed an action against defendant, a sheet metal workers national health plan (plan). The company had issued certain policies to the plan. The company brought six **claims,** four based on breach of contract and two equitable **claims** if the court found that no contract existed. Before the court was the plan's motion to dismiss for failure to state a **claim** upon which relief could be granted, *Fed. R. Civ. P. 12(b)(6).*

**OVERVIEW:** The parties had entered into two conventional fully insured policies. In early 1987 the parties corresponded about amending the policies into a "minimum premium funding arrangement." The plan informed the company that the former approved a conversion from the conventional premium policy previously in effect to a minimum premium policy, with an effective date of January 1, 1987. The company paid a certain total in **claims,** which the plan had not reimbursed in full. The court, applying the law of Virginia and the District of Columbia, found that the parties never agreed to an essential term of the minimum premium plan, how the plan was to fund the policy. Consequently, the court found that there was no contract. The court found that the company, in respect to **claims** for which it had not been reimbursed, could recover on the theory of **quantum meruit** and that the causes of action for **quantum meruit** accrued each time the company was not reimbursed. The only **claims** barred by the applicable three-year statute of limitations were those which occurred prior to November 6, 1987.

The court denied the motion to dismiss with respect to **claims** in counts five and six, accruing after that date.

**OUTCOME:** The court granted the plan's motion to dismiss **claims** one, two, three and four based on breach of contract. The court granted the plan's motion to dismiss with respect to the company's **claims** in counts five and six which accrued prior to November 6, 1987. The court denied the motion to dismiss with respect to the company's **claims** in counts five and six which accrued after November 6, 1987.

**CORE TERMS:** premium, monthly payments, unjust enrichment, statutes of limitations, quantum meruit, deposit, accrued, own accounts, equitable claims, policyholder, reimbursed, funding, cause of action, enforceable, monthly, insured, present case, promise to pay, own funds, unjustly enriched, coverage, owed, choice of law, implied in law, material terms, contract claims, mutual assent, essential terms, reasonably certain, entitled to recover

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
[HN1] In respect to a defendant's motion to dismiss for failure to state a **claim** upon which relief can be granted, pursuant to *Fed. R. Civ. P. 12(b)(6),* a court accepts as true all material facts alleged in the complaint and considers such facts in the light most favorable to plaintiff.

1991 U.S. Dist. LEXIS 13613, *

*Civil Procedure > Jurisdiction > Diversity Jurisdiction > General Overview*
*Civil Procedure > Federal & State Interrelationships > Erie Doctrine*
[HN2] Where the basis for jurisdiction in a case is diversity of citizenship, pursuant to *28 U.S.C.S. § 1332(a)(1)*, state law provides the substantive rules of law for the case.

*Civil Procedure > Federal & State Interrelationships > Choice of Law > General Overview*
[HN3] In diversity cases, federal courts must apply the choice of law rules of the jurisdiction in which it sits. Under the laws in which a court sits, the court may first determine whether there is a conflict between the laws of the involved jurisdictions. If the laws of the relevant jurisdictions do not conflict, the result is what is commonly referred to as a "false conflict" and there is no need for the court to engage in the choice of law analysis.

*Contracts Law > Formation > Definite Terms*
*Contracts Law > Formation > Meeting of Minds*
[HN4] Under the laws of both the District of Columbia and Virginia, in order for a contract to be enforceable there must be mutual assent between the parties as to all material terms of the deal. Under the law of the District, the parties to a contract must manifest their agreement or mutual assent to its essential terms. Under the law of Virginia, in order for a contract to be valid and enforceable, the terms and conditions of a contract must be "reasonably certain."

*Contracts Law > Contract Conditions & Provisions > General Overview*
*Contracts Law > Formation > Acceptance > General Overview*
[HN5] In order for a contract to be enforceable the offeror must offer the terms of the deal to the offeree and the offeree must accept those terms.

*Contracts Law > Remedies > Equitable Relief > Quantum Meruit*
[HN6] A claimant is entitled to recover the benefits it conferred upon a defendant under the theories of **quantum meruit** and unjust enrichment so long as the benefits were not given gratuitously.

