UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| PETER M. MACE | ) | |
| | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 1:05CV02244 |
| | ) | (HHK/DAR) |
| | ) | Summary Judgment Hearing |
| LARRY A. DOMASH | ) | 11/14/2008 |
| | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT LARRY DOMASH'S MOTION FOR SUMMARY JUDGMENT**

## I.    SUMMARY OF ARGUMENT

Plaintiff Peter Mace's Opposition does not meaningfully address the arguments

set forth in Defendant Larry Domash's motion for summary judgment and supporting

papers (collectively, the "Principal Memorandum"), and fails to save his defective claims.

First, in support of his position that the alleged oral agreement contained

sufficiently definite terms so as to constitute a binding and enforceable contract under

District of Columbia law, Mace principally argues that the "entirety of the contract" had

already been performed at the time Domash repudiated it in writing.  This argument fails

both because Mace puts forth no evidence in support of this assertion and because it

relies upon a description of the alleged contract that differs markedly from Mace's

deposition testimony.  Mace's other arguments related to the lack of specificity of the

alleged oral agreement fail for similar reasons.

Second, Mace's arguments in support of his position that his lawsuit was timely filed completely ignore the most damning evidence against him (*i.e.,* his written acknowledgement that he was aware of the alleged fraud at issue months before the statute of limitations cut-off date; and his written demand to Domash for payment under the alleged contract, which he specifically referred to as <u>"overdue,"</u> outside of the limitations period).  Instead of even addressing these obviously critical facts, Mace largely relies on two misplaced and irrelevant arguments: (i) that, despite his own awareness that Domash was in breach of the alleged oral agreement, his claim did not accrue until he received a letter from Domash explicitly acknowledging the alleged breach; and (ii) that Domash's alleged oral statement – made to a <u>third party</u> more than four months before the limitations cut-off date – that he would pay certain money owed to that third party, estops Domash from raising a statute of limitations defense under the so-called "lulling" doctrine.  As to the former, Mace is unable to find any legal support for his argument, which is at direct odds with District of Columbia law governing the accrual of a cause of action.  As to the latter, the lulling doctrine does not apply where, as here, the alleged lulling activity occurred <u>before</u> the limitations cut-off date.  Moreover, Mace's <u>new</u> factual allegation regarding his purported reliance on an alleged promise made to a third party is contradicted by the undisputed factual record here, specifically the deposition testimony of both Mace and the third party.  Mace's remaining limitations arguments are easily dispatched, as discussed in greater detail below.

Third, with respect to his claim for unjust enrichment that seeks damages other than the reimbursement of his alleged contractual expenditures (*i.e.*, payment for the alleged value of his services), Mace simply does not address the fact that he never

asserted such a claim until months after discovery closed.  Moreover, conspicuously absent from Mace's Opposition and Declaration is any allegation that he <u>expected</u> to be paid for his alleged services to Domash (separate and apart from an alleged expectation that Domash would reimburse certain of his out-of-pocket expenditures).  As expectation of payment is a necessary element of a viable unjust enrichment claim, that claim fails as a matter of law.

Finally, in alleging only that a "major portion" of the alleged contract provided a direct, personal benefit to Domash, Mace effectively concedes that the leading object exception to the Statute of Frauds does not apply here.  Moreover, contrary to Mace's bald claim, the undisputed evidence clearly demonstrates that a "major portion" of the alleged contract did <u>not</u> confer a direct benefit on Domash.  Notably, Mace has provided no evidence to the contrary, and thus the Statute of Frauds bars his claims.

## II.    ARGUMENT

### A.    The Terms of the Alleged Oral Agreement Lacked Sufficient Definiteness.

Mace's main argument in support of his position that the alleged oral arrangement constituted a binding contract is that "the entirety of the contract" had been completed, aside from Domash paying Mace.  *See* Opposition at 5.  Mace, however, despite having the burden of proof, has not produced any evidence that the term of the alleged contract had ended at the time he received Domash's letter denying its existence (or, on the other hand, that it had not already ended years before he received Domash's letter).  Accordingly, Mace's related assertion that "Defendant is only claiming the contract did

not exist when it came time for him to pay" (Opposition at 4), is not supported by any evidence in the record.[1]

The fundamental problem with Mace's argument is that, because the terms of the alleged oral arrangement, as described by Mace himself, were so vague, there is no meaningful way to ascertain (even after the fact) when it ended or when payment became due.[2]  In an attempt to circumvent this problem, Mace posits in the Opposition that Domash's payment was due "when the divorce litigation ended, that is quite some time ago."  Opposition at 9.  However, Mace's sworn deposition testimony contradicts this by making clear that the alleged triggering event for payment was far less concrete than the mere ending of litigation (itself a date that could be subject to differing interpretations).  After having alluded to the fact that Domash's payment obligation would ripen when the "dust settled" on his divorce proceedings, Mace testified further:

Q:    Can you tell me what you mean by that phrase "and the dust settled"?

