Case 1:05-cv-02244-HHK    Document 46-6    Filed 09/03/2008    Page 1 of 3

# EXHIBIT Y

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PETER M. MACE<br><br>Plaintiff<br><br>v.<br><br>LARRY A. DOMASH<br><br>Defendant | Case No. 1:05CV02244<br>(HHK/DAR)<br>Summary Judgment Hearing<br>11/14/2008 |

### AFFIDAVIT OF PAUL V. KELLY, ESQ.

I, Paul V. Kelly, do hereby depose and state as follows:

1. I am the Executive Director of the National Hockey League Players' Association. From approximately June 2000 until December 2007, I was a Partner in the Boston law firm, Kelly, Libby & Hoopes, P.C. ("KLH"). I also served as an Assistant United States Attorney in the District of Massachusetts for nearly ten years (1987-1996). The following is based on my personal knowledge.

2. From approximately January 2001 through November 2002 (and beyond), KLH represented Larry A. Domash in connection with various post-Modification Judgment issues that intermittently arose related to his divorce. I was the attorney in charge for KLH in this regard.

3. I met Brett Mace in December 2000 at an initial meeting with Mr. Domash regarding Mr. Domash's retention of this firm. I received a few telephone calls from Mr. Mace in December 2000.

4. To the best of my memory, I do not recall speaking to Mr. Mace more than one time after December 2000.

5. I recall Mr. Mace showing up at only one court hearing during the time that I represented Mr. Domash. Because of my concern that Mr. Mace would interfere with, and potentially negatively impact the proceedings, I instructed my then-associate, Douglas S. Brooks, to wait outside the courthouse with Mr. Mace to ensure that he did not actually enter the courthouse. As far as I know, Mr. Brooks was successful in preventing Mr. Mace from doing so.

6. At some point during my representation of Mr. Domash, my assistant complained about Mr. Mace's behavior on the telephone. Accordingly, I instructed Mr. Domash to tell Mr. Mace not to call my office, and I further instructed my staff not to put Mr. Mace's telephone calls through to me or to Mr. Brooks.

7. From my conversations with Mr. Mace in December 2000, I understood that he was assisting Mr. Domash in connection with his post-Modification Judgment divorce issues because the two were friends. I never understood that Mr. Mace was expecting payment for the assistance that he provided Mr. Domash. Further, I never understood that Mr. Domash and Mr. Mace had any kind of arrangement whereby Mr. Domash had allegedly agreed to reimburse Mr. Mace for various out-of-pocket expenditures during this time period.

Signed under the penalties of perjury, this 2nd day of September, 2008.

_____
Paul V. Kelly

2