*Contracts Law > Remedies > Equitable Relief > Quantum Meruit*
*Contracts Law > Types of Contracts > Implied-in-Law Contracts*
[HN7] A promise to pay will be implied in law when one party renders valuable services that the other party knowingly and voluntarily accepts. **Claims** based on implied contracts are not really contract **claims,** but are rather equitable **claims** brought in order to avoid unjust enrichment. A claimant may recover on an implied contract as long as the services it provided were not rendered gratuitously. Absent a presumption of gratuity, there is a virtual presumption of a (quasi) contract--a contract implied in law--premised on unjust enrichment theory.

*Contracts Law > Remedies > Equitable Relief > Quantum Meruit*
*Contracts Law > Types of Contracts > Implied-in-Law Contracts*
[HN8] Where one renders services for another at the latter's request, the law, in absence of an express agreement, implies a promise to pay what the services are reasonably worth, unless it can be inferred from the circumstances that the services were to be rendered without compensation. In such cases assent between the parties is immaterial. The promise to pay is implied from the consideration received by defendant, and the law imposes on defendant a legal duty to pay for the benefit received.

*Contracts Law > Remedies > Equitable Relief > Quantum Meruit*
*Governments > Legislation > Statutes of Limitations > Time Limitations*
[HN9] The statute of limitations for **quantum meruit** and unjust enrichment is three years in both the District of Columbia and Virginia. *D.C. Code § 12-301(7)*; *Va. Code § 8.01-246(4)* (referring to implied contracts). Further, the case law of both the District of Columbia and Virginia clearly demonstrate that equity acts by analogy, and that if a legal **claim** is barred by the statute of limitations then its counterpart in equity is also barred.

*Governments > Legislation > Statutes of Limitations > Time Limitations*
[HN10] The statutes of limitations in the District of Columbia and Virginia run from the accrual of the cause of action. *D.C. Code § 12-301*; *Va. Code § 8.01-230*. In both the District and Virginia, wrongful acts or breaches of duty which occur in distinct intervals or installments, as opposed to being continuous, cause distinct and severable injuries. Consequently, each breach gives rise to

1991 U.S. Dist. LEXIS 13613, *

new and separate cause of action and the statutes of limitations in both jurisdictions run separately for each.

**JUDGES:** [*1]   Royce C. Lamberth, United States District Judge.

**OPINION BY:** LAMBERTH

**OPINION**

*MEMORANDUM AND ORDER*

This case comes before the court upon defendant's motion to dismiss for failure to state a **claim** upon which relief can be granted, pursuant to *Fed. R. Civ. P. 12(b)(6)*. [HN1] Because this is a motion to dismiss the court accepts as true all material facts alleged in the complaint and considers such facts in the light most favorable to plaintiff.

I. FACTS

Plaintiff, the Union Labor Life Insurance Company ("ULLICO"), and defendant, the Sheet Metal Workers National Health Plan ("The Plan"), entered into two conventional fully insured policies on or about September of 1983. Cplt. para. 8. These policies were considered fully insured because plaintiff was fully at risk for all **claims** made under the policies. *Id.* at para. 10.

In early 1987, plaintiff and defendant exchanged correspondence that dealt with amending their policies into a "minimum premium funding arrangement." *Id.* at paras. 11-12. A minimum premium funding arrangement is a combination of self-funding and a fully insured policy whereby the insured is liable for all **claims** up to a certain level, known as the "Maximum Annual Incurred **Claims**" level,  [*2]  and the insurer is liable for all **claims** in excess of that level. *Id.* at paras. 11-13.

On February 26, 1987, plaintiff sent defendant a proposal for a minimum premium funding plan which contained four options. *Id.* at para. 14. Pl. Ex. A. Each option represented a different method by which the policy could be arranged. *See* Pl. Ex. A. The options differed in terms of the amount of the advance deposit, the maximum annual incurred **claims** level, how the Plan would pay for the **claims** made (either by monthly payments or by establishing its own bank accounts) and the percentage of the premium charge, which depended upon the amount of risk and the administrative costs borne by ULLICO. Cplt. para. 24. Pl. Ex. A. Consequently, each option presented different risks and duties to the parties.