---

[1]    Mace also alleges that "the parties performed under the contract for years" before Domash denied its existence.  *See* Opposition at 4.  This allegation, too, finds no support in the record.  Mace points to no evidence whatsoever of any performance by Domash that in some way evidences his understanding as to the existence of an enforceable contract.  Moreover, Mace's argument on this point (*i.e.* that Mace performed) has nothing to do with whether a binding contract existed but rather speaks only to whether he might have set forth a viable claim for unjust enrichment (a claim that fails for separate and independent reasons, discussed *infra*).  Further, Domash's alleged oral promises to reimburse Mace that are discussed in the various Declarations attached to Mace's Opposition do not speak to a specific obligation under an enforceable contract, but rather, at most, reflect vague statements not tethered to any specific, identifiable payments or obligations.  Indeed, Dr. George Graham – upon whose Declaration Mace principally relies – testified that he does not believe that a contract existed between Domash and Mace as of October 2000, nor that the parties even had a business relationship.  *See* Deposition Transcript of Dr. George Graham ('Graham Tr.") at 21:3-10; 24:7-25:19, attached hereto as Exhibit U.  (The Exhibits attached to the Principal Memorandum were designated A-T).  As such, it is clear that Graham's Declaration has no impact on Mace's breach of contract claim.

[2]    As discussed in detail below, one thing that is clear is that Mace believed payment became due under the alleged contract prior to the limitations cut-off date.

A:      I think that that's an accurate, but broad statement.  It encompasses not
        only – it encompasses not only the divorce proceedings and the child
        custody proceedings, but the economic fall out to Larry's life where Larry
        would right himself emotionally and be able to do the kind of work that
        was significant, that he felt he was capable of doing.

        *                           *                           *

Q:      Well, I guess my question is when was his reimbursement due?  Was it
        after the custody issues or was it just after the arduous journey?

A.      It was more than that.  It was when he gone though all of that and had
        been able to assume the kind of dynamic economic role that he wanted for
        himself.

See Deposition Transcript of Peter Mace ("Mace Tr.") at 86-87 (Exhibit B to Principal

Memorandum).  Mace's above description of when Domash's payment obligation

ripened under the alleged contract is much different than his current claim that it was

simply tied to the end of the divorce litigation.  It cannot seriously be disputed that

Mace's above description – given under oath – of the event that would trigger Domash's

reimbursement obligation fails to satisfy the requirement that all terms of a contract,

including payment terms and duration of agreement, be sufficiently definite in order for it

to be deemed enforceable.  *See, e.g., Virtual Defense and Dev. Int'l, Inc. v. Republic of

Moldova*, 133 F. Supp. 2d 9, 17 (D.D.C. 2001).[3]

        The triggering event for payment is not the only "term" of the alleged contract

that Mace now seeks to rewrite through his Opposition.  Faced with the fact that the

alleged contract also fails because the parties never discussed even an estimate of the full

amount of reimbursable expenditures, Mace argues that "it was not unclear in April 1999

---

[3]     Moreover, Mace, who bears the burden of proof, has offered no evidence as to
when Domash had completed his "arduous journey" or when he had "assume[d] the kind
of dynamic role that he wanted for himself" – much less any evidence as to when the
divorce litigation ended.

what the charges would be."  Opposition at 6.  However, Mace fails to produce any

evidence supporting this claim.  This is not surprising, because all of the record evidence

is to the contrary.  For example, Mace argues that "from Plaintiff's account of his pre-

April 1999 living expenses communicated to Defendant, they were highly predictable."

*Id.*  Yet Mace provides no evidence whatsoever that he ever described his pre-April 1999

living expenses to Domash.  Moreover, Mace cannot seriously claim that his payments to

his niece or cousin (throughout this litigation he has claimed the payments were made to

his cousin, *see* Mace's Answers to Interrogatories, Exhibit B to Principal Memorandum;

he now suddenly claims they were made to his niece, *see* Mace Declaration ¶ 3, yet more

evidence casting doubt on Mace's credibility) were "highly predictable" in April 1999,

because he did not even make the first such payment until, at the earliest, <u>April 2000</u>, a

full year after the alleged contract commenced.  *See* Exhibit Q to Principal

Memorandum.[4]

        In addition, it is disingenuous for Mace to argue that his expenditures were

"highly predictable" when he is unable even to <u>identify</u> the vast majority of them.[5]  It

defies common sense that Mace would be unable to identify nearly all of the expenditures

that he made under the alleged contract if, in fact, such expenditures were highly

predictable and had been specifically communicated to Domash in April 1999.