On April 8, 1987, a representative of defendant sent plaintiff a letter stating that the Plan's trustees had "approved a conversion from the conventional premium policy previously in effect to a minimum premium policy, with an effective date of January 1, 1987." Cplt. para. 15. Pl. Ex. B. On May 21, 1987, plaintiff sent defendant a letter confirming that defendant's insurance policy was to be  [*3]  funded under a minimum premium arrangement effective January 1, 1987. Cplt. para. 16. Pl. Ex. C. In this letter, plaintiff also stated that "the terms of the new arrangement will be in accordance with Option 2 of our proposal . . . ." Pl. Ex. C. On August 26, 1987, plaintiff sent defendant a "Rider" which was designed to amend defendant's policy into a minimum premium funding arrangement. Cplt. para. 18. Pl. Ex. D. Plaintiff states that the Rider was sent to reflect the terms of the minimum premium plan as agreed to by the parties. Cplt. para. 18.

The Rider required the policyholder to make an initial deposit of $ 1,101,000.00 by January 1, 1987. Pl. Ex. D. The Rider also required that the policyholder pay plaintiff, on the first day of every month, an advance deposit of $ 300,000.00 to fund all of the **claims** during that month. *Id.* The Rider further provided that:

if the Policyholder fails to pay any such monthly advance deposit within 30 days after the date due the policy may be immediately terminated at the option of the Company at any time after the expiration of said 30 day period by notice in writing to the Policyholder, subject, however, to the provision in paragraph (1)  [*4]  of this section (which states that plaintiff may apply the initial deposit to reimburse the Company in the event that the Policyholder fails to pay a monthly advance deposit).

*Id.* The language of the Rider requested that defendant execute the Rider and return it to plaintiff. Cplt. para. 18. Pl. Ex. D. Plaintiff admits that defendant never executed or returned the Rider. Cplt. para. 18.

Plaintiff then alleges that it gave defendant four options for arranging its minimum premium plan, referring to its letter of February 26, 1987. *Id.* at para. 24. Defendant could either make monthly payments to cover the **claims** made during that month or it could establish its own bank accounts from which plaintiff would draw the funds necessary to pay the **claims.** *Id.* at paras. 24-25. Plaintiff next states that defendant chose to establish its own accounts instead of making monthly payments, and as a result the premium charge was set at 4.2%. *Id.* at paras. 25-26.

Plaintiff **claims** that defendant failed to establish the $ 1,101,000.00 account that was required by the minimum premium plan agreed to by the parties. Cplt. para. 27-28. Plaintiff then states that the parties agreed that defendant [*5]  would make monthly payments of $ 300,000.00 but that defendant was frequently in arrears on its monthly payments. *Id.* at paras. 30-32. Plaintiff asserts that the total amount of **claims** it paid and the premium charge thereon was $ 3,321,667.83. *Id.* at paras.

Case 1:05-cv-02244-HHK    Document 45-14    Filed 08/18/2008    Page 5 of 7

Page 4
1991 U.S. Dist. LEXIS 13613, *

34-41. Plaintiff also states that defendant has only paid $ 2,924,745.50 and refuses to pay the remaining amount due. *Id.* at paras. 42, 47. Plaintiff brings six **claims,** four based on breach of contract and two equitable **claims** if the court finds that no contract existed.

II. DISCUSSION

A. Choice of Law

[HN2] The basis for jurisdiction in this case is diversity of citizenship, pursuant to *28 U.S.C. § 1332(a)(1)*, and thus state law provides the substantive rules of law for this case. *Erie R.R. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 118 (1938)*. This case has contacts with more than one state and thus the court may have to determine which law applies to the case. Plaintiff is licensed in the District of Columbia while defendant is located in Virginia.

[HN3] In diversity cases, federal courts must apply the choice of law rules of the jurisdiction in which it sits. *Eli Lilly and Co. v. Home Ins. Co., 764 F.2d 876, 882 (D.C. Cir. 1985)*, [*6] *cert. denied 479 U.S. 1060, 107 S. Ct. 940, 93 L. Ed.2d 990 (citing Klaxon Co. v. Sentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941))*. Under the laws of the District of Columbia, the court must first determine whether there is a conflict between the laws of the involved jurisdictions. *Eli Lily, 764 F.2d at 882 (citing Fowler v. A & A Co., 262 A.2d 344, 348 (D.C. 1970); Gaither v. Meyers, 404 F.2d 216, 222 (D.C. Cir. 1968))*. If the laws of the relevant jurisdictions do not conflict, the result is what is commonly referred to as a "false conflict" and there is no need for the court to engage in the choice of law analysis. *See Keene Corp. v. Ins. Co. of North America, 667 F.2d 1034, 1041 n.10 (D.C. Cir. 1981), cert. denied, 455 U.S. 1007, 102 S. Ct. 2024, 71 L. Ed. 875*.