_____

[4]        This undisputed fact also casts serious doubt on Mace's core allegation that the
parties ever entered into an oral agreement in April 1999 which specifically contemplated
payments that Mace made to either his niece or cousin.

[5]        It is thus insufficient for Mace to state, as he does, that the category of expenses
related to IFA is not an issue, simply because the amount of expenditures identified by
his accountant that fall within this category is $0.  *See* Opposition at 6.  Although Mace
cannot identify any expenditures that he made on behalf of IFA, he nonetheless seeks
reimbursement for approximately $178,000 in such unidentified expenditures.  *See*
Exhibit P to Principal Memorandum.

Mace's remaining discussion about the lack of definite terms of the alleged contract contains various strawman arguments, which he sets up only to knock down, but that do not accurately reflect Domash's argument or the undisputed record. For example, in addressing Domash's argument that the parties did not discuss a specific interest rate under the alleged contract, Mace asserts "Defendant claims he has no way of determining the interest rate on the debt he owes." Opposition at 9. This is a complete mischaracterization of Domash's true argument, which is not based on an inability to determine the interest rate that <u>actually</u> accrued on the expenditures at issue. Instead, Domash's argument is based on the undisputed fact that the parties never discussed a <u>specific</u> interest rate that would govern the alleged contract and that the actual interest rates charged by the credit card companies varied significantly throughout the life of the alleged contract. *See* Principal Memorandum at 18-20.

Similarly, Mace attempts to counter Domash's argument that the alleged contract fails because the parties never discussed the amount that Mace was allowed to expend pursuant to the alleged contract by stating, "Defendant has never produced or even alleged any communication during the 4 ½ years of the contract that he disapproved of any of the mounting charges." Opposition at 6.[6] This contention is truly incredible given Mace's acknowledgement that he <u>never</u> provided Domash with <u>any</u> documentation regarding his expenditures (*see* Mace Tr.; Exh. V at 269:20-270:4), and further he has

---

[6]    Throughout the Opposition, Mace repeatedly refers to the length of the alleged contract as 4 ½ years. In actuality, even crediting Mace's testimony fully, the alleged contract only lasted approximately 3 ½ years (April 1999 to November 2002).

never provided evidence that he disclosed such information to Domash orally. Again, as Plaintiff, Mace bears the burden of proof in this action. Clearly, he has failed to meet it.[7]

### B.    The Statutes of Limitations Bar All of Mace's Claims.

During his 10-page discussion on the (un)timeliness of his claim, Mace completely ignores the two most critical facts related to this issue: (i) his acknowledgement that he believed Domash's failure to reimburse him prior to the limitations cut-off date constituted fraud; and (ii) his demand under the alleged contract for immediate payment from Domash, which he specifically referred to as "overdue," also before the limitations cut-off date. Mace's silence on these points is telling, as none of his arguments can save his claim in the face of those undisputed facts.

Mace's first principal argument is that his causes of action did not accrue until he received Domash's November 24, 2002 letter denying the existence of the alleged contract. *See, e.g.,* Opposition at 10. Not surprisingly, Mace cites no legal authority for this argument, which asks the Court to find that the statute of limitations does not begin to run when a plaintiff has actual knowledge that a defendant has allegedly committed fraud by not making payment under an alleged contract, or at such time when a demand for an "overdue" payment under an alleged contract is made, but instead only when (or

---

[7]    Elsewhere in this discussion, Mace simply invents terms of the alleged contract, including the alleged consideration, to make it sound more viable. For example, in purporting to explain the sufficiency of consideration that took the form of a nine-year old oral promise that Domash would one day manage IFA's money, with no further specifics, Mace alleges: "The parties agreed to make best efforts to negotiate an eventual fair compensation package for Defendant." Opposition at 7. This is wholly fabricated; nothing in the record supports any term related to "best efforts" (which, even if true, does not alter the final determination here).

more accurately, if) a defendant explicitly denies the existence of such a contract. This argument turns the discovery rule on its head and finds no support in the law.[8]

The critical issues for the limitations analyses are when Mace believed Domash's payment obligation became overdue (breach of contract and unjust enrichment claims), and when Mace believed Domash's failure to make payment constituted fraud (fraud claim). The undisputed record unequivocally demonstrates that Mace had knowledge of this critical information before both the limitations cut-off date and the date he received Domash's November 24, 2002 letter. Accordingly, he had all of the information he needed for his claim to accrue, and Domash's letter is simply not germane to the limitations analysis.