B. Breach of Contract

[HN4] Under the laws of both the District of Columbia and Virginia, in order for a contract to be enforceable there must be mutual assent between the parties as to all [*7] material terms of the deal. Under the law of the District, the parties to a contract must "manifest their agreement or mutual assent to its essential terms." *Anderco, Inc. v. Buildex Design Inc., 538 F. Supp. 1139, 1142 (D.D.C. 1982) (citing Owen v. Owen, 427 A.2d 933, 937 (D.C. 1981); Hollywood Credit Clothing Co. v. Gibson, 188 A.2d 348, 349 (D.C. 1963))*. Under the law of Virginia, in order for a contract to be valid and enforceable, the terms and conditions of a contract must be "reasonably certain." *Coastland Corp. v. Third National Mortgage Co. et al., 611 F.2d 969, 976 (4th Cir. 1979) (citing Smith v. Farrell, 99 Va. 121, 98 S.E.2d 3, 7 (1957))*.

Plaintiff, in paragraph 18 of its complaint, states that the Rider was sent to implement the terms of the minimum premium plan as agreed to by ULLICO and the Plan. Other allegations contained in plaintiff's complaint, however, contradict plaintiff's **claim** that the parties actually agreed to any particular terms of a minimum premium funding arrangement. Taking all of these contradictory statements of fact as true demonstrates [*8] with reasonable certainty that plaintiff and defendant never agreed to an essential term of the minimum premium plan, how defendant was to fund the policy.

Plaintiff, in its complaint, states that on May 21, 1987, defendant chose Option 2 of the four minimum premium plan options provided by plaintiff. Cplt. para. 17. Option 2 does not on its face require monthly payments. *See* Pl. Ex. C. In paragraph 18 of its complaint, however, plaintiff states that defendant agreed to the terms of the Rider, which does require monthly payments. Again to the contrary, later in plaintiff's complaint plaintiff states that it gave defendant the option of either making monthly payments or establishing its own accounts and that defendant chose to establish its own accounts instead of making monthly payments. Cplt. paras. 24, 26. Finally, plaintiff asserts in paragraph 30 that defendant agreed to make monthly payments to fund its policy. *Id.* at para. 30.

As has been noted, at the motion to dismiss stage of the proceedings the court must accept as true all of plaintiff's **claims** of fact. Taking all of plaintiff's **claims** as true in this case clearly demonstrates that there is no enforceable contract [*9] between plaintiff and defendant. The method by which defendant must fund the minimum premium plan is a material term and it is not reasonably certain that there was any meeting of the minds between the parties as to whether defendant would fund the policy by making monthly payments or by establishing its own accounts.

Moreover, the District of Columbia and Virginia contract law also require that [HN5] in order for a contract to be enforceable the offeror must offer the terms of the deal to the offeree and the offeree must accept those terms. *See Cinciarelli v. Carter, 662 F.2d 73, 78 (D.C. Cir. 1981); Edmond J. Flynn Co. v. LaVay, 431 A.2d 543, 547 (App. D.C. 1981); Piland Corp. v. Rea Construction Co., 672 F. Supp. 244, 246 (E.D. Va. 1987); Bernstien v. Board, 146 Va. 670, 132 S.E. 698, 699 (1926)*. In the present case plaintiff fails to allege any facts which suggest that defendant accepted any particular terms of a minimum premium plan that it offered. Defendant never executed or returned the Rider. Cplt. para. 18. Also, defendant, in its letter of April 8, 1987, merely stated that it would select [*10] *a* minimum premium policy, not any one of the four options plaintiff presented. Pl. Ex. B. As noted above there is no way of

discerning from plaintiff's complaint whether defendant agreed to make monthly payments or not. Therefore, defendant's motion to dismiss plaintiff's **claims** one through four for breach of contact is granted.