Put another way, under District of Columbia law, a claim for breach of contract accrues at the time a plaintiff becomes aware of the alleged breach (or should have become aware of the breach), *see, e.g., Tolbert v. Nat'l Harmony Memorial Park*, 520 F. Supp. 2d 209, 212 (D.D.C. 2007) – not at the time a defendant acknowledges the alleged breach. Likewise, if Mace believed that Domash's failure to comply with his alleged payment obligations for expenditures made and/or services rendered constituted fraud and was overdue more than three years before he filed suit, his claims for fraud and unjust enrichment are also time-barred.[9]

_____

[8] Mace asserts that Domash never sent him written notice denying the alleged oral contract until November 24, 2002 "so that he could take advantage of the agreement if IFA obtained financing…." Opposition at 10. Like other arguments mentioned above, there is simply no support for this in the record. Indeed, Mace points to no evidence that something happened in November 2002 that had any impact on the question of whether IFA would obtain financing (something Mace had allegedly been working on continuously for the previous 16 years). Exh. V; Mace Tr. at 14.

[9] In addition to all of the above, Mace's unjust enrichment claim is not even subject to the discovery rule, and thus Mace's argument that it did not accrue until he received

Mace's second principal limitations argument is that Domash's alleged oral statement to a third party (Dr. George Graham) in July 2002 (four months <u>before</u> the limitations cut-off date) promising (sort of) to reimburse Mace, estops Domash from relying on a limitations defense. *See, e.g.,* Opposition at 14; Mace Declaration; Graham Declaration. Both the facts and the law demonstrate that the alleged July 2002 conversation between Domash and Graham cannot save Mace's time-barred claim.

According to Graham, during a July 2002 conversation, Domash stated, "I will pay 'you.'" Graham Aff. ¶ 2. Graham, in turn, assumed Domash meant to include Mace in his reference to "you" and apparently passed this information on to Mace. *Id.* Mace alleges that he was "greatly relieved when Dr. Graham told [him] this," a curious claim considering that just two weeks earlier, Mace referred to Domash as "<u>deceitful</u>," "weak," "a weasel," "a coward," and further stated that Domash had "let [his] life become a lie." *See* Exhibit K to Principal Memorandum.[10] According to Mace, this July 2002 conversation between Domash and Graham estops Domash from raising a statute of limitations defense. *See* Opposition at 13-14. This is incorrect. Even assuming the truth of all of the above (and as set forth below, the undisputed record casts serious doubt on the veracity of the Graham and Mace Declarations in this regard), Mace's legal argument nevertheless fails as a matter of law.

---

Domash's letter fails for this additional reason. *See McQueen v. Woodstream Corp.*, 244 F.R.D. 26, 36 (D.D.C. 2007) (holding discovery rule does not apply to claims of unjust enrichment).

[10]    Mace's comments in his June 24, 2002 letter serve as an independent basis for dismissal of his fraud claim, because "[i]n cases involving commercial contracts negotiated at arm's length, a plaintiff claiming fraud must establish by clear and convincing evidence that, *inter alia*, 'the defrauded party's reliance [was] reasonable.'" *Williams v. District of Columbia*, 902 A.2d 91, 94 (D.C. 2006) (quoting *Hercules & Co. v. Shama Rest. Corp.*, 613 A.2d 916, 923 (D.C. 1992)) (brackets in original).

In relying upon the alleged July 2002 discussion, Mace attempts to invoke the "lulling" doctrine of estoppel.  The District of Columbia Court of Appeals first discussed this doctrine 100 years ago, stating, "a defendant cannot avail himself of the bar of the statute of limitations, if it appears that he has done anything that would tend to lull the plaintiff into inaction, and thereby permit the limitation prescribed by the statute to run against him." *Hornblower v. George Washington Univ.*, 31 App. D.C. 64, 75 (1908). "The doctrine enunciated in *Hornblower* has been interpreted narrowly in subsequent cases." *Monroe v. Williams*, 705 F. Supp. 621, 624 (D.D.C. 1988).  In order to constitute lulling, "defendant must have done something that amounted to an <u>affirmative inducement</u> to plaintiffs to delay bringing action." *Id.* (quoting *Hornblower, supra*) (emphasis in original).