## C. Equitable **Claims**

Counts five and six of plaintiff's complaint are equitable **claims** for **quantum meruit** and unjust enrichment. Plaintiff brings these **claims** in the event that the court determines that no contract exists between plaintiff and defendant. Under the laws of both the District of Columbia and Virginia, [HN6] a claimant is entitled to recover the benefits it conferred upon a defendant under the theories of **quantum meruit** and unjust enrichment so long as the benefits were not given gratuitously.

The District of Columbia Court of Appeals, in *Brown v. Brown, 524 A.2d 1184, 1186 (App. D.C. 1987)*, stated that [HN7] "a promise to pay will be implied in law when one party renders valuable services that the other party knowingly and voluntarily accepts." The court in *Brown* continued to note that **claims** based on implied contracts are not [*11] really contract **claims**, but are rather equitable **claims** brought in order to avoid unjust enrichment. *Id. (citing Bloomgarden v. Cooper, 479 F.2d 201, 208 (D.C. Cir. 1973).* Under District of Columbia law, a claimant may recover on an implied contract as long as the services it provided were not rendered gratuitously. *Id. at 1186-87.* The court stated that "absent a presumption of gratuity, there is a virtual presumption of a (quasi) contract--a contract implied in law--premised on unjust enrichment theory." *Id. at 1187.*

Similarly, under the law of Virginia, plaintiffs are entitled to recover on the theory of **quantum meruit**. The Supreme Court of Virginia stated that:

[HN8] where one renders services for another at the latter's request, the law, in absence of an express agreement, implies a promise to pay what the services are reasonably worth, unless it can be inferred from the circumstances that the services were to be rendered without compensation.

*Marine Development Corp. v. Rodak, 225 Va. 137, 300 S.E.2d 763, 766 (1983).* The court went on to state that in such cases assent between the parties is immaterial. *Id.* The promise [*12] to pay is implied from the consideration received by defendant, and the law imposes on defendant a legal duty to pay for the benefit received. *Id. See also Ricks v. Sumler, 179 Va. 571, 19 S.E.2d 889, 891 (1942).*

In the present case it is clear that plaintiff conferred benefits upon defendant when it paid defendant's **claims**

under the minimum premium plan with its own funds and was not reimbursed. It is equally clear that these payments by plaintiff were accepted by defendant and were not gratuitous. According to plaintiff's complaint, defendant was to fund the minimum premium plan in one of two ways. Defendant was to either make monthly payments of $ 300,000.00 "as a monthly advance deposit to be used by [ULLICO] for the purpose of payment of **claims** during the month to which the monthly advance deposit applies," Pl. Ex. D, *see also* Cplt. paras. 21, 24, 30, or establish its own accounts upon which plaintiff would draw in order to pay defendant's **claims.** Cplt. paras. 24-25. Defendant failed to either make monthly payments or establish its own accounts, and as a result plaintiff was "compelled" to use its own funds to pay for defendant's **claims.** [*13] *Id.* at para. 29, 32.

Defendant accepted these payments in that it accepted the insurance coverage. This is evidenced by the fact that defendant never rejected the coverage and even made partial payments to plaintiff for the coverage. Plaintiff sent defendant periodic statements detailing the amounts paid by it and owed by defendant. *Id.* at paras. 33-41. As of October 19, 1987, defendant owed $ 1,462,883.19. *Id.* at para. 34. For the entire year of 1987, the total amount of **claims** paid by plaintiff was $ 3,187,781.03, and defendant only reimbursed plaintiff $ 2,924,745.50. *Id.* at paras. 36, 42. Plaintiff has also paid the premium charge that defendant was to pay under the minimum premium plan. The charge was to be either 4.2% or 4.9% of the **claims** made by defendant depending upon the type of plan. *Id.* at paras. 26, 70. Thus, it is clear from plaintiff's complaint that plaintiff has a valid **claim** to recover **quantum meruit** and unjust enrichment. The next question presented is whether these two **claims** are barred by the relevant statutes of limitations.