Critically for purposes of the present case, "the 'lulling' doctrine does not create a delay in the accrual of an action, but merely estops the assertion of a statute of limitations defense where the defendant lulled the plaintiff into inaction for the <u>full</u> statutory period." *Cunningham & Assoc. v. Dugan*, 909 A.2d 1001, 1003 (D.C. 1996) (holding statute of limitations barred claim because "even if there had been any 'lulling,' [plaintiff] 'had ample time and opportunity to bring this suit before the bar of the statute fell'") (emphasis added).

The decision in *Property 10-F, Inc. v. Pack & Process Inc.*, 265 A.2d 290 (D.C. 1970), is instructive.  There, the court found that the statute of limitations began to run on a breach of contract claim in April 1965. *Id.* at 290.  Defendant took actions that constituted "lulling" until October 1965, <u>six months after</u> the claim accrued. *Id.* at 291.

Nonetheless, the court held that the lulling activity did not serve as an estoppel and

explained:

> But the effect of such estoppel is not to stop the running of the statute or to create a new date for its commencement.  If ample time to file suit within the statutory period exists after the circumstances inducing delay have ceased, there is no estoppel against pleading the bar of the statute.  Here, as the trial court found, the 'lulling' period ceased in October 1965, and there was ample time thereafter in which to bring suit within the statutory time.  Under such circumstances, the defense of the statute of limitations was not barred.

*Id.*

Here, the alleged lulling/estoppel activity has even less effect on the limitations

question than in *Property 10-F*, because it took place <u>entirely before</u> the limitations cut-

off date, rather than six months <u>after</u>.  Thus, unlike the situations in that case and *Dugan,*

*supra,* Mace still had the <u>full</u> three year statutory period to bring this action and simply

failed to do so.  Accordingly, the lulling doctrine simply has no application on the facts

here.

Moreover, the alleged lulling activity that Mace points to is <u>precisely</u> the type

which courts have found does <u>not</u> constitute lulling under District of Columbia Law.  *See*

*Monroe,* 705 F. Supp. at 626  ("[P]ublic acknowledgement of a debt and informal

assurances of payment" do not constitute "lulling" sufficient to estop a defendant from

raising a statute of limitations defense.) (citing *Brown v. Lamb*, 414 F.2d 1210 (D.C. Cir.

1969); and *Grass v. Eiker*, 135 A.2d 153 (D.C. 1957)).

In addition to the <u>legal</u> deficiencies, the undisputed facts cast serious doubt on

the veracity of the statements contained in the Graham and Mace Declarations that, in

July 2002, Domash promised Graham that he would reimburse Mace, and Graham

subsequently related this information to Mace.  *See id.*  On April 30, 2006, Graham wrote

a letter to Mace specifically for the purpose of allowing Mace to use it in this litigation. (A copy of this letter is attached hereto as Exhibit W). In that letter, Graham referenced two specific occasions (by date) where he claimed to remember Domash promising to reimburse Mace. *See id.* at 2. Both were in 2000. *See id.* He also wrote that on April 17, 2001, Mace "mentioned again that money – a growing amount of money – was due him from Mr. Domash and that Mr. Domash had recently promised to pay him again.[11] Subsequent to this meeting, I called Mr. Domash and he assured me he would reimburse Mr. Mace." *Id.* Although Graham provides no specific date for this "subsequent" conversation, it is highly unlikely that it referred to the alleged discussion in July 2002, as the latter took place <u>15 months later</u>, and Graham acknowledges in his Declaration that Domash did not <u>directly</u> promise to reimburse Mace during that conversation (which is inconsistent with his description of the undated conversation discussed in his April 2006 letter to Mace).

Moreover, despite Graham's alleged <u>clear</u> memory of this conversation <u>now</u>, at his deposition he testified that he could not recall any specific conversations where Domash allegedly promised to reimburse Mace other than those which he had listed in his April 2006 letter. *See* Exh. U; Graham Tr. at 46:17-47:2.[12]

Mace's own words, too, cast doubt on the alleged July 2002 promise. In Mace's October 27, 2002 letter (Exhibit N to Motion for Summary Judgment), in which he demanded the "overdue" contractual payment from Domash, he purports to rely on an

---

[11]    This statement is further evidence that Mace believed money was "<u>due</u>" him under the alleged contract (regardless of whether the "dust had settled" on the divorce litigation) well before the limitations cut-off date of November 18, 2002.