## D. Statute of Limitations

Plaintiff has failed to show that any contract was formed in this case and thus the statute [*14] of limitations ground for dismissal regarding plaintiff's breach of contract **claims** need not be addressed. As for plaintiff's equitable **claims**, [HN9] the statute of limitations for **quantum meruit** and unjust enrichment is three years in both the District of Columbia and Virginia. *D.C. Code § 12-301(7)*; *Va. Code § 8.01-246(4)* (referring to *implied* contracts). Further, the case law of both the District of Columbia and Virginia clearly demonstrate that equity acts by analogy, and that if a legal **claim** is barred by the statute of limitations then its counterpart in equity is also barred. [1]

1   *See Woodruff v. McConkey, 524 A.2d 722, 725 (D.C. App. 1987)*; *Dawson v. Drazen, 223 A.2d 375, 377 (D.C. App. 1966)*; *Harnsberger et*

1991 U.S. Dist. LEXIS 13613, *

*al. v. Wright, 185 Va. 586, 39 S.E.2d 737, 738 (1946); McCarty v. Ball, 82 Va. 872, 1 S.E.2d 189, 191 (1887); DeBaun's Ex'x v. DeBaun et al., 119 Va. 85, 89 S.E. 242 (1916).*

[*15] [HN10] The statutes of limitations in the District of Columbia and Virginia run from the accrual of the cause of action. *D.C. Code § 12-301; Va. Code § 8.01-230.* In both the District and Virginia, wrongful acts or breaches of duty which occur in distinct intervals or installments, as opposed to being continuous, cause distinct and severable injuries. Consequently, each breach gives rise to new and separate cause of action and the statutes of limitations in both jurisdictions run separately for each. *Knight v. Cheek, 369 A.2d 601, 604 (D.C. App. 1977)* (in which plaintiff filed suit to recover money paid to a creditor and the court stated that "a cause of action accrued upon each installment payment"). *See also William J. Davis, Inc. v. Young, 412 A.2d 1187, 1191 (D.C. App. 1980)* (in which the court noted that "in cases of periodic payment, such as wages, each payment date gives rise to a new **claim**"). In Virginia, *see Hampton Roads Sanitation District v. McConnell, 234 Va. 235, 360 S.E.2d 841, 843-44 (1987).*

In the present case, plaintiff's causes of action for **quantum meruit** accrued when defendant was unjustly enriched. [*16] This occurred every time that plaintiff paid for **claims** with its own funds and was not reimbursed by defendant. Each of these unreimbursed payments is a discrete and severable instance of unjust enrichment to defendant, and thus a cause of action accrued each time in both the District of Columbia and Virginia. Consequently, the three year statute of limitations runs separately for each instance of unjust enrichment to defendant and thus the only **claims** in this case that are barred are those which occurred prior to November 6, 1987.

For the year of 1987, plaintiff paid $ 3,187,781.03 in **claims** and that defendant has reimbursed plaintiff $ 2,924,745.50. Thus, defendant has been unjustly enriched a total of $ 263,035.53. It is unclear, however,

when in 1987 plaintiff made the individual payments which add up to this total and when, if ever, defendant reimbursed plaintiff for each payment, for it is not until defendant has failed to reimburse plaintiff that defendant has been unjustly enriched. [2] As a result, the court is unable, at this time, to determine whether the statutes of limitations have run on any or all of plaintiff's **claims** for **quantum meruit** and unjust enrichment. Accordingly, [*17] defendant's motion to dismiss plaintiff's counts five and six is granted with respect to all of plaintiff's **claims** in counts five and six which accrued before November 6, 1987. Defendant's motion to dismiss plaintiff's counts five and six is denied with respect to the **claims** therein which accrued after November 6, 1987.

> 2    This explains why the statutes of limitations have not barred plaintiff's **quantum meruit** and unjust enrichment **claims** to recover the $ 1,462,883.19 that plaintiff states was owed it as of October 19, 1987. *See* Cplt. para. 34.

E. Statute of Frauds

Since plaintiff failed to demonstrate that a contract was formed in this case, the court need not address this issue.

In light of the forgoing, it is hereby ORDERED that

1. Defendant's motion to dismiss plaintiff's **claims** one, two, three and four based on breach of contract is hereby GRANTED;

2. Defendant's motion to dismiss plaintiff's counts five and six is hereby GRANTED with respect to plaintiff's **claims** in counts five and six which accrued prior [*18] to November 6, 1987.

3. Defendant's motion to dismiss plaintiff's counts five and six is hereby DENIED with respect to plaintiff's **claims** in counts five and six which accrued after November 6, 1987.

SO ORDERED.