[12]    It is worth noting here that Graham and Mace have entered into some sort of contingency arrangement, with Mace promising to pay Graham's legal expenses if Mace is ultimately successful in this lawsuit. *See* Graham Tr.; Exh. U at 10-12.

alleged promise from Domash to reimburse him that was made in November 2000. It strains credulity that, if Mace was truly relying on an alleged promise from Domash made in July 2002 (just three months before writing this letter), he would have instead referred to a promise from two years earlier (when the alleged debt was much lower). Nowhere in the October 2002 letter does Mace even reference the alleged July 2002 promise upon which he now so heavily relies. Moreover, <u>directly</u> contrary to his current claim, Mace testified during his deposition that Domash did not promise to repay him after June, 2002. *See* SMF ¶ 54. Although Mace states in his Opposition that after "June of 2002, he [Mace] still received voice messages from Defendant promising to pay" (Opposition at 3), this unsupported argument is directly contrary to both his deposition testimony as well as his <u>current</u> Declaration.[13]

Mace's other statute of limitations arguments fail as well. Mace argues that, contrary to the general rule, Domash has the burden of persuasion on the statute of limitations question because the alleged fraud was "self-concealing by nature." Opposition at 13, 16. As support for this argument, Mace submits: "The contract provided that Defendant would pay when his divorce litigation ended. He was in possession of those facts, not Plaintiff." *Id.* at 16. This is a remarkable assertion

---

[13]    Mace also relies upon the Declaration of Bruce Koenig who attaches an August 12, 2002 letter (more than three months <u>before</u> the limitations cut-off date), in which Domash writes: "I apologize for the miscommunication and hope this brings this matter to resolution. Please confirm for me that the prior payments came from Mr. Mace and he will be reimbursed as well." *See* Exhibit L to Opposition. This letter fails to save Mace's time-barred claim for all of the reasons discussed above in the context of Graham's allegations. Moreover, it is clear from the face of the letter that Domash is only referring to certain specific payments that Mace allegedly made to Mr. Koenig's company, Bek Tek, not a promise to pay anything else, including a debt covered by an alleged oral contract between the parties to this lawsuit. Importantly, Mace does not provide any evidence – or even make any allegation – to the contrary.

considering that Mace states in his Declaration that he "worked a minimum of forty hours

per week for the forty-two months of the contract" on Domash's behalf.  Mace Dec. ¶ 17.

Mace continues:

> From approximately June of 1998 to June of 2001 I provided these
> services in support of the divorce and child custody litigation and the
> emotional support.  During this period of time, I devoted on average a
> minimum of thirty hours per week to his divorce and child custody
> matters.  After June of 2001, I devoted most of my time to the start-up
> business, but did continue to devote time to his emotional support and
> legal matters."

*Id.* (emphasis added).  If any of this were true, it is hard to fathom how Mace would not

be aware of when (or whether) Domash's divorce litigation ended.

In any event, despite Mace's pleas to the contrary, assuming Domash does carry

the burden of persuasion, he has easily met it here.  In connection with this motion for

summary judgment, Domash has provided undisputed evidence that prior to the

limitations cut-off date, Mace was aware of the alleged fraud and demanded payment

from Domash under the alleged contract which he stated was "overdue."  *See* Principal

Memorandum at 26-32.  This demonstrates that Mace not only had the requisite inquiry

notice for the statute of limitations to start running under the discovery rule, *see Johnson

v. Long Beach Mortg. Loan Trust 2001-4*, 451 F. Supp. 2d 16, 42 (D.D.C. 2006), but that

he had actual knowledge as well.  Thus, Mace's argument that Domash has failed to carry

his discovery rule burden of persuasion because he "has failed to put on any evidence that

his divorce litigation ended before the statute of limitations period and that his finances

stabilized," completely misses the mark.  The focus for discovery rule purposes is on

Mace's level of knowledge, *see Tolbert*, 520 F.Supp.2d at 212, and the evidence makes

clear that Mace believed payment was <u>overdue</u> more than three years before filing suit, regardless of the status of Domash's divorce litigation and financial situation.[14]

Mace also seeks to excuse his tardiness in filing this lawsuit by arguing that the accrual of claims in "business cases" is more indeterminate and difficult to ascertain with precision than in the medical malpractice context. *See* Opposition at 17. That argument is entirely incorrect. Indeed, the exact opposite is true. *See generally Bussineau v. President and Directors of Georgetown College*, 518 A.2d 423, 425-36 (D.C. 1986) (discussing difficulty of determining accrual date in medical malpractice context and thus examining scope of discovery rule).

Mace's confusion on this point is exacerbated by his curious reliance on *Eastbanc, Inc. v. Georgetown Park Assocs. II, L.P.*, 940 A.2d 996 (2008), a case that did not even involve the discovery rule. Rather, *Eastbanc* involved the doctrine of anticipatory repudiation and simply has no bearing on the case at bar. The court in *Eastbanc* merely held that an injured party can choose either to treat an anticipatory repudiation as a present breach and sue immediately, or it can wait for the actual breach of contract to occur. *Id.* at 1007. It did not involve the present situation where the repudiation of the alleged oral contract occurred <u>after</u> the alleged breach (of which Mace was aware as evidenced by his written demand for immediate payment which he claimed

---

[14]     In this part of his discussion, Mace confusingly adds another criteria that he claims was to have been met before Domash's payment obligations ripened under the alleged contract. In addition to the payment being tied to the conclusion of the divorce litigation as Mace argues earlier in his Opposition, Mace states that Domash also had no obligation to repay him until Domash's "finances stabilized." Opposition at 16. This type of vague payment term is yet another reason that the alleged oral arrangement fails for lack of specificity. *See, e.g., Republic of Moldova*, 133 F. Supp. 2d at 17. In addition, Mace provides no evidence regarding when Domash's finances stabilized (whatever that phrase means).

was "overdue").  Indeed, Mace seems to recognize the inapplicability of *Eastbanc's* anticipatory repudiation doctrine holding when he argues that "Plaintiff only became definitely 'obliged' [to sue] when he received the Defendant's <u>absolute</u> letter of repudiation dated November 22 (sic), 2002)."  Opposition at 19 (emphasis added).  Adoption of Mace's erroneous interpretation of *Eastbanc* would require this Court to hold that the limitations clock only begins ticking when a defendant explicitly acknowledges a breach of an alleged contract.  If that were the case, there would be no reason for the existence of the discovery rule in the first place.  In sum, the *Eastbanc* decision is inapposite to the limitations issue here.

### C.     Plaintiff's Unjust Enrichment Claim Fails

With respect to his unjust enrichment claim, Mace's attack on Domash's motion for summary judgment yet again relies upon a classic strawman argument.  Mace attempts to recast Domash's argument as follows:  "The Defendant primarily argues in regard to Mr. Mace's quantum meruit claims that ' . . . an unjust enrichment claim cannot stand if the underlying breach of contract claim founders.'"  Opposition at 20 (ellipses in original).  This is a patently erroneous summary of Domash's argument.  In fact, relying on the recent decision in *Fort Lincoln Civil Assoc., Inc. v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1076 (D.C. 2008), Domash simply argues that to the extent Mace seeks reimbursement for his <u>expenditures</u> under an unjust enrichment theory (as opposed to payment for the value of his services) that aspect of his claim is nothing more than a

recasting of his breach of contract claim and thus fails for the same reason as that claim. *See* Principal Memorandum at 35.[15]

As for his "value of services" theory of unjust enrichment, by not even addressing the fact that he did not raise it for the first time until months after the close of discovery, Mace tacitly concedes that it would prejudice Domash if he were permitted to go forward on it. Mace similarly fails even to address Domash's other argument specifically targeting the "value of services" claim; *i.e.,* that the claim fails as a matter of District of Columbia law, because the undisputed record demonstrates that Mace was <u>not</u> expecting payment for the value of his services, but instead was allegedly only expecting reimbursement for his out-of-pocket expenditures. (Principal Memorandum at 36-38). *See, e.g., Ellipso, Inc. v. Mann*, 460 F. Supp. 2d 99, 104 (D.D.C. 2006) (in order to set forth viable unjust enrichment claim, plaintiff must show that he "reasonably notified the [defendant] that the plaintiff, in performing [his] services, expected to be paid"). The undisputed record makes clear that Mace did <u>not</u> expect to be paid for the value of his services and never notified Domash of anything to the contrary. *See* Principal Memorandum at 36-38. Accordingly, Mace's unjust enrichment claim based on a value-of-services theory fails.

In attempting to justify this claim and recover damages for "wages foregone" or "the hourly value of the work performed," Mace curiously relies on *IBF Corp. v. Alpern*, 487 A.2d 593, 597-98 (D.C. 1985), for the proposition that "[o]n quantum meruit claims,

---

[15]     As explained on the following page of the Principal Memorandum, to the extent that certain of the expenditures conferred a direct benefit on Domash (at most a total of $8,727.05 according to Mace's accountant's report), such expenditures arguably fall outside the scope of the *Fort Lincoln* decision. However, Mace's claim for that amount still fails for separate and independent reasons as set forth in Domash's Principal Memorandum. *See* Principal Memorandum at 33.

courts allow evidence of several different valuation methods to determine the reasonable value of the services provided." Opposition at 22. *IBF Corp.*, however, did not involve a claim for quantum meruit. Rather, *IBF Corp.* involved the issue of determining the amount of compensation owed to an employee in the labor/employment context of wage garnishment. 487 A.2d at 597-98. Accordingly, that decision is clearly inapposite to the situation here, because Mace directly testified that he did not perform the alleged services as an employee or in anticipation of payment for those services. Specifically, when asked at his deposition about this issue, Mace answered: "Being paid for my services, I mean – I wasn't an employee of Larry's. I was Larry's – he would describe it as kind of a coordinator, switchboard between all these different people. I wasn't paid for it. My goal was to try to get IFA up and running." Mace Tr. at 212-213 (Exhibit B to Principal Memorandum). Notably, Mace has produced no evidence contrary to his deposition testimony in this regard.

Finally, in various places throughout his Opposition, Mace attempts to seek refuge in the fact that Domash does not provide evidence contradicting Mace's account of the services he claims to have provided in connection with Domash's legal issues. *See, e.g.,* Opposition at 7, 14. Domash did not do so, because such a factual dispute has no relevance to the dispositive arguments raised in his motion for summary judgment. However, it is notable that among the Declarations attached to his Opposition, Mace (who has the burden of proof) did not include sworn statements from Domash's former attorneys, who Mace specifically listed as his witnesses in his Rule 26 disclosures, claiming that they "ha[ve] knowledge of Mr. Mace's efforts on behalf of Mr. Domash." *See* Exhibit R to Principal Memorandum. Given Mace's omission in this regard, Domash

attaches to this Reply the Affidavits of Joseph H. Walsh, Esq. and Paul V. Kelly, Esq.,
two of Mace's listed witnesses who represented Domash during the timeframe of the
alleged oral agreement.  *See* Exhibits X (Walsh Affidavit) and Y (Kelly Affidavit).
While not determinative of the issues presented by Domash's motion for summary
judgment standing on their own, these Affidavits further demonstrate the deficiency of
Mace's claims – especially in light of Mace's failure to produce any meaningful
affirmative evidence about the value of his services.

> **D.    The Statute of Frauds Bars Mace's Claim**

Mace argues that the "leading object" exception to the Statute of Frauds permits
his claim to go forward despite the fact that it is based on an alleged oral agreement to
answer for the debt of another.  *See* Opposition at 23.  Specifically, he argues that he has
alleged that a "major portion" of Mace's work conferred a direct, personal benefit on
Domash.  *Id.*  Even if true, this is insufficient.  Mace cites no authority for his bald
assertion that a "major portion" satisfies the "leading object" exception.  The lack of
supporting law is not surprising, as the plain language of those terms makes clear that
they are not synonymous.

Moreover, it cannot seriously be disputed that a "major portion" of the alleged
oral agreement did <u>not</u> confer a direct and personal benefit on Domash (much less that
such benefit was the "leading object" of it).  Of the approximately $277,000 that Mace
seeks to recover, he attributes only slightly more than $8,700 to expenditures made on
Domash's behalf.  In addition, Mace acknowledges that for the last 17 months of the
alleged contract, he focused much more on his own putative insurance company than on
Domash.  As Mace put it in terms of describing the alleged agreement generally, "My

goal was to try to get IFA up and running." Mace Tr. at 213 (Exhibit B to Principal

Memorandum). Accordingly, the Statute of Frauds bars Mace's claims.

### III.    CONCLUSION

For all of the above reasons and those set forth in the Principal Memorandum,

Mace respectfully requests that the Court GRANT his motion for summary judgment on

all counts of the Complaint.

Respectfully submitted,


/s/ Adam Augustine Carter_____
Adam Augustine Carter
DC Bar # 437381
888 Seventeenth Street, N.W., Suite 900
Washington, D.C.  20006-3307
Tel: 202-261-2803
Fax: 202-261-2835
acarter@employmentlawgroup.net


/s/ Douglas S. Brooks_____
Douglas S. Brooks
*Pro Hac Vice*
LibbyHoopes, P.C.
175 Federal Street
Boston, MA 02110
Tel: 617-338-9300
Fax: 617-338-9911
dbrooks@libbyhoopes.com


Dated:  September 3, 2008

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and accurate copy of the foregoing was

delivered via the Court's electronic filing system to the following counsel for Plaintiff

Peter M. Mace, this 3rd day of August, 2008

Michael J. Trevelline, Esq.
1823 Jefferson Place, NW
Washington, D.C. 20036-2504
mjt@mjtlegal.com

                                    /s/ Douglas S. Brooks_____
                                    Douglas S. Brooks